

# Fraternal Order of Police,
## Ohio Labor Council, Inc.

**MAIN OFFICE:**
222 East Town Street
Columbus, OH 43215-4611
(614) 224-5700
1-800-FOP-OLCI
Fax: (614) 224-5775

**NORTHEAST OFFICE:**
2721 Manchester Road
Akron, OH 44319-1020
(330) 753-7080
1-888-FOP-OLCI
Fax: (330) 753-8955

WWW.FOPOHIO.ORG

April 9, 2019

Mr. Gales,

I, along with Chief Counsel Gwen Callender, have reviewed your request to appeal the arbitration award issued by Arbitrator Stanton on January 25, 2019 regarding the grievance you filed when you were terminated from employment. We have carefully considered the allegations that you made in your correspondence to me that I received on March 29, 2019, and the subsequent email you sent to me on April 2, 2019. As you know on April 1, 2019 I requested specific documentation and/or anything else you had to support your claim that Mr. Behringer colluded with the Arbitrator. You did not provide anything to me other than a recitation of your allegations in an email response to me on April 2, 2019.

The standard of review of an arbitration award for an appeal is whether the award draws its essence from the collective bargaining agreement. The stipulated issue presented to the Arbitrator by the parties was whether the Employer terminated you for "just cause." The Arbitrator reviewed the facts and the arguments and reached the conclusion, based on the evidence in the record, that the Employer had just cause to terminate your employment. As such, the award drew its essence from the agreement.

There is no evidence before me to consider that would support your claim that there was any corruption, fraud or other undue means in the arbitration hearing and award. The limited grounds to vacate an arbitration award do not exist pursuant to R.C. §2711.10. While I am sure you are disappointed with the outcome, the award is final and binding pursuant to Article/Section 20.09, Paragraph 4, of the Collective Bargaining Agreement.

Clearly you have a dislike for Mr. Behringer. You are entitled to your feelings however it appears that Mr. Behringer, along with Renee Engelbach, represented you fully and completely throughout the entire grievance and arbitration process. They met with you to prepare for the hearing, put on evidence at the hearing, and wrote a post-hearing brief setting forth the factual and legal arguments on your behalf against the State of Ohio and the action taken against you.

——— **Protector of the Protectors** ———



 Gmail

timothy gales <tgales37@gmail.com>

---

## Misconduct complicity fail to represent
2 messages

---

**timothy gales** <tgales37@gmail.com>                                          Sat, Mar 23, 2019 at 4:17 PM
To: Douglas Behringer <dbehringer@fopohio.org>, das.ocb.serb@das.ohio.gov, CURTIS HUNDLEY
<cmhundley@dps.state.oh.us>, timothy gales <tgales37@gmail.com>

   Please find the attached complaint against Staff Representative Douglas Behringer. This complaint is as a failure of
   Behringer to his legal duties. He conspired with the arbitrator, DPS/OSP and James Hogan to secure this fraudulent
   award. This award must be appealed by FOP. if not the FOP has cleared this grievant/ petitioner to file an application to
   vacate this bias award from Doug Good Friend David Stanton. The FOP can't stand back and allow this injustice to occur
   with a 33 years employee. Which was fraudulently reduced to 21 years by Behringer and his complicit buddies at the
   state.

    **complaint.rtf**
   405K

---

**timothy gales** <tgales37@gmail.com>                                          Sat, Mar 23, 2019 at 4:25 PM
To: PL O <keely208@msn.com>

   [Quoted text hidden]

    **complaint.rtf**
   405K

A-2

 Gmail

timothy gales <tgales37@gmail.com>

## Back pay and Interest owed

1 message

**timothy gales** <tgales37@gmail.com>
To: jahogan@dps.ohio.gov

Tue, Jul 7, 2020 at 5:24 PM

I am requesting immediate payment of $15,436 the department owe me in unpaid interest as required in case number 15MS00119. In addition, the state has failed to pay 5,490.12 in vacation owed from June 2016 until May 2017. The state further have failed to repay 2290.00 owed to me for taking 3 pay checks for a 30 day period from March 20, 2013 until April 20, 2013. I request that your agency pay to me all money owed to me, I am in receipt of your letter you sent January 24, 2018 where you openly stated you the agency had no intentions of paying to me in violation of the courts order, I will expect a response within 7days. I will be moving the court for a contempt action based on John Born refusal to follow the order of the court and by reopening the judge award with a rogue arbitrator namely David Stanton who locked arms in solidarity with Douglas Behringer, James Hogan, Paul Pride, and John Born simply to injure and unlawfully steal the employment of a 33 year black law enforcement officer.. It is for these reason police reform is so needed. The state has no place for racist white males like Born, Pride, Mark Bentley and Thomas P. Charles.
This email is respectfully submitted by this black male law enforcement officer with whom those named herein locked arms as white males to place their foot on an innocent black male neck to cause serious harm to his livelihood. Three attorney Truly used their positions as attorneys to violate attorney ethics laws to discriminate collective as a team namely, James Hogan, David Stanton, and Douglas Behringer. This action was no different than the officers watching an innocent man with a knee on his neck get killed. You, and those named herein, watched an innocent black man lose his job because he fought racism at dps.. John Born, Paul Pride, Thomas P. Charles are the poster men of white supremacy and racism. They should never been allowed to be state employees.

This is my official notification to the state to pay all money owed to include interest on interest pursuant to Judge Cocroft judgment which was intentionally violated by DPS/OCB/FOP. A contempt action will be forthcoming

A-3

## CONTRACTUAL
## LABOR ARBITRATION PROCEEDINGS

|  |  |  |
|---|---|---|
| IN THE MATTER OF<br>ARBITRATION BETWEEN | ) )<br>) | |
| | ) | |
| STATE OF OHIO,<br>OHIO DEPARTMENT OF PUBLIC SAFETY,<br>OHIO STATE HIGHWAY PATROL | )<br>)<br>) | |
| | ) | **DECISION IN** |
| | ) | |
| -AND- | ) | **EMPLOYMENT** |
| | ) | **TERMINATION** |
| | ) | |
| FRATERNAL ORDER OF POLICE<br>OHIO LABOR COUNCIL, INC., UNIT - 2 | )<br>) | **ENFORCEMENT AGENT,**<br>**TIMOTHY GALES** |

---

**CASE NO.:**     DPS 2018-01038-02; Timothy Gales; Grievant

**GRIEVANCE:**     The Grievance, as set forth in Joint-Exhibit 2, challenges the termination of Grievant, Timothy Gales, as lacking "Just Cause".

**AWARD:**     The Grievance is Denied.

**HEARING:**     September 10, 2018; Columbus, Ohio

**ARBITRATOR:**     David W. Stanton, Esq.

---

## APPEARANCES

**FOR THE EMPLOYER**
Lieutenant Jake Pyles, OSP Advocate
Cassandra Brewster, Staff Lieutenant
Cullen Jackson, OCR 2nd Chair
Jim Hogan, DSP Legal
Samantha Shepherd, OSP-Intern
Chad Miller, Staff Lieutenant OSP
Katy Robson, Analyst

**FOR THE FOP/OLC**
Douglas J. Behringer, Attorney
Renee Engelbach, Paralegal
Curtis Handley, FOP Associate
Timothy Gales, Grievant



Joe Eckstein
Charles Linek III, Captain

## ADMINISTRATION

By email correspondence dated June 19, 2018, from the State of Ohio, Office of

Collective Bargaining, the undersigned was notified of his mutual selection to serve as

impartial Arbitrator to hear and decide the Termination Grievance, DPS 2018-01038-02,

of Enforcement Agent Timothy Gales, then in dispute between these Parties. On

September 10, 2018 at the State of Ohio, Office of Collective Bargaining, Columbus,

Ohio, an Arbitration Hearing was conducted wherein each Party was afforded a fair and

adequate opportunity to present testimonial and/or documentary evidence supportive of

positions advanced; and, where the Grievant appeared and testified. The evidentiary

record of this proceeding was closed upon the Arbitrator's receipt of each Party's Post-

Hearing Brief filed in accordance with the arrangements agreed to at the conclusion of

the presentation of evidence; and, subsequently modified by agreement between the

Parties. Accordingly, this matter is now ready for final disposition herein.

## GRIEVANCE AND QUESTION TO BE RESOLVED

The following Grievance, Joint-Exhibit 2, was filed on or about March 21, 2018,

and contains the subject matter for disposition herein as follows:

**GRIEVANT:**          Timothy Gales

**STATEMENT OF GRIEVANCE:**

The State was in violation of Article 9. There were several issues that were
improperly done and contrary to law and in violation of deferral law which is a
clear violation of article 18.01 and 18.02. Secondly, the State if seeking the truth
(sic) of the grievant could and should have employed a polygraph examine to
determine the truth if that was what they were seeking from the grievant in
violation Article 18.05. 18.06 the state had no just cause in this matter because the
grievant was not employed by the State and clearly in violation of Article 18.09.
Thirdly, the State is in violation of article 19.01 for removing grievant from his

- 1 -

current position as Enforcement Agent. In addition, there was no progressive discipline in violation of article 19.05. The State was in violation of Articles 20.01 and 20.09.

**RESOLUTION REQUESTED:**

Return the Grievant (Tim Gales) to his current position as Enforcement Agent in the Columbus District Office and restore all Back Pay, benefits, union dues, Public retirement deposit as required by PERS.

\* \* \* \* \*

The stipulated issue(s) for disposition by the Arbitrator is/are:

Was the Grievant terminated for just cause?
If not, what shall the remedy be?

## OHIO DEPARTMENT OF PUBLIC SAFETY
## WORK RULES

The following Work Rules served as the basis of the Grievant's Termination:

DPS 501.02(D)(1)- False Statements, Truthfulness

- An Employee shall not make any false statement, verbal or written, or false claims relating to the performance of, or fitness of duty

\* \* \* \* \*

DPS 501.01(W)(1)- Compliance to Orders

- An Employee shall immediately and completely carry out the lawful orders of a supervisor, or designated officer in charge, which pertain to the discharge of the employee's duties.

## FACTUAL BACKGROUND

The operative facts which gave rise to the filing of this Grievance, challenging the

March 20, 2018 Employment Termination of Enforcement Agent, Timothy Gales, are,

except where otherwise indicated, essentially undisputed. The State of Ohio, Department

of Public Safety, hereinafter referred to as the "Employer", under the auspices of the

Ohio State Highway Patrol, operates the Ohio Investigative Unit wherein the Grievant,

Timothy Gales served as an Enforcement Agent until his Termination. The Employer is party to a Collective Bargaining Agreement, Joint Exhibit -1, with the Fraternal Order of Police, Ohio Labor Council, Inc., Unit -2, hereinafter referred to as the "Union", which oversees the application and enforcement of the terms and conditions of employment as set forth therein. That Agreement affords the Employer the contractual right to effectuate Disciplinary Action, including Termination, for "Just Cause". It further contains a negotiated Grievance Procedure for the adjustment/resolution of such disputes arising at the workplace. This Arbitration arose from a Grievance filed on March 21, 2018 by the Grievant, Timothy Gales, based on his alleged violation of Ohio Department of Public Safety Work Rules: DPS-501.02 (D) (1) "False Statements, Truthfulness"; and/or, DPS 501-02 (W) (1) "Compliance to Orders".

By way of background, Grievant was terminated from the Ohio Investigative Unit in 2013. The Termination was grieved before Arbitrator E. William Lewis and the Award, dated November 24, 2014, provided that the Grievant be reinstated with certain specifications regarding back-pay due. The Employer filed a Motion to Vacate in the Franklin County Court of Common Pleas, wherein, he Court upheld the Decision of the Arbitrator; the Employer subsequently appealed. The Decision was affirmed and Grievant was reinstated to his former position May 15, 2017. Prior to the reinstatement of Grievant, during the appeals process, Katy Robson was hired by the Department of Public Safety, Human Resources ("DPS-HR"). She believed her former Employer, Allied Universal, had hired Grievant in the past, and upon hearing "office discussion" regarding the Grievant, she reported that information to her Supervisor, Joe Eckstein.

Grievant returned to work on May 15, 2018. Pursuant to the Arbitration Award, the Employer sought Grievant's earnings documents through the Union. The Union gathered the requisite documents from Grievant from the time he was terminated to calculate his back-pay and the appropriate offset amount. The Union provided various Tax and other Income documents concerning the Grievant. On May 31, 2017, Grievant contacted DPS-HR about his back-pay. Mr. Eckstein requested Grievant to confirm all his earnings from 2013-2017 and provided the afore-referenced Documents for verification. Grievant confirmed the accuracy of all of his income information via Email on June 5, 2017.

At the direction of DPS Chief of Staff, Mark Gibson, Mr. Eckstein checked with the Private Investigator Security Guard Services ("PISGS"), who license and regulate private security guards in the State, to confirm whether Grievant was employed by Allied Universal as was suggested by Ms. Robson. A photo provided by Allied Universal assisted Eckstein's verification the Grievant had in fact been employed there. Staff Lieutenant Chad Miller, in turn, contacted Allied to confirm the Grievant's employment. An audit of Allied Universal employment records revealed Grievant worked at Allied Universal from September 4, 2016 to May 1, 2017, working a total of 863.5 hours during that time at a rate of $14.60 per hour, totaling $12,607.10. This total only reflects the amount made during the Audit period and did not include possible earnings between February 3 through May 1, 2017.

By letter from Ohio Department of Public Safety Director, John Born, dated March 19, 2018, the Grievant was provided notification he was terminated arising from the issues surrounding undisclosed income earned at Allied Universal. During the course

- 4 -

of the Employer's Administrative Interviews/Investigation, it was determined the Grievant failed to disclose, and was dishonest about, these earnings both to his Employer as directed by Supervision in accordance with Arbitrator Lewis' Award; and, as set forth in his 2016-2017 Federal Income Tax Return(s).

The Grievant's Termination was met with a Grievance filed through the negotiated Grievance Procedure outlined in the Collective Bargaining Agreement, culminating in this Arbitration before the Undersigned. When the Parties' efforts to resolve this matter through the course thereof proved unsuccessful, the Employment Termination of Enforcement Agent Timothy Gales was appealed to Arbitration hereunder.

## CONTENTIONS OF THE PARTIES

### EMPLOYER CONTENTIONS

The Employer argues Grievant violated Work Rule DPS 501.02(D)(1). Grievant was a sworn Ohio Investigative Unit Enforcement Agent when the statements were made. A sworn Officer cannot perform his duties if they are acting dishonestly. The Employer reasonably expects Employees to be truthful as such essential for a sworn Officer as he is often before court, drafting Affidavits, and providing crucial information to his superiors. It is clear Grievant believed he did not have to provide any further information following the previous Arbitration decision and award regarding Back-pay. Regardless, Grievant was dishonest and he made a false statement to the Employer.

When Grievant was re-instated he provided numerous documents to the Union who in turn provided them to the Employer. These documents were listed in an Email to Grievant by Mr. Eckstein. The 2016 1040 Tax Return for Grievant provided to the Union

to assist in calculating his back-pay, did not include any earnings from Allied Universal. No other documents submitted by Grievant disclosed the earnings from Allied Universal. Grievant worked at Allied Universal until May 1, 2017 and stated he had provided all Tax documentation when requested by Mr. Eckstein. He submitted multiple forms reflecting his earnings from 2015 and 2016; however, these documents did not include any mention of Allied Universal. Only after the Employer discovered Grievant had been previously employed by Allied did Grievant claim, he did not have to provide that documentation. Grievant misled the Employer and tried to hide the truth of his employment. Grievant had an opportunity to provide the requisite documentation when Mr. Eckstein requested he confirm that all appropriate documentation had been provided; the Grievant refused. If Grievant was acting truthfully, he would have disputed the accuracy of his back-pay as it did not include his time and earnings at Allied Universal.

During his second interview, Grievant did not produce the documents his Supervisor ordered him to bring. Employees are required to comply with Administrative Investigations. When asked if the documents provided were accurate, Grievant stated they were his Federal Tax Returns and they were accurate. Grievant refused to answer the question twice more. Grievant knew the earnings from Allied Universal were not properly reported on his Tax Returns. During his interview, Grievant eventually stated his Returns were accurate as far as he knew. Both statements were untruthful. He had only just left the employ of Allied Universal on May 1st and had earned over $12,000.00. Lieutenant Miller tried to discuss Grievant's overall earnings on his reported 1040 and Grievant refused and quit cooperating entirely. Grievant ended the interview stating everything he had said was true to the best of his knowledge. This was a false statement.

Grievant presented information tending to show the 1040 was fully accurate and reflected complete reporting. He then confirmed the authenticity of the document on two (2) separate occasions. However, Grievant testified at the Hearing the 1040 provided was in fact not accurate. He claimed he amended his 1040 in July of 2017; however, the second interview with Lieutenant Miller where he made false statements regarding the submitted 1040 was in February of 2018. Grievant was dishonest here as he has been throughout this matter. The submitted 1040 could not be accurate as it did not reflect the earnings of Allied Universal, making this a false statement by Grievant.

Section 20.10 of the CBA provides strict guidelines regarding dishonesty. If dishonesty is found by the Arbitrator, then the disciplinary action taken cannot be modified. This language has been used strictly against Employees by other Arbitrators and should be enforced herein. The Arbitrator does not have discretion to modify the discipline if dishonesty is found.

Additionally, the Employer contends the Grievant violated Work Rule DPS 501.02(W)(1) regarding "Compliance to Orders". The investigation, testimony, and evidence presented during the Hearing all show Grievant violated the above-mentioned work rule. Grievant was aware the Employer requested correct Tax documents that adequately reflected wages earned at Allied. Had Grievant complied with the request and provided the requisite documents, the Termination would have never occurred. All employees of DPS are expected to follow the instructions of Management. Grievant was insubordinate and refused to follow Mr. Eckstein's requests.

Grievant's actions show an intent not to follow orders. Mr. Eckstein's Email request was clear and direct; he was following up with Grievant to assure that everything

necessary has been provided. Mr. Eckstein requested Grievant review the provided documents to assure all were present. Grievant testified he read said Email and he was aware Mr. Eckstein asked him to confirm all income from 2013-2017. Grievant confirmed he did not include information from Allied Universal, and he did not question or dispute the Email from Mr. Eckstein. Based upon Grievant's testimony and the evidence presented, it is clear Grievant knew of the information that Mr. Eckstein was missing and deliberately chose not to provide the same. A short time later, Grievant made the same choice again. Grievant clearly refused to follow a written request made by his supervisor.

On February 14, 2018, Staff Lieutenant Miller emailed Harry Love, Grievant's Supervisor. The email asked Mr. Love to inform Grievant of the need for a second interview. He was asked to provide employment and income information concerning Allied Universal, as well as, any other Employer in that time frame. Mr. Love relayed that information to Grievant. Grievant replied stating he had provided all required documents and he would not provide his Tax Returns. He also stated he had submitted the requested Tax Returns to the Agency through the Attorney General. This is untrue. At this point, Grievant had submitted Tax documentation but it did not reflect his Allied Universal earnings. This information was necessary to offset his back-pay as required by the prior Arbitration Award. Grievant was also requested to provide pay stubs from Allied Universal; to which he replied, he did not have them, and the Employer had effectively received that information already. This statement is untrue as well.

He did not provide his original 2016-2017 1040 Tax Return to anyone or bring it to his interview. The only Tax records Grievant had at this point came from the Union,

not Grievant. Employer did not have any version of his earnings from Allied Universal at this time. The Employer was not able to calculate the required back-pay due to not having any employment information provided by Grievant. Grievant refused to provide the pay stubs from Allied Universal. He claims he did not have them but also offered no evidence of his attempts to get them or any evidence of his earnings with Allied Universal. Grievant, simply, did not want to cooperate. He intentionally refused to follow the directions of the Employer to provide documentation concerning his earnings between 2013-2017; his intent in relation thereto, notwithstanding.

During his interview he provided multiple reasons why he chose not to provide the requested information. He initially stated the Employer did not have the right to request information from 2017. He then stated the Employer had all the information it was entitled to have. He did not dispute the Employer had the right to his 2017 payment information until the Investigation began. The Union did not reach out to the Employer about these concerns either. Grievant chose to refuse to cooperate instead. He made baseless allegations throughout the Investigation. He implied he withheld the Allied Universal information because the Employer owed him $24,000.00. Yet, Grievant did not file a Grievance concerning this amount or have the Union speak for him regarding this. The Grievant's argument is not evidence and does not void his requirement to comply with Orders. During the second interview, Grievant gave another reason for not providing the requesting earnings information to the Employer. He acknowledged there were no specific dates in the previous Arbitration ruling; suggesting the Grievant made-up the reasons for withholding the Allied Universal information. As the Employer never received a 1040 with the Allied Universal information, they were forced to question

- 9 -

Grievant about the 1040 they did receive. Grievant stated the Employer was not entitled to information concerning his Tax Returns – he was wrong.

Grievant's argument the Tax Returns were private, and the Employer did not have the right to request them is incorrect. He provides no evidence of the same. Why would Grievant provide the information initially and then claim they were privileged at a later date? They are only private because they do not include his earnings from Allied Universal. He never attempted to provide that earning information to the Employer. Grievant had multiple chances to do so but refused. Grievant stated he was not going to provide the information regardless. This is a pattern of deliberate, misleading and untruthful behavior. It was these behaviors that led to his termination.

Throughout the Investigation and Hearing, Grievant continued to state he did not have to provide any earnings documents after the Arbitration Award issued in 2014. It is unclear what Grievant believes as he has provided some, but not all, of his earnings documents. Regardless, it does not absolve Grievant's duty to mitigate his back-pay by providing documentation of outside compensation. Grievant claims the Employer owed back-pay from the November 24, 2014 Award date until his reinstatement, and yet, he also claimed he had no duty to mitigate his loss and the Employer was barred from deducting outside compensation through that same period.

It is commonly accepted that outside earnings are properly deducted from back-pay. The Employer does not dispute the Grievant was entitled back-pay until his reinstatement; it was within its right to ask that the Grievant mitigate at the same time. This is done through requesting Grievant's Income documentation. The Grievant's assertion that he did not have to provide the information was incorrect. The Grievant was

incorrect to take it upon himself and refuse to provide the same. He could have grieved the request; instead, he was dishonest, refused to comply with Orders, and intentionally ignored his duty to mitigate. Grievant testified he and Union Representatives disagreed on the Arbitrator's Award. The Union advised Grievant he would not receive his back-pay without the earnings information provided. Grievant does not have to comply with the Union, but he does have to follow and comply with Orders; and, he cannot give false statements about prior Employers. If Grievant truly believed he did not have to provide this information, he had multiple avenues to resolve the situation unlike how he did.

The usual process of addressing issues an Employee has with Orders given by the Employer, is to file a Grievance. He could have told Mr. Eckstein he did not believe he was entitled to the information; and, he could have had the Union discuss the issue with the Employer. Lastly, the Grievant could have cooperated with the request and grieve the issue later. He should have supplied the information requested and then file a Grievance. It is common for Arbitrators to find "self-help" actions are not accepted and using the Grievance Procedure is the appropriate avenue to resolving an employment dispute. Grievant, as a sworn law enforcement Officer, should understand this procedure. Grievant had a duty to comply with the request of the Employer to provide the information from Allied Universal. He could have then grieved the request.

Grievant's argument represent multiple after-the-fact theories to explain his conduct. Grievant was confronted with the fact the 1040 Return he submitted to the Union was inaccurate. He concedes the same but then tries to legitimize his actions with multiple unpersuasive claims. He testified he filed an amended 1040 on July 5, 2017 that included the Allied Universal income. If accurate, the Union would have provided a copy

as evidence in the present claim. If the "amended" 1040 does exist, it only proves Grievant refused to cooperate and made inaccurate statements about his Allied earnings. He claims he found a W-2 from Allied Universal and it reminded him he worked there for approximately 6 months and received at least $12,000. More likely, Grievant learned the Employer knew about his prior employment and knew the 1040 submitted did not include those earnings. Even if his testimony is true, he still did not provide the income documentation as requested.

In Grievant's second interview, he testified the 1040 provided to the Employer was accurate. If the 1040 was accurate at that time, he would not have needed to subsequently amend it later. Grievant testified he submitted the amended 1040 in July 2017, but the second interview did not occur until February 2018. If the amended 1040 existed after July 2017 as Grievant claims, then he withheld the same from the Employer through his Termination in March 2018. Grievant told the Employer the initial 1040 provided was accurate during his second interview. If the amended 1040 exists, then it only proves and bolsters the dishonesty of Grievant.

The Employer's next argument concerns Grievant' actions in regard to the Union and its representation. The Union claimed that the Employer cut out the Union when trying to gather documents about Grievant's back pay. This is not true. The Employer emailed a representative of the Union on May 2, 2017 regarding the requested documentation. The emails directly to the Grievant were covered thoroughly in the investigation. Grievant initiated that correspondence and did not include the Union in the email initially. Mr. Eckstein simply responded to an email. Grievant excluded the Union in this case.

- 12 -

During Grievant's initial interview, a Union representative was not present. Employer asked if Grievant would like to postpone and the Grievant declined to reschedule and stated that he wished to continue without a Union representative present. The Employer even encouraged Grievant to contact the Union at one point. Through Mr. Eckstein's career he testified that using tax documents to figure back pay was entirely routine. He also testified that Grievant's information was not used in any different way than usual. Grievant and Union's claim that the Union was cut out by the Employer is meritless and irrelevant to the current issue. The Employer cannot be blamed for the strained relationship between Grievant and the Union.

With respect to the alleged money owed to Grievant through his back-pay award, the Grievant claimed the Employer owed him $24,000.00 and he was going to "let it go". The Union and Grievant restated this claim at the Hearing. To date, neither has taken any action regarding the allegation. If Grievant truly believes there is money owed to him, why would he not pursue it. Grievant testified he has not been in contact with anyone about the baseless claim. The only evidence offered to show money owed was offered by the Employer. It was proven that Grievant worked 863.5 hours at Allied Universal and, as such, was overpaid in back-pay by at least $12,600.00 since the Employer was unable to verify the full period of employment for Grievant at Allied Universal. This is why the Employer sought the requested income documents.

The evidence of record clearly demonstrates Grievant violated DPS Work Rules 501.02(D)(1) and Rule 501.02(W)(1). He made intentional choices through the Investigation; he refused to participate in the Investigation; he chose to make untrue statements; and, he chose to refuse to participate. The Employer requested all documents

- 13 -

from 2013-2017. The Email correspondence reflects that request; however, he chose not to provide the documentation and refused to participate or raise any concerns to the Employer or the Union. Just because an Employee believes they are right, does not mean they can choose to refuse to comply with an Order – especially in law enforcement. Grievant should have obeyed the Order and grieved the issue later. The Grievant's own Union told him to comply and he still refused. Grievant also had a chance to mitigate when he was told to provide his pay stubs from Allied Universal. Grievant replied by saying that his Tax Return information was private. He then stated the initial 1040 he provided was accurate, but required he file an amended 1040 months prior to the interview. The Grievant made multiple choices to be defiant, misleading, and dishonest.

Union and Grievant both made allegations stated as fact without any evidence backing the same. The evidence provided by the Employer contradict these claims. The Grievant and Union tried to obfuscate the truth with irrelevant side issues, but the material fact remains: Grievant was dishonest, refused to comply with Orders from his Supervisor, and misled the Employer throughout the Investigation. Once the Employer proves dishonesty, the Arbitrator does not have the authority to modify the discipline imposed. The discipline was not arbitrary, capricious, or discriminatory. Grievant was dishonest, misleading, and refused to provide requested documents to the Employer.

For these reasons, the Employer requests the Grievance be denied.

## UNION CONTENTIONS

The Union contends the Grievant did not violate DPS 501.02(D)(1) concerning the Employer's claim Grievant falsely reported his income after his reinstatement. This charge is based upon the reluctance of Grievant to provide income information from

Allied Universal. Grievant does not deny he had worked there; however, he does deny he falsely reported information to the Employer in relation thereto. He made no false statements, verbal or written, to the Employer. The Employer is pushing the narrative Grievant was dishonest, because without that accusation, the Employer has no case. Grievant had never been untruthful about what he believed the Employer needed to calculate his back-pay. He might have been incorrect as to the necessary documents, but he did not lie. Grievant believed then, and believes now, the money earned at Allied Universal was no different from any other Employee who worked a second job, and that he did not need to disclose to the Employer.

Following the Arbitration Award of 2014, Grievant was to return to work at the same position he held before discharge. Had the Employer followed that ruling, Grievant would have returned to work in November or December of 2014. Grievant believed his official reinstatement date was November 24, 2014. When the Employer requested documents for back-pay, Grievant believed the documents needed were from his termination to November 24, 2014. He did not believe any other earnings were necessary.

The Employer has been trying to terminate Grievant for many years, appealing the previous Arbitration Decision through the Ohio Court system. Following the Appeal, the Employer reinstated Grievant pursuant to the Arbitration Award. At that time, a Representative of the Union discussed the issue of calculating back-pay with Grievant. Grievant claimed the Representative insisted on providing more documents than Grievant believed necessary. Grievant followed the instructions and provided those documents. Grievant is not an Attorney or employed by the Union. He does not have the knowledge and experience of a Union Representative concerning back-pay. The Union first provided

the documentation to the Employer, not the Grievant. The Employer should have contacted the Union about any issues regarding the materials provided initially, not the Grievant. The Employer instead "cut out" the Union and approached Grievant directly. The Employer knew about Grievant's employment at Allied Universal as early as February 2, 2017. The Employer contacted the Grievant directly about his documentation in spite of, or due to, that knowledge.

The Employer claims Grievant's answers to their first inquiry were dishonest. The Employer also claims Grievant failed to notify them when he disagreed to their interpretation of the necessary documentation they requested. Grievant has insisted consistently the only earnings due were those he received prior to November 24, 2014. Grievant replied to the Employer's Email stating he attached all of the Documents he submitted to the Email the Employer sent. Mr. Eckstein admitted this was the first time he has handled back-pay after an appellate process, and he agreed the Arbitrator could only rule upon what he knew at the time of the Award. The ruling bases the reinstatement upon a November 24, 2014 date, and Grievant relied upon this date. Grievant did not affirm or deny the earnings from Allied Universal; as he did not believe it was relevant to the date of the Award.

During the Investigation, Grievant reported there was nothing requiring him to disclose where he worked during the time in question. He was not trying to hide anything, he just did not believe that was information he was required to turn over. Grievant has not changed his position regarding the same. He currently believes he does not have to provide the Employer any information of his income following the November 24, 2014 date. Testimony given by Charles Linek supports the position of the Union

concerning how this issue should have been addressed. The Employer was aware of the identity of the Union Representative. Mr. Linek agreed the Employer should have approached the Union Representative if there were any questions about Grievant's back-pay. He also stated the legal conclusions of Grievant were incorrect, not that Grievant had lied. Mr. Linek acknowledged Grievant could have been mistaken about the required documentation and the Employer could have contacted the Union for clarification. It could have gone back to the Arbitrator to seek clarification; however, the Employer did neither. The Employer's goal was to fire Grievant.

It is clear Grievant did not lie. The Hearing Officer at Step 2 of the Grievance concluded Grievant had to supply records of his earnings from the period of his discharge. That is only the opinion of the Hearing Officer and the Award does not state the same. There is no period of time set forth in the Award. As such, Grievant has a different interpretation regarding the information he was to provide the Employer.

Additionally, the Union argues Grievant did not violated DPS 501.02(W)(1). Whereas the Employer claims Grievant failed to provide verification of income when requested, the Employer should have contacted a Union Representative instead of contacting Grievant directly. Regardless, Grievant did not fail to provide verification of income. He provided multiple documents and when prompted by the Union, provided more. The Employer stated Grievant provided more documentation than necessary, such as OPERS documentation. The only documents missing were the documents Grievant felt he did not have to provide. Grievant believes he does not have to provide that documentation.

The Union submits Grievant was not fired for dishonesty or non-compliance of orders; rather, Grievant was fired due to a long-standing vendetta against him. This is shown by the Employer's Appeal of the 2014 Arbitration Award. This Case has nothing to do with Grievant's work performance and the Employer has never denied he is a good Enforcement Agent. Grievant's conduct does not negatively affect his ability to perform in his position nor does it negatively affect the ability of the Employer to function properly. He has not been charged with any crime that would create a conflict of interest for Grievant. He did not lie under oath. The Employer was just unhappy with the 2014 Arbitration Decision requiring his return to work with back-pay.

The Employer was aware of Grievant's income from Allied Universal before they ever contacted Grievant and yet, the Employer never directly discussed Allied with Grievant. A follow-up would have clarified the misunderstanding. The Employer was not looking for the truth; it was only interested in manufacturing dishonesty to justify Termination. The Employer admitted it readily paid money to Grievant to which it believes he is not entitled. They were aware Grievant had worked at Allied Universal before making that payment. Making a mistake does not constitute dishonesty.

The Employer hired Ms. Robson in January 2017 and she claims she hired Grievant at Allied Universal. However, it appears the Branch Manager hired Grievant. Ms. Robson testified Grievant had lied to her before - during the interview process for Allied. She testified Grievant claimed he left DPS because he did not receive a promotion. Most who apply for a new position will inflate their work history and avoid discussing prior terminations. However, Ms. Robson told Mr. Eckstein Grievant admitted he was fired from DPS during his interview at Allied Universal. Ms. Robson's testimony

is contradictory with respect to this statement. There is no evidence of dishonesty by Grievant. He did most likely misunderstand the requirements of the back-pay documentation; however, such does not equate to dishonesty. The Employer requested Grievant's Tax Documents, which the Grievant admitted needed amending. If there was purported fraud, then the IRS would investigate. There was no attempt at deception by Grievant. He simply believed the Employer was not entitled to the records past November 2014.

Employer failed to return all money due to Grievant. Grievant had to fight to receive the money due for his OPERS contributions and he has not received the interest ordered by the Court. Even if Grievant repaid the money the Employer claims he earned from Allied Universal, the Employer would still owe Grievant.

Moreover, the Union articulates the Employer failed to follow the progressive discipline policy in the CBA and terminated Grievant without just cause. Article 19.05 of the CBA requires the Employer follow the principles of progressive discipline. The Employer had several options of discipline instead of Termination. Grievant had 21 years of service with the Employer and no discipline in his Personnel File. Immediate Termination violates the progressive discipline policy. While the CBA permits the Employer the right to use more serious discipline; such only applies when the actions of Employees constitute serious misconduct. The Employer made no attempt to prove Grievant was guilty of serious misconduct justifying departure from the progressive discipline policy. The alleged conduct does not fall under serious misconduct, so the Employer is alleging Grievant was dishonest to justify his termination. The Employer has

not shown Grievant to be dishonest; it has demonstrated Grievant had a different opinion regarding necessary documentation to prove back-pay.

The Employer has the burden to substantiate the discipline in this case was justified; a burden it did not meet. The Employer was not able to prove just cause for the discipline imposed nor why the progressive discipline standard was inapplicable. Evidence supporting both is required by the CBA and is entirely lacking here. The Employer was aware it had violated the contractual requirement of progressive discipline. Just cause entitles Grievant to specific protections related to fairness in disciplinary situations. The Employer cannot discipline on a whim. The discipline carried out must be relative to the offense. The discipline here is disproportionate to the alleged offense for an Employee with over 20 years of service. The burden to establish just cause falls with the Employer and the Employer failed to meet this burden.

Contrary to the Employer's assertion, the Arbitrator has the power and duty to determine the reasonableness of the discipline imposed. Grievant was truthful and he complied with the Employer's requests to the best of his knowledge. If the Employer had any questions regarding the documents it had received to determine back-pay, the Employer could have contacted a Union Representative. If the parties were unable to clarify the appropriate documents, the matter should have gone back to the 2014 Arbitrator for clarification. Instead, the Employer terminated Grievant.

Since the Employer failed to establish just cause for any discipline in this case, the Grievance should be sustained. The Union respectfully requests the Arbitrator sustain the Grievance; order the Employer to return the Grievant to his former position; and,

make the Grievant whole including any back-pay and benefits that would be due and proper.

## DISCUSSION AND FINDINGS

The disposition of this matter hinges upon the determination of whether the Employer has established "Just Cause" as required under Article 19, titled, "Disciplinary Procedure", Section 19.01, titled, "Standard", of the Parties' Collective Bargaining Agreement for the allegations raised against Enforcement Agent, Timothy Gales concerning documentation requested by the Employer for the computation of back-pay pursuant to a previous Arbitration Decision reinstating the Grievant.

The Employer insists it obtained information wherein Grievant willfully and/or deliberately provided inaccurate or incomplete documentation related to earnings during the timeframe he was not employed with the Division subject to the back-pay computation. The Grievant, as the record demonstrates, was terminated in March 2013 and reinstated in May of 2017 following various Appeals of the Arbitration Award. During that timeframe it made numerous requests both verbally and in writing to the Grievant to provide the necessary, complete documentation for purposes of set offs based on the back-pay liability resulting from his return to work. Inasmuch as the Grievant either failed to provide accurate information and refused to do so on numerous occasions and asserted that provided was "complete and accurate", the Employer was left with but one decision -to effectuate termination.

The Union insists the Grievant has been the subject of efforts by the Employer to be removed and this time the basis for his Termination is simply unsupported by the evidentiary record. The Grievant does not deny he had worked at Allied Universal; he

does deny he failed to report that information to the Employer. He insists he made no false statements, verbal or written, and there is no evidence to suggest he was dishonest. He was never untruthful about what he believed the Employer required to calculate his back-pay. While he may have been incorrect as to what the necessary documentation consisted of, he was not untruthful. He was of the opinion the money earned at Allied Universal was no different from any other Employee who worked a second job, and such was not necessary to disclose to the Employer. At no time did he deliberately engage in false and/or misleading statements to the Employer during its inquiries to provide the documentation it was seeking.

The Union insists the Grievant is not an Attorney or an Employee of the Union and does not possess the knowledge and/or experience of Union Representatives concerning back-pay calculations. Had the Employer required additional documentation, the Employer should have contacted the Union, who represents the Grievant, about any unresolved issues regarding the documentation initially provided and whatever subsequent documentation it required. The Employer instead cut the Union out of its endeavors and dealt directly with the Grievant. The Union emphasizes that not only was the Grievant unaware of what was required with respect to the calculation of ordered back-pay and the concept of setoff in relation thereto, Mr. Eckstein testified it was his first occasion to address the calculation of back-pay.

The Union insists the Grievant was not trying to evade the request or mislead the Employer. He simply believed the monies earned at Allied Universal were nothing more than any other Employee who works a second job and therefore would not be subject to the monies owed to him by the Employer herein. He was not untruthful and did not in

- 22 -

any way mislead or deceive the Employer based on its request. He, in good faith, believed the information retarding Allied Universal was simply unnecessary with respect to the calculation of back-pay owed him, and ordered by the Arbitrator, as it pertained to his employment with the Ohio Investigative Unit, Columbus District.

The Parties' Collective Bargaining Agreement, under which the Arbitrator's authority is conferred, recognizes the requirement of Just Cause to effectuate disciplinary action. Based thereon, and the time-honored principles of Just Cause, the Employer is required to establish the Grievant was guilty of wrongdoing which served as the basis for the imposition of disciplinary action and the imposition thereof was commensurate with the nature of the infraction committed. In this particular matter, the Grievant has been charged with the alleged violation of two (2) Department Work Rules which served as the basis of his termination. The first is DPS 501.02(D)(1) – "False Statements, Truthfulness", wherein that mandate states: "[a]n Employee shall not make any false statement, verbal or written, or false claims relating to the performance of or fitness of duty." Additionally, he was charged with violation of DPS 501.01(W)(1) – "Compliance to Orders", which states, "[a]n Employee shall immediately and completely carry out the lawful orders of a Supervisor, or designated Officer in charge, which pertained to the discharge of the Employee's duties".

As previously indicated, the Grievant served as an Enforcement Agent with the Ohio Investigative Unit, the Columbus District, and has done so for approximately 20 years. The evidence of record demonstrates the Grievant has not experienced disciplinary action except for the 2013 Termination of employment which served as the basis for the calculation of back-pay owed him as awarded by Arbitrator Lewis in relation

thereto. He was terminated by the division in March 2013; ordered to be reinstated via that Award dated November 24, 2014; and, returned to work in May 2017. Given the delays, the Arbitration Award being rendered and being subject to Appeals, he was not returned to Employment with the Division until May 2017.

The Arbitration Award required the Grievant "…to supply records of *all* receipts for wage earnings…", as well as, "unemployment compensation if any", which is indeed consistent with the majority view with respect the mitigation of wages lost. The implicit presumption suggests such be accurate and complete. The Arbitration Award is tantamount to an Order from a Judge and mandates each Party to comply with the directives contained therein. Those amounts would indeed reduce the amount of back-pay required to be paid by the Division on behalf of the Grievant and pursuant to the Award. During the course of an email exchange with the Grievant, on or about June 2, 2017, Director of Human Resources for the Department of Public Safety, Joe Eckstein, asked him to confirm the list of employment he had for the time period in question - 2013-2017. The Grievant confirmed the list depicting his employment for the time period in question; however, he failed to disclose employment with Allied Universal. As the record demonstrates he provided security services for that organization for which he received $14.60 per hour.

The Union would have the Arbitrator conclude the Grievant simply misunderstood what was required with respect to the calculation of the back-pay ordered by Arbitrator Lewis. The Union, as the Grievant's Collective Bargaining Agent and well versed in these matters, indicated to him such, as requested, would be required in order for him to "get his money." Whatever assertions the Grievant has raised with respect to

- 24 -

possibly misunderstanding the scope and breadth of the time-frames involved for the calculation of back-pay could have been easily rectified by addressing such with his Collective Bargaining Agent; FOP Staff Representative and/or, General Counsel, Douglas J. Behringer. However, the record demonstrates that whatever the Union obtained from the Grievant did not include the necessary information from Allied Universal. The record demonstrates Grievant did in fact work at Allied Universal from September 24, 2016 through May 1, 2017. He earned $14.60 per hour. He failed to provide that information and as the record demonstrates, he failed to include these earnings on his 1040 Federal Tax Returns. The record demonstrates he had to amend those Returns.

From the outset, it must be recognized the Grievant's obligation as a sworn Ohio Investigative Unit, Enforcement Agent, requires the complete and forthcoming truthfulness of any Officer in his capacity. The Employer rightfully can expect sworn Officers to tell the truth and act in a forthcoming manner which bolsters one's credibility as they are often times required to testify in Court wherein, they must swear to the accuracy of Affidavits and relay crucial operational information. While indeed the Grievant provided numerous documentation to the FOP, which in turn provided such to the Employer to calculate back-pay, the Grievant failed to provide an exclusive list of that needed to calculate his *complete* earnings to offset his back-pay. The record is void of any evidence suggesting he worked at Allied as "a second job" as he asserts as the basis for not including such to the Employer. The Grievant's willful and deliberate omissions, and refused production, of ordered Documentation – both by his Superiors and Arbitrator Lewis – coupled with manufactured excuses for non-compliance, do absolutely

- 25 -

nothing to mitigate or temper his conduct or his assertions he "misunderstood" and/or "had a different interpretation" regarding his obligations under the Award. He failed to heed the representational advice of his Collective Bargaining Agent for which he has no one to blame but himself.

Neither his 2016 1040 Federal Tax Return, or any of the documentation provided by him through the FOP, disclosed the earnings from Allied Universal. It is simply implausible to conclude the Grievant failed to recall that timeframe, those earnings, and/or his employment with Allied Universal and was only reminded of same when the W-2 from that organization fell from the top of his refrigerator. Throughout the interview process concerning these matters, the Grievant insisted his Tax records were private which is evident in his statements taken from the interview wherein he indicated, "…whatever I gave you is accurate as far as I know and whatever is on my 1040 is between me and the lamp post". It is simply implausible to conclude the Grievant, as he asserts, was unaware of, or could not recall, his earnings at Allied Universal. In his second interview with Staff Lieutenant Miller in February 2018, he indicated he amended his 1040 to include those earnings thereby rendering impossible the accuracy of the original 2016 1040 Federal Tax Return the Grievant previously insisted was accurate and complete. Such did not include the Allied Universal earnings.

Additionally, with respect to the Grievant's non-compliance to orders to provide the necessary documentation to compute the back-pay owed him; the inaccurate Federal Tax Return, and the amended Tax Return for the same year(s) in question, not to mention the assertions made by him such was "all he had", the email from Mr. Eckstein requested him to confirm *all* income for the timeframe in question. Based on this evidentiary

- 26 -

record, the Grievant did not. Indeed, it must be reiterated the evidence of record simply does not lend to the conclusion he was unaware of, or inadvertently omitted, the earnings at Allied Universal on his Tax Return(s). His conduct unfortunately suggests his actions were calculated and deliberate.

As previously indicated, the calculation of back-pay is to be demonstrated and supported by the individual affected, i.e., the reinstated Employee who must take affirmative steps to provide any and all documentation, as ordered, to validate and corroborate income earned at a time when Employment was not continuous with his former Employer. In this situation, he was terminated, Arbitrator Lewis ruled he be reinstated. The Employer sought to vacate the Award that was denied by the Court of Common Pleas. The Employer chose to appeal that decision to the Court of Appeals which upheld the Arbitrator's Award. During this process, **from the date of his termination until the date of his reinstatement**, he had a time period of approximately 4 years, i.e., approximately 2013-2017, which would be subject to back-pay calculations and offsets for which he was ordered to substantiate - he did not and what he provided did not reflect "…all receipts for wage earnings…" as ordered by Arbitrator Lewis and his Employer. What he asserted was "accurate" simply were not and prove to be the basis for his demise.

It is the Grievant's, the reinstated Employee's, "ordered" and affirmative obligation to provide any and all documentation necessary to assist the Employer with calculation of back-pay and, more importantly, it is the Grievant, the reinstated Employee's affirmative obligation to mitigate his loss. While the Grievant asserts the Allied Universal income was "secondary income" not subject to the calculation of back-

pay by his primary Employer, that income existed at the time when the Grievant was terminated from his employment. Again, there is no evidence the Grievant worked at Allied prior to his Termination to corroborate his claim such was secondary employment.

His misunderstanding, if you will, with respect to the timeframe being limited from the date of Termination until the date of the Arbitration Award, is misplaced. The affected, aggrieved and reinstated Employee continues to be afforded back-pay considerations until such time he is returned to work; whenever that may be. To state another way, the period of the time the Grievant was terminated until such time he was returned to work, is the timeframe in which the obligation, the affirmative obligation to provide whatever documentation to substantiate earnings, whether via another Employer and/or Unemployment Compensation, must be established and provided; otherwise, the Grievant forfeits the opportunity to receive those earnings that are not substantiated. He would be in violation of the "Order" issued by the Arbitrator, i.e., the "Judge" in the employment realm.

Based on the totality of this evidence as presented, the actions of the Grievant run inconsistent with an individual who is committed to truthfulness and compliance to direct orders. The Grievant herein is a victim of his own demise. He had every opportunity to comply with the Employer's requests and for whatever reason chose to charter his own path inconsistent with that recommended by his Collective Bargaining Agent; and, as such, he can only blame himself for the circumstances that currently exist. This evidentiary record establishes for whatever reasons the Grievant was untruthful regarding his employment/income record-keeping and was non-compliant with the directives of the Employer, via the Arbitration Award, to provide such for proper back-pay

compensation/calculation which are routinely subject to setoffs. Accordingly, the record supports the Grievant's removal - Termination of Employment - and the actions of the Employer herein have found to have been for Just Cause as required in the Collective Bargaining Agreement. As such, the Grievance must be, and therefore is, denied.

### AWARD

The Grievance is Denied.

*David W. Stanton*

David W. Stanton, Esquire
NAA Arbitrator

January 25, 2019
Cincinnati, Ohio

A7-End

Franklin County Ohio Clerk of Courts of the Common Pleas- 2016 May 19 3:58 PM-15MS000119

EX- 10 A4

## IN THE COURT OF COURT OF COMMON PLEAS
## FRANKLIN COUNTY, OHIO

STATE OF OHIO,                                        :
OHIO DEPARTMENT OF                                    :
ADMINISTRATIVE SERVICES, OFFICE:
OF COLLECTIVE BARGAINING, ET AL.:      Case No. 15-MS-119
                                                      :
    Plaintiffs,                            :
                                                      :
v.                                                    :      JUDGE COCROFT
                                                      :
FRATERNAL ORDER OF POLICE OF  :
OHIO, INC., OHIO LABOR                                :
COUNCIL, INC.                                         :
                                                      :
    Defendant.                             :

## DECISION AND ENTRY DENYING PLAINTIFF'S MOTION
## TO VACATE ARBITRATION AWARD
## FILED FEBRUARY 20, 2015
and
## GRANTING DEFENDANT'S MOTION TO CONFIRM
## FILED MARCH 20, 2015

This matter is before the Court on the motion of the plaintiffs, State of Ohio Department of Administrative Services, Office of Collective Bargaining and Ohio Department of Public Safety ("the State"), to vacate an arbitration award under Chapter 2711 of the Revised Code. The defendant, Fraternal Order of Police, Ohio Labor Council, Inc. ("FOP"), has opposed the motion. For the following reasons, the State's motion is denied.

### I. FACTS

In 2012, the State and the FOP entered into a collective bargaining agreement ("CBA"). The State alleges that following a workplace investigation, the Director of the Ohio Department of Public Safety terminated Timothy Gales' employment as an Enforcement Agent with the Department of Public Safety for violating workplace rules,

Please note on Page 8 - A-4

1

Ohio law, and bringing "discredit" upon the Ohio Department of Public Safety. Gales filed a grievance challenging his termination and pursuant to an arbitration agreement in the CBA the parties submitted their issues to an arbitrator for resolution. Following a two-day hearing, the arbitrator issued a "decision and award" modifying Gales termination to a one-month suspension. This motion to vacate the arbitrator's award followed.

## II. LAW & ANALYSIS

### A. Procedural Background

Before reviewing the merits of the parties' arguments, it is necessary for the Court to review the procedural history of this case. "An arbitration award may be challenged only through the procedure set forth in R.C. 2711.13 * * *." *Miller v. Gunckle*, 96 Ohio St.3d 359, 2002-Ohio-4932, 775 N.E.2d 475, ¶ 10. R.C. 2711.13 provides: "After an award in an arbitration proceeding is made, any party to the arbitration *may file a motion in the court of common pleas for an order vacating, modifying, or correcting the award* as prescribed in sections 2711.10 and 2711.11 of the Revised Code." (Emphasis added.) "[T]he language of R.C. 2711.13 is clear, unmistakable and, above all, mandatory." *City of Galion v. Am. Fedn & Mun. Emps., Local No. 2243*, 71 Ohio St.3d 620, 622, 646 N.E.2d 813 (1995).

A motion filed under R.C. Chapter 2711 "is not a full complaint initiating a civil matter * * *." *Geiger v. Morgan Stanley DW, Inc.*, 10th Dist. Franklin No. 09AP-608, 2010-Ohio-2850, ¶ 20. Rather, R.C. 2711.05 provides "[a]ny application to the court of common pleas under sections 2711.01 to 2711.15, inclusive, of the Revised Code, shall be made and heard in the manner provided by law for the making and hearing of

2

motions, except as otherwise expressly provided in such sections." For this reason, the Tenth District Court of Appeals has found "the applicable rules in both the local rules and Ohio Rules of Civil Procedure are those pertaining to motions rather than those pertaining to the commencement of an action." *Reynoldsburg City Sch. Dist. Bd. of Educ. v. Licking Heights Local Sch. Dist. Bd. of Educ.*, 10th Dist. Franklin No. 11AP-173, 2011-Ohio-5063, ¶ 15.

The filings in this matter are procedurally puzzling at best. On February 20, 2015, the State filed their "Application and Motion to Vacate Arbitration Award" to the Court's docket as a complaint. Like a complaint, it contains number paragraphs setting forth the State's claims, a statement alleging proper venue, and a concise statement of the relief sought. In response the FOP filed a motion to confirm the arbitration award and a separate "answer and counterclaim," generally denying the allegations in the State's motion and seeking interest on the money owed to Gales. The State filed an "answer to [the FOP's] counterclaim." Then on May 14, 2015, the State filed a "Motion for Summary Judgment and Opposition to Defendant's Motion to Confirm the Arbitration Award." The FOP filed a "response" and thereafter the State replied.

In its response, the FOP argues that the State's motion for summary judgment should be dismissed because it is procedurally improper. The FOP points out that, even though the State timely filed a motion to vacate under R.C. 2711.13, it failed to include a memorandum in support as required by the local rules. It argues, inter alia, that the State's motion for summary judgment is an "attempt to substitute the memorandum or brief which should have accompanied the motion to vacate * * *," and does not comply with R.C. Chapter 2711. The State counters that its motion for

3

Franklin County Ohio Clerk of Courts of the Common Pleas- 2016 May 19 3:58 PM-15MS000119

summary judgment is actually its brief in support of its application to vacate the arbitration award. Moreover, under R.C. 2711.14, it was not required to file its brief at the time it filed its application to vacate the arbitration award, because a memorandum is not listed as one of the documents required to be filed with the motion. The Court rejects this argument.

The State's motion is titled "Plaintiffs' Motion for Summary Judgment and Opposition to Defendant's Motion to Confirm the Arbitration Award." The face of the motion states, "[n]ow comes the Appellant, [the State], by and through counsel, pursuant to Rule 56 of the Ohio Rules of Civil Procedure, and asks for judgment in its favor." Civ.R. 56 deals exclusively with motions for summary judgment. In addition, the State filed the document to the record as a motion for summary judgment and nearly two months after filing its motion to vacate the arbitration award. And to the extent that it is submitted as an opposition to the FOP's motion to confirm, it is untimely and filed without leave of court. *See* Loc.R. 21.01 (requiring an opposing party to serve its "answer brief" within 14 days).

With this in mind, the Court agrees with the FOP that the "Plaintiffs' Motion for Summary Judgment," is actually a motion for summary judgment and not a memorandum in support of its motion to vacate the arbitration award. Because a motion for summary judgment is not a proper filing under R.C Chapter 2711 to challenge an arbitration award the Court will not consider it and the parties' related pleadings in ruling on the State's application and motion to vacate.

4

### B. Motion to Vacate

Turning to the State's application and motion to vacate the arbitration award, it argues that the "Arbitrator exceeded his authority or so imperfectly executed them by reading provisions into the CBA that did not exist and disregarding applicable Ohio law. Specifically, the State argues that the arbitration award should be vacated "because the Arbitrator disregarded applicable Ohio law on the sale or transfer of vehicles, namely Section 4517.02(A)(6) and Section 4738.02(B) of the Ohio Revised Code and, thereby, disregarded the expressed written provision in the CBA that his award must 'conform with the Law of Ohio.'"

However, the State fails to cite any law or authority in support of its motion. It also fails to specify how it believes the arbitrator disregarded R.C. 4517.02(A)(6) and 4738.02(B) in determining his award. As the Tenth District has pointed out, the parties must conform to the applicable local rules and Ohio Rules of Civil Procedure pertaining to motion. Loc.R. 21.01 provides that "[a]ll motions shall be accompanied by a brief stating the grounds and citing authorities relied upon." Accordingly, the State has failed to comply with Loc.R. 21.01. This alone is reason to deny the State's motion.

Even considering the merits, the State's argument still fails. When parties agree to submit their controversy to binding arbitration, they agree to accept the result even if is it legally or factually wrong. *Prosper Bus. Dev. Corp. v. Intervenor*, 10th Dist. Franklin Nos. 11AP-855, 11AP-856, 2012-Ohio-2992, ¶ 42. "Because Ohio law favors and encourages arbitration, courts only have limited authority to vacate an arbitrator's award. * * * R.C. 2711.10 restricts the grounds on which a court may vacate an arbitration award to fraud, corruption, misconduct, an imperfect award, or that the

5

arbitrator exceeded his or her authority. *FOP Capital City Lodge No. 9 v. City of Reynoldsburg*, 10th Dist. Franklin Nos. 12AP-451, 12AP-452, 2013-Ohio-1057, ¶ 22.

"Once an arbitrator has made an award, it cannot be easily overturned or modified." *Id.* "It is only when the arbitrator has overstepped the bounds of his or her authority that a reviewing court will vacate or modify an award." *Queen City Lodge No. 69, Fraternal Order of Police v. Cincinnati*, 63 Ohio St.3d 403, 407, 588 N.E.2d 802 (1992).

"The parties' contract determines the parameters of an arbitrator's authority. *FOP Capital City Lodge* at ¶ 23. "An arbitrator exceeds his or her authority in rendering an award if the award does not draw its essence from the collective bargaining agreement." *Id.* "An arbitrator's award departs from the essence of the collective bargaining agreement when '(1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." *Ohio Office of Collective Bargaining v. Ohio Civil Serv. Emps. Assn., Local 11*, 59 Ohio St.3d 177, 572 N.E.2d 71 (1991), syllabus. "An award lacks rational support when the collective bargaining agreement does not give grounds for, make legitimate, or provide justification for the award. * * * An award cannot be rationally derived from the collective bargaining agreement's terms when it cannot be deduced or reasoned from those terms."

Here, a review of the arbitrator's award shows it did not depart from the essence of the CBA. The arbitrator considered and applied both statutes that the State alleges he disregarded. In fact, he applied the appropriate statute to each of Gales' alleged title transfers. Therefore, the Court disagrees that the arbitrator disregarded the statutes

and exceeded his authority as alleged by the State in its application and motion to vacate. Accordingly, the State's motion to vacate the arbitration award is **DENIED**.

### C. Motion to Confirm

Turning to the FOP's motion to confirm, it opposes the merits of the plaintiff's application and motion to vacate arbitration award and moves the Court to confirm the arbitration award under R.C. 2711.09. The State did not file its opposition to the motion to confirm within 14 days of the date of service as set forth on the FOP's certificate of service attached to the motion, thus the opposition is untimely under Loc.R. 21.01. Accordingly, the Court will not consider it when ruling on the FOP's motion to confirm.

R.C. 2711.09 provides in relevant part "[a]t any time within one year after an award in an arbitration proceeding is made, any party to the arbitration may apply to the court of common pleas for an order confirming the award. Thereupon the court shall grant such an order and enter judgment thereon, unless the award is vacated, modified, or corrected as prescribed in sections 2711.10 and 2711.11 of the Revised Code."

"When a motion is made pursuant to R.C. 2711.09 to confirm an arbitration award, the court *must* grant the motion if it is timely, unless a timely motion for modification or vacation has been made and cause to modify or vacate is shown." *Warren Edn. Assn. v. Warren City Bd. of Ed.,* 18 Ohio St.3d 170, 480 N.E.2d 456 (1985), syllabus. (Emphasis added.)

Therefore because the State has not shown cause to vacate the arbitration award, R.C. 2711.09 requires the Court to confirm the award. Accordingly, the FOP's motion to confirm is **GRANTED**.

Franklin County Ohio Clerk of Courts of the Common Pleas- 2016 May 19 3:58 PM-15MS000119

In its motion, the FOP also seeks interest on the arbitration award under R.C.

1343.03. The arbitrator's decision and award states Gales:

> is to be considered suspended without pay from his termination date of
> March 21, 2013 through April 21, 2013. He is to be immediately restored
> to the same position he held before his discharge. He is to receive all
> straight time wages he would have received but for this incident. Upon
> request from the Employer, the Grievant is to supply records of all receipts
> for wage earnings and Unemployment Compensation, if any. The
> Employer may use these amounts to reduce its obligation to the Grievant.
> All expenditures for health incurred by the Grievant that would otherwise
> have been paid by Employer-provided health insurance are to[sic]
> reimbursed to Mr. Gales. Appropriate seniority credit is to be restored to
> the Grievant. Appropriate pension contributions are to be made on his
> behalf as if this incident did not occur.

Here, the FOP asserts that because the State has refused to reinstate Gales and

pay him any money owed, he is entitled to interest on his back pay under R.C. 1343.03.

"To compensate an aggrieved employee and make him whole, R.C. 1343.03 provides

for a trial court's award of interest on the back pay due to a wrongfully discharged

employee from the date of the arbitrator's award until reinstatement. *City of Parma v.

Parma Fire Fighters Ass'n, Local 639*, 8th Dist. Cuyahoga No. 99263, 2013-Ohio-2918,

¶ 20. Thus, a trial court may award pre- and postjudgment interest on the back pay

due to the employee from the date of the arbitrator's award until he is reinstated. *Id.*

Accordingly, the Court awards pre- and postjudgment interest on the back pay due to

Gales at the statutory rate under R.C. 1343.03 from November 24, 2014, until the date

he is reinstated.

**IT IS SO ORDERED.**

**Copies to all parties.**

Franklin County Court of Common Pleas

**Date:**           05-19-2016

**Case Title:**      OHIO STATE DEPT ADMINISTRATIVE SERVICES ET AL -VS-
                    FOP OHIO INC OHIO LABOR COUNCIL INC
**Case Number:**    15MS000119

**Type:**            DECISION/ENTRY

It Is So Ordered.

/s/ Judge Kimberly Cocroft

Electronically signed on 2016-May-19    page 9 of 9

ATTACHMENT
A-5

0D542 - R82 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Apr 14 11:34 AM-15MS000119

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, Ohio Department of Administrative Services, Office of Collective Bargaining et al., | : | |
| | : | |
| Plaintiffs-Appellants, | : | No. 16AP-457 (C.P.C. No. 15MS-119) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Fraternal Order of Police of Ohio, Inc., Ohio Labor Council, Inc., | : | |
| | : | |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on April 13, 2017

**On brief:** *Mike DeWine*, Attorney General, *Robert E. Fekete* and *Sloan T. Spalding*, for appellants. **Argued:** *Robert E. Fekete*.

**On brief:** *Paul L. Cox, Gwen Callender*, and *Douglas J. Behringer*, for appellee. **Argued:** *Douglas J. Behringer*.

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1}  Plaintiffs-appellants, State of Ohio, Ohio Department of Administrative Services, Office of Collective Bargaining, and Ohio Department of Public Safety ("DPS") (collectively "the state"), appeal from a decision and entry of the Franklin County Court of Common Pleas denying the state's motion to vacate the arbitration award and granting the motion to confirm the arbitration award of defendant-appellee, Fraternal Order of Police of Ohio, Inc., Ohio Labor Council, Inc. ("FOP").  For the following reasons, we affirm.

PLEASE NOTE: ON PAGE 14 the...
1. DISt dPS can't profit from

A-5

OD542 - R93
Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Apr 14 11:34 AM-15MS000119

No. 16AP-457                                                                          2

## I. Facts and Procedural History

{¶ 2} Effective July 1, 2012, the state and FOP entered into a collective bargaining agreement ("CBA") allowing, among other things, the parties to submit certain disputes to arbitration. On March 1, 2013, the director of DPS issued a letter to Timothy Gales, an employee of the Ohio Investigative Unit, informing him that his employment had been terminated. Following a workplace investigation into allegations that Gales had sold numerous vehicles that he purchased at auction to members of the public without obtaining a dealer or salvage license from the Ohio Bureau of Motor Vehicles, DPS decided to terminate Gales' employment for violation of workplace rules, violation of Ohio law, and "actions that brought discredit" upon DPS. (Feb. 20, 2015 Application & Mot. to Vacate at ¶ 9.)

{¶ 3} Pursuant to the terms of the CBA, Gales filed a grievance challenging the nature and merits of his March 13, 2013 termination. The parties then submitted the matter of Gales' termination to arbitration. Following a two-day hearing in September 2014, the arbitrator rendered a decision and award dated November 24, 2014 modifying Gales' termination to a one-month suspension without pay.

{¶ 4} On February 20, 2015, the state filed an "application and motion to vacate arbitration award" in the trial court, arguing the arbitrator exceeded or so imperfectly executed his authority by disregarding applicable Ohio law. The state further asserted the arbitrator disregarded the plain and unambiguous meaning of the CBA. Along with its motion to vacate, the state filed the arbitrator's award and the CBA. FOP responded on March 20, 2015 in an "answer and counterclaim" asserting the trial court should deny the state's motion to vacate and seeking an order (1) confirming the arbitration award, (2) requiring the state to pay Gales any and all back pay and benefits, (3) awarding interest to Gales, and (4) requiring the state to pay all costs.

{¶ 5} Subsequently, on April 17, 2015, the state filed a document captioned "plaintiffs' motion for summary judgment and opposition to defendant's motion to confirm the arbitration award," along with documents related to the proceedings before the arbitrator. That same day, the state filed an answer to FOP's counterclaim.

{¶ 6} In response, FOP filed a memorandum contra the state's motion for summary judgment on April 23, 2015 arguing (1) a motion for summary judgment is not

Franklin County Ohio Court of Appeals Clerk of Courts- 2017 Apr 13 1:35 PM-16AP000457

0D542 - R2A Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Apr 14 11:34 AM-15MS000119

No. 16AP-457                                                                                              3

an allowable filing under Civ.R. 1; (2) the state did not comply with the filing requirements of R.C. Chapter 2711; (3) the state's motion for summary judgment is not a responsive pleading; and (4) the state is attempting to have the trial court retry the merits of the arbitration. The parties agreed to an extension of time, and the state responded with a reply brief on May 14, 2015 in which the state argued that it erroneously captioned its motion as a motion for summary judgment and intended to file a brief in support of its application to vacate the arbitration award.

{¶ 7} On May 19, 2016, the trial court issued a decision and entry denying the state's motion to vacate the arbitration award and granting FOP's motion to confirm the arbitration award. In reaching its decision, the trial court stated "[t]he filings in this matter are procedurally puzzling at best." (May 19, 2016 Decision & Entry at 3.) The trial court referred to the state's initial filing as a motion to vacate but noted it was docketed as a complaint and stylistically looks like a complaint. In considering the state's assertion that the state intended its motion for summary judgment to operate as a brief in support of its application to vacate, the trial court noted the face of the motion for summary judgment states it is a filing pursuant to Civ.R. 56, which deals exclusively with motions for summary judgment. Additionally, the trial court stated that to the extent the state intended the "motion for summary judgment" as an answer brief to FOP's motion to confirm, the filing is untimely pursuant to Loc.R. 21.01 of the Court of Common Pleas of Franklin County, General Division. Thus, the trial court determined the state's filing captioned "motion for summary judgment" was actually a motion for summary judgment and not a memorandum in support of its motion to vacate, making it an improper filing under R.C. Chapter 2711. On those grounds, the trial court stated it would not consider the state's "motion for summary judgment."

{¶ 8} The trial court then turned to the state's motion to vacate and determined the state did not comply with Loc.R. 21.01 because it did not file a brief stating the grounds for its requested relief along with its motion to vacate, finding "[t]his alone is reason to deny the State's motion." (Decision & Entry at 5.) However, the trial court went on to state that even if it were to consider the merits of the state's motion, the state's motion nonetheless fails because the arbitrator did not exceed his authority.

Franklin County Ohio Court of Appeals Clerk of Courts- 2017 Apr 13 1:35 PM-16AP000457

OD542 - R95 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Apr 14 11:34 AM-15MS000119

Franklin County Ohio Court of Appeals Clerk of Courts- 2017 Apr 13 1:35 PM-16AP000457

No. 16AP-457                                                                                              4

{¶ 9}  As to FOP's motion to confirm, the trial court reiterated that the state did not file its opposition to FOP's motion within 14 days of the date of service as required by Loc.R. 21.01. The trial court then granted FOP's motion to confirm on the grounds that, pursuant to R.C. 2711.09, the state did not show cause to vacate the arbitration award. Additionally, the trial court stated it was awarding both pre- and postjudgment interest on the back pay due to Gales from November 24, 2014 until the date he is reinstated. The state timely appeals.

## II. Assignments of Error

{¶ 10}  The state assigns the following errors for our review:

> 1. The Common Pleas Court erred as a matter of law in finding that the State has not complied with the jurisdictional and/or procedural requirements to vacate the arbitration award.
>
> 2. The Common Pleas Court erred as matter of law in confirming the award, failing to vacate the award and in failing to address the substantial grounds upon which the State sought to vacate the arbitration award.
>
> 3. The Common Pleas Court erred as a matter of law when it awarded pre-judgment interest to the Appellee.

## III. First and Second Assignments of Error – Arbitration Award

{¶ 11}  In its first assignment of error, the state argues the trial court erred in determining the state did not comply with the jurisdictional and/or procedural requirements of R.C. Chapter 2711 in order to vacate the arbitration award. The state argues in its second assignment of error that the trial court erred in failing to vacate the arbitration award on the merits. In its decision and entry, the trial court stated it was denying the state's motion to vacate the arbitration award on the grounds that (1) the state did not satisfy the jurisdictional and/or procedural requirements of R.C. Chapter 2711, and (2) even if the state's motion and subsequent filings were proper under R.C. Chapter 2711, the motion nonetheless fails on its merits. Thus, because the state's first two assignments of error address the trial court's alternative bases for denying the state's motion, we address the first two assignments of error jointly. Taken together, the first two assignments of error assert the trial court erred in denying the state's motion to vacate the arbitration award.

OD542 - RPC Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Apr 14 11:34 AM-15MS000119

No. 16AP-457                                                                          5

{¶ 12} Generally, an appellate court reviews a trial court's decision denying a motion to vacate an arbitration award under an abuse of discretion standard. *See Licking Hts. Local School Dist. Bd. of Edn. v. Reynoldsburg City School Dist. Bd. of Edn.*, 10th Dist. No. 12AP-579, 2013-Ohio-3211, ¶ 8; *Buchholz v. West Chester Dental Group*, 12th Dist. No. CA2007-11-292, 2008-Ohio-5299, ¶ 22 ("[a]n appellate court will review the common pleas court's decision to confirm, modify, vacate or enforce the arbitration award based on abuse of discretion"). An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). However, when the appeal presents a question of law, the de novo standard of review is proper. *Licking Hts. Local School Dist.* at ¶ 9, citing *Hudson v. John Hancock Fin. Servs.*, 10th Dist. No. 06AP-1284, 2007-Ohio-6697, ¶ 8 (de novo review appropriate for questions of contract interpretation and statutory interpretation). Accordingly, to the extent the state's first two assignments of error raise issues of statutory application, we will review the trial court's decision de novo. *Id.*

**A. Procedural Issues**

{¶ 13} Initially, the state argues the trial court erred when it determined it would not consider the state's "motion for summary judgment" and that the state failed to comply with the applicable statute and local rule. The state asserts the trial court erroneously interpreted R.C. Chapter 2711 to require a brief in support of an application to vacate within three months of the arbitration award.

{¶ 14} "An arbitration award may be challenged only through the procedure set forth in R.C. 2711.13 and on the grounds enumerated in R.C. 2711.10 and 2711.11." *Miller v. Gunckle*, 96 Ohio St.3d 359, 2002-Ohio-4932, ¶ 10, citing *Schaefer v. Allstate Ins. Co.*, 63 Ohio St.3d 708, 711 (1992). Pursuant to R.C. 2711.13, after an arbitrator makes an award in an arbitration proceeding, "any party to the arbitration may file a motion in the court of common pleas for an order vacating, modifying, or correcting the award as prescribed in sections 2711.10 and 2711.11 of the Revised Code." Moreover, "the language of R.C. 2711.13 is clear, unmistakable, and, above all, mandatory." *Galion v. Am. Fedn. & Mun. Emps., Local No. 2243*, 71 Ohio St.3d 620, 622 (1995).

{¶ 15} As this court has noted, a motion filed under R.C. Chapter 2711 "is not a full complaint initiating a civil matter." *Geiger v. Morgan Stanley DW, Inc.*, 10th Dist. No.

Franklin County Ohio Court of Appeals Clerk of Courts- 2017 Apr 13 1:35 PM-16AP000457

OD542 - R27 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Apr 14 11:34 AM-15MS000119

Franklin County Ohio Court of Appeals Clerk of Courts- 2017 Apr 13 1:35 PM-16AP000457

No. 16AP-457                                                                                      6

09AP-608, 2010-Ohio-2850, ¶ 19. Thus, "the applicable rules in both the local rules and Ohio Rules of Civil Procedure are those pertaining to motions rather than those pertaining to the commencement of an action." *Reynoldsburg City School Dist. Bd. of Edn. v. Licking Hts. Local School Dist. Bd. of Edn.*, 10th Dist. No. 11AP-173, 2011-Ohio-5063, ¶ 15. Relying on this language, the trial court determined that even though the state timely filed a motion to vacate, it did not file a memorandum in support as required by Loc.R. 21.01. The trial court did not agree with the state that its motion for summary judgment could be construed as a memorandum in support of its motion to vacate. Additionally, the trial court determined that to the extent the state intended its motion for summary judgment to operate as a memorandum in opposition to FOP's motion to confirm, the filing was untimely under the local rules. Loc.R. 21.01 (stating "[a]ll motions shall be accompanied by a brief stating the grounds and citing the authorities relied upon * * * on or before the 14th day after the date of service").

{¶ 16} The state argues the trial court erred in not considering its "motion for summary judgment" based on procedural grounds. However, we need not determine whether the trial court erred in its application of the procedural requirements of R.C. Chapter 2711 and the relevant local rules to this case because, even if it did, the trial court also decided this case on the alternative basis of the merits of the motion. Thus, even if we were to agree with the state that the trial court erred in its procedural rulings, our next step would be to review the trial court's disposition of the state's motion to vacate on the merits. Accordingly, the question before us is whether the trial court erred in denying the state's motion to vacate on the merits and granting FOP's motion to confirm the award.

**B. Merits of the State's Motion to Vacate the Arbitration Award**

{¶ 17} "Because Ohio law favors and encourages arbitration, courts only have limited authority to vacate an arbitrator's award." *Fraternal Order of Police Capital City Lodge No. 9 v. Reynoldsburg*, 10th Dist. No. 12AP-451, 2013-Ohio-1057, ¶ 22, citing *Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters v. Cleveland*, 99 Ohio St.3d 476, 2003-Ohio-4278, ¶ 13. Pursuant to R.C. 2711.10, a court may vacate an arbitration award only on the grounds of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his or her authority. *Id.* Here, the state requested

OD542 - R88Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Apr 14 11:34 AM-15MS000119

No. 16AP-457                                                                                   7

the trial court vacate the award for Gales on the ground that the arbitrator exceeded his authority. R.C. 2711.01(D).

{¶ 18} A reviewing court cannot easily overturn an arbitrator's award. *Fraternal Order of Police Capital City Lodge No. 9* at ¶ 23, citing *Queen City Lodge No. 69, Fraternal Order of Police, Hamilton Cty., Ohio, Inc. v. Cincinnati*, 63 Ohio St.3d 403, 407 (1992). " 'It is only when the arbitrator has overstepped the bounds of his or her authority that a reviewing court will vacate or modify an award.' " *Id.*, quoting *Queen City Lodge No. 69* at 407. The language of the parties' contract determines the parameters of an arbitrator's authority. *Id.*, citing *State Farm Mut. Ins. Co. v. Blevins*, 49 Ohio St.3d 165 (1990), paragraph one of the syllabus. "An arbitrator exceeds his or her authority in rendering an award if the award does not draw its essence from the collective bargaining agreement." *Id.*, citing *Queen City Lodge No. 69* at 406. Moreover, an arbitrator's award draws its essence from a collective bargaining agreement "when there is a rational nexus between the agreement and the award, and where the award is not arbitrary, capricious, or unlawful." *Id.*, citing *Mahoning Cty. Bd. of Mental Retardation & Dev. Disabilities v. Mahoning Cty. TMR Edn. Assn.*, 22 Ohio St.3d 80 (1986), paragraph one of the syllabus.

{¶ 19} In contrast, an arbitrator's award departs from the essence of the collective bargaining agreement when "(1) the award conflicts with the express terms of the agreement, and/or (2) the award is without rational support or cannot be rationally derived from the terms of the agreement." *Ohio Office of Collective Bargaining v. Ohio Civil Serv. Emps. Assn., Local 11, AFSCME, AFL-CIO*, 59 Ohio St.3d 177 (1991), syllabus. When the collective bargaining agreement does not give grounds for, make legitimate, or provide justification for the award, then the award lacks rational support. *Fraternal Order of Police Capital City Lodge No. 9* at ¶ 23. Additionally, "[a]n award cannot be rationally derived from the collective bargaining agreement's terms when it cannot be deduced or reasoned from those terms." *Id.*

{¶ 20} DPS terminated Gales, in part, for violating provisions of the Ohio Revised Code related to the sale of automobiles without a license. The state argues the arbitrator exceeded his authority when he construed R.C. 4738.02(B) and 4517.02(A)(6) to allow for an exception for sales of automobiles to family members or to require that the seller make a profit on the vehicle. *See* R.C. 4517.01(O) (defining "casual sale" as "any transfer of a

Franklin County Ohio Court of Appeals Clerk of Courts- 2017 Apr 13 1:35 PM-16AP000457

OD542 – R99 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Apr 14 11:34 AM-15MS000119

No. 16AP-457                                                                                          8

motor vehicle by a person other than a new motor vehicle dealer"). Article 20.08(4) of the
parties' CBA provides that "[t]he arbitrator's decision shall be final and binding * * *
provided such decisions conform with the Law of Ohio and do not exceed the jurisdiction
or authority of the arbitrator as set forth in this Article." Thus, the state argues that by
creating exceptions in the Revised Code that did not exist in the plain language of the
statutes, the arbitrator rendered a decision that did not conform with the law of Ohio, in
contradiction of the express terms of the CBA.

{¶ 21} After reviewing the record before us, even construing the state's "motion for
summary judgment" as a brief in support of its motion to vacate and considering the
arguments advanced therein, we agree with the trial court that the state is unable to show
that the arbitrator exceeded his authority. The issue before the arbitrator was whether
Gales' conduct warranted termination. After taking evidence and hearing arguments
from both parties, the arbitrator made the factual determination that Gales' conduct did
not rise to the level of requiring termination but did warrant discipline in the form of a
one-month suspension without pay.

{¶ 22} "The arbitrator is the final judge of both the law and the facts, and a court
may not substitute its judgment for that of the arbitrator." *Fresh Eggs Manager, LLC v.
Ohio Fresh Eggs*, 10th Dist. No. 12AP-1074, 2013-Ohio-3454, ¶ 13, citing *Madison Local
School Dist. Bd. of Edn. v. OAPSE/AFSCME Local 4*, 11th Dist. No. 2008-L-086, 2009-
Ohio-1315, ¶ 9. Though the state may disagree with the arbitrator's interpretation of the
applicable law, the arbitrator nonetheless considered and applied the statutes to each of
Gales' title transfers, concluding there was not clear and convincing proof that Gales'
offenses rise to the level of termination. *Id.* at ¶ 27 ("[w]hile appellants clearly disagree
with the arbitrator's conclusions, that is not a valid basis for vacating an arbitration
award"). Additionally, the arbitrator went through the various applicable provisions of
the CBA and applied the terms of the CBA to the dispute at hand. *Id.* at ¶ 18 (noting that
"[a]s long as the arbitrator is arguably construing the contract, the trial court is obliged to
affirm its decision"). Therefore, we find the arbitrator did not exceed his authority, and
the trial court did not err in denying the state's motion to vacate the arbitration award.

0A263 – U26

No. 16AP-457                                                                                    10

## IV. Third Assignment of Error – Prejudgment Interest

{¶ 27} In its third and final assignment of error, the state argues the trial court erred as a matter of law when it awarded Gales prejudgment interest.

{¶ 28} " 'R.C. 1343.03(A) establishes interest rates for both prejudgment and post-judgment interest in actions based on contract.' " *Licking Hts. Local School Dist.* at ¶ 25, quoting *Rutledge v. Lilley*, 9th Dist. No. 09CA009691, 2010-Ohio-2275, ¶ 10. In denying the state's motion to vacate and granting FOP's motion to confirm the arbitration award, the trial court awarded both pre- and postjudgment interest on the back pay due to Gales at the statutory rate under R.C. 1343.03 from November 24, 2014 until the date DPS reinstates Gales to his position. The state asserts, however, that, as a matter of law, a court cannot assess *prejudgment* interest against the state. *Judy v. Ohio Bur. of Motor Vehicles*, 100 Ohio St.3d 122, 2003-Ohio-5277, ¶ 30. However, the state concedes that both the relevant case law and applicable statutes expressly permit an assessment of *postjudgment* interest against the state. *Id.* at ¶ 31-33 ("the state is liable for postjudgment interest under R.C. 1343.03"). The issue on appeal, then, is from what date was there a "judgment" in order to calculate the assessment of postjudgment interest.

{¶ 29} The trial court found Gales was entitled to interest on the arbitration award from November 24, 2014, the date of the arbitrator's decision. " 'The purpose of postjudgment interest awards is to guarantee a successful plaintiff that the judgment will be paid promptly, and to prevent a judgment debtor from profiting by withholding money belonging to the plaintiff.' " *Licking Hts. Local School Dist. Bd. of Edn.* at ¶ 27, quoting *Lovewell v. Physicians Ins. Co. of Ohio*, 79 Ohio St.3d 143, 147 (1997). "By comparison, the purpose of prejudgment interest is compensation to the plaintiff for the period of time between accrual of the claim and judgment." *Id.*, citing *Eckel v. Bowling Green State Univ.*, 10th Dist. No. 11AP-781, 2012-Ohio-3164.

{¶ 30} This court has previously determined that where a trial court does not specify whether it was awarding pre- or postjudgment interest but awards interest as of the date of the arbitration award, "it is clear that the award was of postjudgment interest." *Licking Hts. Local School Dist. Bd. of Edn.* at ¶ 27. We reasoned in *Licking Hts. Local School Dist. Bd. of Edn.* that the date of the arbitration award is the date of the "judgment" because a party to arbitration is "not legally obligated to seek confirmation of

Franklin County Ohio Court of Appeals Clerk of Courts- 2017 Apr 13 1:35 PM-16AP000457

OD542 - S Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Apr 14 11:34 AM-15MS000119

No. 16AP-457                                                                                    9

Franklin County Ohio Court of Appeals Clerk of Courts- 2017 Apr 13 1:35 PM-16AP000457

### C. Public Policy

{¶ 23} The state additionally argues that the arbitrator's award violates public policy and, thus, this court must vacate it. We disagree.

{¶ 24} "If the arbitrator's interpretation of a collective bargaining agreement violates an explicit public policy, the resulting award is unenforceable." *Fraternal Order of Police Capital City Lodge No. 9* at ¶ 34, citing *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 112 (2001). "The public policy must be well defined and dominant, and must be ascertained ' "by reference to the laws and legal precedents and not from general considerations of supposed public interests." ' " *Id.*, quoting *Southwest Ohio Regional Transit Auth.* at 112, quoting *Muschany v. United States*, 324 U.S. 49, 66 (1945). "Vacating an arbitration award for public policy reasons is a narrow exception to the 'hands off' policy that courts employ in reviewing arbitration awards and ' "does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy." ' " *Id.*, quoting *Southwest Ohio Regional Transit Auth.* at 112, quoting *United Paperworkers Internatl. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43 (1987).

{¶ 25} Here, the state argues the arbitrator's award violates the "settled public policy * * * that police officers are held to a higher standard of conduct than the general public." (Citations omitted.) *Jones v. Franklin Cty. Sherriff*, 52 Ohio St.3d 40, 43 (1990). We note, however, that *Jones* involved an appeal to the State Personnel Board of Review and not an arbitration award under a collective bargaining agreement. Moreover, though the arbitrator reversed Gales' termination, the arbitrator nonetheless disciplined Gales in the form of a one-month suspension without pay. The state does not point to any authority requiring termination of a law enforcement officer rather than suspension for similar conduct, nor does the state demonstrate whether Gales was or was not held to a higher standard than a member of the general public engaging in the same conduct. Thus, the arbitrator's award was not in violation of public policy.

{¶ 26} Having concluded the trial court did not err in denying the state's motion to vacate the arbitration award, we overrule the state's first and second assignments of error.

OA263 - U27

the arbitration award." *Id.* at ¶ 32. Thus, although the trial court here erroneously stated it was awarding both pre- and postjudgment interest, by dating the interest from the date of the arbitrator's award, we conclude the trial court's award of interest, as in *Licking Hts. Local School Dist. Bd. of Edn.*, was actually an award of postjudgment interest. Thus, the trial court did not err in awarding interest from November 24, 2014, the date of the arbitrator's award. Accordingly, we overrule the state's third and final assignment of error.

## V. Disposition

{¶ 31} Based on the foregoing reasons, the trial court did not err in denying the state's motion to vacate the arbitration award or in awarding interest from the date of the arbitrator's award. Having overruled the state's three assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK, P.J., and KLATT, J., concur.

_____

## 4117.08 Matters subject to collective bargaining.

(A) All matters pertaining to wages, hours, or terms and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement are subject to collective bargaining between the public employer and the exclusive representative, except as otherwise specified in this section and division (E) of section 4117.03 of the Revised Code.

(B) The conduct and grading of civil service examinations, the rating of candidates, the establishment of eligible lists from the examinations, and the original appointments from the eligible lists are not appropriate subjects for collective bargaining.

(C) Unless a public employer agrees otherwise in a collective bargaining agreement, nothing in Chapter 4117. of the Revised Code impairs the right and responsibility of each public employer to:

(1) Determine matters of inherent managerial policy which include, but are not limited to areas of discretion or policy such as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, and organizational structure;

(2) Direct, supervise, evaluate, or hire employees;

(3) Maintain and improve the efficiency and effectiveness of governmental operations;

(4) Determine the overall methods, process, means, or personnel by which governmental operations are to be conducted;

(5) Suspend, discipline, demote, or discharge for just cause, or lay off, transfer, assign, schedule, promote, or retain employees;

(6) Determine the adequacy of the work force;

(7) Determine the overall mission of the employer as a unit of government;

(8) Effectively manage the work force;

(9) Take actions to carry out the mission of the public employer as a governmental unit.

The employer is not required to bargain on subjects reserved to the management and direction of the governmental unit except as affect wages, hours, terms and conditions of employment, and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement. A public employee or exclusive representative may raise a legitimate complaint or file a grievance based on the collective bargaining agreement.

Effective Date: 04-01-1984; 09-29-2005; 2007 HB119 09-29-2007 .

**Note:** The amendment to this section by 129th General AssemblyFile No.10, SB 5, §1 was rejected by voters in the November, 2011 election.

Case: 2:21-cv-00328-MHW-KAJ Doc #: 7-1 Filed: 03/31/21 Page: 55 of 55 PAGEID #: 152
Lawriter - ORC - 5502.01 General duties of department.
Page 1 of 2

# 5502.01 General duties of department.



(A) The department of public safety shall administer and enforce the laws relating to the registration, licensing, sale, and operation of motor vehicles and the laws pertaining to the licensing of drivers of motor vehicles.

The department shall compile, analyze, and publish statistics relative to motor vehicle accidents and the causes of them, prepare and conduct educational programs for the purpose of promoting safety in the operation of motor vehicles on the highways, and conduct research and studies for the purpose of promoting safety on the highways of this state.

(B) The department shall administer the laws and rules relative to trauma and emergency medical services specified in Chapter 4765. of the Revised Code and any laws and rules relative to medical transportation services specified in Chapter 4766. of the Revised Code.

(C) The department shall administer and enforce the laws contained in Chapters 4301. and 4303. of the Revised Code and enforce the rules and orders of the liquor control commission pertaining to retail liquor permit holders.

(D) The department shall administer the laws governing the state emergency management agency and shall enforce all additional duties and responsibilities as prescribed in the Revised Code related to emergency management services.

(E) The department shall conduct investigations pursuant to Chapter 5101. of the Revised Code in support of the duty of the department of job and family services to administer the supplemental nutrition assistance program throughout this state. The department of public safety shall conduct investigations necessary to protect the state's property rights and interests in the supplemental nutrition assistance program.

(F) The department of public safety shall enforce compliance with orders and rules of the public utilities commission and applicable laws in accordance with Chapters 4905., 4921., and 4923. of the Revised Code regarding commercial motor vehicle transportation safety, economic, and hazardous materials requirements.

(G) Notwithstanding Chapter 4117. of the Revised Code, the department of public safety may establish requirements for its enforcement personnel, including its enforcement agents described in section 5502.14 of the Revised Code, that include standards of conduct, work rules and procedures, and criteria for eligibility as law enforcement personnel.

(H) The department shall administer, maintain, and operate the Ohio criminal justice network. The Ohio criminal justice network shall be a computer network that supports state and local criminal justice activities. The network shall be an electronic repository for various data, which may include arrest warrants, notices of persons wanted by law enforcement agencies, criminal records, prison inmate records, stolen vehicle records, vehicle operator's licenses, and vehicle registrations and titles.

(I) The department shall coordinate all homeland security activities of all state agencies and shall be a liaison between state agencies and local entities for those activities and related purposes.

(J) Beginning July 1, 2004, the department shall administer and enforce the laws relative to private investigators and security service providers specified in Chapter 4749. of the Revised Code.