ATTACHMENT ONE Delaware Supreme Court



ReedSmith

**Driving progress**
through partnership

1 December 2020 | Reed Smith Client Alerts

# Delaware Supreme Court holds a second arbitration was a collateral attack on the first arbitration

In *Gulf LNG Energy, LLC v. Eni USA Gas Marketing LLC,* the Delaware Supreme Court held that appellee Eni USA Gas Marketing LLC's (Eni) second arbitration proceeding against appellants Gulf LNG Energy, LLC and Gulf LNG Pipeline, LLC (together, Gulf) in which Eni asserted different claims against Gulf – was an improper attempt to find fault with the first arbitration. Even though Eni asserted different claims in the second arbitration, Delaware's high court held that the focus should have been on what Eni sought, which it determined was an appeal of the first arbitration. This opinion demonstrates that the Delaware Supreme Court, as with all of the Delaware courts, looks beyond the face of pleadings in order to come to thoughtful decisions on the merits.

Authors: **Brian M. Rostocki, Justin M. Forcier**
**Background**

On December 8, 2007, Gulf and Eni entered into a terminal use agreement (the TUA), whereby Gulf would construct the Pascagoula Facility, and Eni would use the facility to receive, store, re-gasify, and deliver imported liquefied natural gas (LNG) to downstream businesses. On March 2, 2016, Eni filed for arbitration with the American Arbitration Association. In its arbitration demand, Eni alleged that the United States' natural gas market had undergone a "radical change" due to unforeseen, vast new production and supply of shale gas in the United States that made import of LNG into the United States economically irrational and unsustainable. Eni alleged that the TUA had been breached, as well as frustrated and terminated as a result of those alleged changes.

The first arbitration was conducted according to the Federal Arbitration Act (the FAA). The FAA requires that courts review arbitration decisions with limited power to alter the result. Ultimately, Gulf was awarded $371,577,849 at the conclusion of the first arbitration for Gulf's partial performance of the TUA and the

Delaware Supreme Court holds a second arbitration was a collateral attack on the first arbitration | Perspectives | Reed Smith LLP

agreement was terminated. That award was confirmed by the Delaware Court of Chancery on February 1, 2019. Eni's claim for breach of the TUA was not decided because the tribunal held that the claim was "academic and deserves no further consideration" in light of the frustration of purpose finding.

On June 3, 2019, following confirmation of the first arbitration award, Eni filed a second notice of arbitration in which Eni asserted claims for declaratory relief and damages for Gulf's alleged breach of the TUA by engaging in LNG liquefaction- and export-related activities in direct contravention of the express terms of the TUA. Eni also asserted one count for negligent misrepresentation arising out of Gulf's alleged "wrongful conduct" before the first arbitration tribunal.

Gulf filed an action in the Delaware Court of Chancery seeking a permanent injunction staying the second arbitration and a declaratory judgment barring Eni from pursuing the second arbitration. The Court of Chancery held that Eni's negligent misrepresentation claim was an impermissible collateral attack on the first arbitration award, and was impermissible under the FAA. The court held that Eni's breach of contract claims were not an impermissible collateral attack on the first arbitration award, however, because the first tribunal never reach the merits of the claim for breach of the same sections of the TUA. Gulf filed an appeal arguing that the Court of Chancery erred when it did not enjoin all of the claims in the second arbitration.

## Analysis

The Delaware Supreme Court began its analysis with an overview of the FAA, which it described as "one of the narrowest standards of judicial review in all of American jurisprudence." Section 10 of the FAA permits a court to vacate an arbitration award procured by fraud; evident partiality or corruption in the arbitrators; arbitrator misconduct; or when the arbitrators "exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Under section 11 of the FAA, a court can modify or correct an award for a "material miscalculation," when the award addresses a matter not submitted to arbitration, or if the award is imperfect in form but not on the merits.

In determining whether the breach of contract claim was allowed, the court stated that "[r]ather than focus on the nature of the claims in the Second Arbitration, the focus should have been on whether Eni sought through the second arbitration to, in effect, 'appeal' the final award outside the FAA's review process."

The Delaware Supreme Court held that Eni's breach of contract claim attempted to claw back some of the money Gulf was awarded in the first arbitration and revisited the first arbitration's core issue – whether the TUA was terminated, and if so, what the appropriate remedy was. If Eni had wished to clarify, amend, or challenge the first arbitration award, it should have done so under the procedures in the FAA. At this point, the court held, "[s]uch arbitral mulligans are forbidden by the FAA" and Eni's contract claims should have also been enjoined.

## Key takeaways

The Delaware Supreme Court places the substance of what a party seeks in its pleadings over the face of those pleadings. Thus, when determining whether a second arbitration is a collateral attack on the first arbitration decision, Delaware courts must focus on the ultimate relief sought – not the claims in the arbitration demand. This decision further demonstrates Delaware's substance-over-form approach to deciding cases on their merits.

1. 2020 WL 6737438 (Del. Nov. 17, 2020).

*Client Alert 2020-605*

© 2022 Reed Smith LLP. All rights reserved.

This site is protected by reCAPTCHA and the Google Privacy Policy and Terms of Service apply

ATTACHMENT TWO Fraternal Order of Police denial to appeal letter



# Fraternal Order of Police,
## Ohio Labor Council, Inc.

**MAIN OFFICE:**
222 East Town Street
Columbus, OH 43215-4611
(614) 224-5700
1-800-FOP-OLCI
Fax: (614) 224-5775

**NORTHEAST OFFICE:**
2721 Manchester Road
Akron, OH 44319-1020
(330) 753-7080
1-888-FOP-OLCI
Fax: (330) 753-8955

WWW.FOPOHIO.ORG

April 9, 2019

Mr. Gales,

I, along with Chief Counsel Gwen Callender, have reviewed your request to appeal the arbitration award issued by Arbitrator Stanton on January 25, 2019 regarding the grievance you filed when you were terminated from employment. We have carefully considered the allegations that you made in your correspondence to me that I received on March 29, 2019, and the subsequent email you sent to me on April 2, 2019. As you know on April 1, 2019 I requested specific documentation and/or anything else you had to support your claim that Mr. Behringer colluded with the Arbitrator. You did not provide anything to me other than a recitation of your allegations in an email response to me on April 2, 2019.

The standard of review of an arbitration award for an appeal is whether the award draws its essence from the collective bargaining agreement. The stipulated issue presented to the Arbitrator by the parties was whether the Employer terminated you for "just cause." The Arbitrator reviewed the facts and the arguments and reached the conclusion, based on the evidence in the record, that the Employer had just cause to terminate your employment. As such, the award drew its essence from the agreement.

There is no evidence before me to consider that would support your claim that there was any corruption, fraud or other undue means in the arbitration hearing and award. The limited grounds to vacate an arbitration award do not exist pursuant to R.C. §2711.10. While I am sure you are disappointed with the outcome, the award is final and binding pursuant to Article/Section 20.09, Paragraph 4, of the Collective Bargaining Agreement.

Clearly you have a dislike for Mr. Behringer. You are entitled to your feelings however it appears that Mr. Behringer, along with Renee Engelbach, represented you fully and completely throughout the entire grievance and arbitration process. They met with you to prepare for the hearing, put on evidence at the hearing, and wrote a post-hearing brief setting forth the factual and legal arguments on your behalf against the State of Ohio and the action taken against you.



—— Protector of the Protectors ——

Page 2
April 10, 2019

Finally, you mention the Beth Rist appeal in the 4th District Court of Appeals. Please be advised that Ms. Rist waived our representation and hired outside legal counsel to represent her in the arbitration and subsequent appeals. In that case the Employer appealed the arbitration decision, and Ms. Rist defended against the appeal with private counsel.

For the foregoing reasons the FOP/Ohio Labor Council, Inc. will not be appealing the arbitration decision.

Sincerely,

*Catherine A Brockman*

Catherine A. Brockman
Executive Director

ARTICLE THREE 2012 2015 FOP EXPIRED CONTRACT

# AGREEMENT

### Between



## THE STATE OF OHIO

### And



## The Fraternal Order of Police

### Ohio Labor Council, Inc
### Unit 2

July 1, 2012 - June 30, 2015

ARTICLE 62 - COPIES OF THE AGREEMENT .... 135

ARTICLE 63 - INTRA-OFFICE MAILING
SYSTEM ................................................................. 135

ARTICLE 64 - ERRONEOUS WAGE PAYMENTS 136

ARTICLE 65 - CLASSIFICATION ........................... 136

65.01 Job Audits and Appeal.............................. 136

65.02 Classification Changes ............................. 138

65.03 Classification Review ............................... 139

ARTICLE 66 - ABSENCE CONTROL POLICY ..... 140

66.01 Absence Control Policy ............................ 140

66.02 Abuse of Leave ........................................ 140

ARTICLE 67 - JOINT STATEMENT REGARDING
CLIENT ABUSE AND NEGLECT ....................... 141

ARTICLE 68 - DURATION ................................... 141

APPENDIX A - CLASSIFICATIONS ...................... 144

APPENDIX B - LAYOFF JURISDICTIONS ........... 144

APPENDIX C - VOLUNTARY COST SAVINGS
PROGRAM ........................................................... 145

APPENDIX D - RESERVED FOR FUTURE USE ... 147

APPENDIX E - DRUG-FREE WORKPLACE
POLICY ............................................................... 147

APPENDIX F - PEAK SEASONS ......................... 157

## ARTICLE 1 - AGREEMENT

This Agreement is made and entered into by and between the State of Ohio, Office of Collective Bargaining, hereinafter referred to as "State" or "Employer" and the Fraternal Order of Police, Ohio Labor Council, Inc., hereinafter referred to as "Labor Council" or "F.O.P."

## ARTICLE 2 - PURPOSE

This Agreement is made for the purpose of promoting cooperation and harmonious labor relations between the State, members of the bargaining unit, and the Labor Council.

## ARTICLE 3 - GRAMMAR

Whenever the context so requires, the use of words herein in the singular shall be construed to include the plural, and words in the plural, the singular. Words, whether in the masculine, feminine or neuter genders, shall be construed to include all of those genders. It is understood that the use is for convenience purposes only and is not to be interpreted to be discriminatory by reason of sex.

## ARTICLE 4 - EFFECT OF AGREEMENT
Total Agreement

This Agreement represents the entire agreement between the Employer and the Union and unless specifically and expressly set forth in the express written provisions of this Agreement, all rules, regulations, practices and benefits previously and presently in effect, may be modified or discontinued at the sole discretion of the Employer. This section alone shall not operate to void any existing or future ORC statutes or rules of the OAC and applicable federal law.

## ARTICLE 5 - CONFLICT AND AMENDMENT

This Agreement is meant to conform to and should be interpreted in conformance with the Constitution of the United States, and the Constitution of the State of Ohio, all applicable federal laws, and Chapter 4117 of the Ohio

ATTACHMENT FOUR ARTICLE 1 ~~PARTIES TO THE FOP AGREEMENT~~

DAVID STANTON

RESUME

# DAVID W. STANTON

*ATTORNEY & COUNSELOR AT LAW*

## NAA Arbitrator - Mediator

Cincinnati Office

5600 Harrison Avenue
Cincinnati, Ohio 45248
513-941-9016
Fax 513-941-9016

EMAIL: davidwstanton@bellsouth.net

Louisville Office

7321 New LaGrange Road, Suite 106
Louisville, Kentucky 40222
502-292-0616
Fax 502-292-0616

## **PROFESSIONAL RESUME**

### EDUCATION:

**1984-1988:** Salmon P. Chase School of Law - Juris Doctor; Northern Kentucky Law Review, Executive Editor, 1987-88; Editorial Staff, 1986-87; Publications: "The Question of Arbitrability - The Roles of the Court and the Arbitrator in Grievance Arbitration". Vol. 14, No. 1; Who's Who Among American Law Students, 1986; 1987; and, 1988; Academic Honors.

**1983-1984:** University of Louisville - Master of Science Program; Public Administration - Labor Economics.

**1977-1982:** University of Louisville - Bachelor of Science; Political Science - Business Administration; Student Council 1977-80; Vice-President 1979; Pi Sigma Alpha, National Political Science Honor Society; Academic Honors.

**CERTIFICATION:** Attorney-at-Law; State of Ohio; Registration # - 0042532

**AMERICAN ARBITRATION ASSOCIATION:** Certified Mediator

**2000 RECIPIENT - American Arbitration Association, Labor Gavel Award**

**NATIONAL ACADEMY OF ARBITRATORS: Member in good standing** - Inducted in 1999, New Orleans

### PROFESSIONAL AFFILIATIONS:

National Academy of Arbitrators;
American Bar Association - Labor and Employment Law Section;
Ohio State Bar Association;
Cincinnati Bar Association;
Louisville Bar Association;
American Arbitration Association; and,
COLERA

### PROFESSIONAL EXPERIENCE:

Engaged in full-time practice of Labor & Employment Arbitration, Mediation, Fact Finding and Conciliation in public, private and federal sectors; interest and grievance Arbitration and Mediation. Extensive experience as Lecturer-Panelist on Labor-Management Programs. (COLERA-FMCS-NAA Arbitration Symposium - Columbus, Ohio - Planning Committee)

**AGENCY PANEL MEMBER:** American Arbitration Association (AAA); Federal Mediation and Conciliation Service (FMCS); Ohio State Employment Relations Board (SERB); Commonwealth of Pennsylvania Board of Arbitration & Mediation; Indiana Education Employment Relations Board (IEERB); Louisville Labor-Management Committee; Arbitration and Mediation Service (AMS); and, National Mediation Board (NMB).

### PERMANENT PANELS :

AK Steel Corporation, Middletown Works -and- IAMAW Local 1943
AK Steel Corporation, Butler, PA Works -and- UAW Local 3303
Akron General Hospital -and- ONA

**DAVID W. STANTON, ESQ.**
**RESUME**
**PAGE TWO (2)**

    AT & T Midwest -and- IBEW Local 21
    BCOA -and- United Mine Workers of America, District 12
    Bemis Company, Inc. -and- Chicago & Midwest Regional Joint Board, Local 1426
    Carter Nursing & Rehabilitation Center -and- SEIU District 1199
    Cincinnati Bell Telephone -and- CWA Local 4401
    Cincinnati Public Schools -and- Cincinnati Federation of Teachers
    Cincinnati State Technical and Community College -and- IUOE Local 20
    City of Cincinnati, Ohio -and- AFSCME, Ohio Council 8
    City of Cincinnati -and- CODE
    City of Columbus -and- CMAGE, CWA Local 4502
    City of Columbus -and- FOP, Capital City Lodge #9
    Coca-Cola Bottling Company of Cincinnati -and- IBT Local 1199
    Columbus State Community College -and- CSEA OEA
    Duke Energy Corporation -and- Utilities Workers Union, Local 600
    First Energy Corporation -and- IBEW Local 245
    First Energy Corporation -and- UWUA Local 270
    First Energy Corporation -and- UWUA Perry Technicians
    Kroger Company -and- BCTWG Local 372
    Kroger Company -and- IBT
    Lakota Local Schools -and- Lakota Education Association/OEA
    Ohio State University -and- Communications Workers of America, Local 4501
    Owens Illinois, Inc. -and- Glass Molders Pottery Plastics & Allied Workers Int'l Union (National)
    Packaging Corporation of America -and- USW
    Pilot Chemical Company -and- IAM Local 1943
    Pre-Finish Metals -and- AEIF
    Princeton City Schools -and- OEA
    Procter & Gamble Corp. -and- Employees Representation Association
    Sloter Concrete Co. -and- Teamsters Local 284
    Smuckers -and- ERA
    Southern Illinois University at Carbondale -and- Illinois Education Association
    St. Bernard Soap Company -and- ERA
    State of Ohio OCB -and- OCSEA Local 11
    State of Ohio -and- OEA/Scope
    Twin Rivers Technologies -and- ERA
    University Hospital -and- AFSCME, Ohio Council 8
    University Hospital -and- SEIU
    Vectren Corporation -and- UWUA Local 175
    Vectren, Inc. -and- USWA Local 12213

**INTERN ARBITRATOR:**    Charles L. Mullin, Jr., NAA, Pittsburgh, PA, (1987-1989)
                                 Jonathan Dworkin, NAA, Cleveland, OH (1988-89)

**AMERICAN ARBITRATION ASSOCIATION**: 1984 to 1988; while attending Law School at night, held the position of Labor Tribunal Administrator in the Cincinnati Regional Office of the American Arbitration Association, with sole responsibility for the administration of all Labor Arbitrations, Mediations, Fact Findings, FSF, Pension Withdrawal Liability and Elections. Responsibilities also included the administration of, and participation in, seminars in Labor Arbitration Education;   Labor-Management Conferences/Seminars; and Election Services. Co-chair, "Challenges of the Heartland" Seminar 1998-2005.

**ISSUES:** Absenteeism, Affirmative Action, Alcohol and Drug Abuse, Arbitrability, Work Assignments, Bargaining Unit Work, Benefits - Eligibility, Calculation, Discharge, Discipline, Discrimination -Race, Gender, Age, Sexual, Religious, Fitness for Duty, Pension, Health and Welfare, Health, Hospitalization, Grievance Mediation, Hiring Practices, Holidays, Holiday Pay, Job Classifications, Job Evaluation, Job Posting and Bidding, Jurisdictional Disputes, Layoff, Bumping and Recall, Pension & Welfare Plans, Pension Withdrawal Liability; Reduction in Force, Retirement Issues, Safety, Scheduling of Work, Seniority, Subcontracting, Vacations, Vacation Pay, Work

**DAVID W. STANTON, ESQ.**
**RESUME**
**PAGE THREE(3)**

Performance, Education Performance Evaluations, Working Conditions, Health & Safety, Absent without Leave, Falsification, Fair Share Fee, Insubordination. Leaves of Absence, Health Insurance Benefits - Modification and Restructuring, Fringe Benefits, Performance Appraisals, Promotions, Shift Hours, Sick Leave, Wages, Work Place Violence/Threats, Off-Duty Conduct, Sexual Harassment, Non-Renewal, Dress Codes, ACA, ADA, FMLA, Demotion, Jurisdiction, Representation, Call-In/Call Back Pay, Severance Pay, Training, Transfer, Union Business, Contracting Out, Guaranteed Work Week, Red Circle Rates, Work-place "bullying", Workweek Changes, Sabotage, "Last Chance" Agreements -Violations and Compliance, New Classifications. Medical Release/Restrictions, Testing, Qualifications, Fighting, Sleeping on Job, Light Duty. Job Elimination. Time Limits, Patient Abuse/Neglect, Theft, Fraud, Negligence, Expense Reports-Reimbursement, Job Abandonment, Voluntary Separation Packages, Plant Closings/Relocation, Theft of Time, Super-seniority, Dishonesty, Workers Compensation Fraud, Management Rights, Past Practice, Strikes, Lockouts. Work Stoppages. Slowdowns. Tenure, Retirement, Overtime-Entitlement/Calculation/Pyramiding and Drug Testing.

**INDUSTRIES:** Aerospace, Aviation/Airline, Auto, Bakery, Bottling. Building Products, Broadcasting, Chemical, Coal, Distillery, Education (all levels) Entertainment and Arts, Gaming, Glass and Pottery, Grocery, Health Care, Machine Manufacturing, Meat Packing, Meat Processing, Metal Fabrication, Military Facilities, Newspaper, Packaging/Containers, Petroleum, Pulp, Paper, Rubber, Scientific Instrument, Service, Steel, Basic Steel, Transportation, Utilities, Clerical, Non-ferrous Metals. Warehousing, Hardware, Plastics, Printing, Electronics, Oil and Atomic/Nuclear Energy. Aluminum, Brewery, Cement, Pharmaceutical, Television. Telephone/Communications, Textile, Food, Food Processing, and Furniture.

**PUBLIC SECTOR:** Arbitration/Fact-Finding/Conciliation: Police, Fire, City, State and County Governments; Education (Professors; Teachers; and, Support Staff), Sanitation; Health Care Providers; and, Corrections.

**FEDERAL SECTOR:** Various United States Governmental Agencies and the National Federation of Governmental Employees Unions and American Federation of Government Employees Unions.
**SAM Registered.**

**NATIONAL MEDIATION BOARD:**
Union Pacific Railroad -and- United Transportation Union - Public Law Board 7408

2010 Arbitrator Orientation Program - Union Pacific Railroad -and- United Transportation Union

**PROFESSIONAL TRAINING/CERTIFICATIONS:**

**Mediation and Negotiations** - AAA Certified Mediator. American Arbitration Association, Bureau of National Affairs, Thomas R. Colosi, Vice President, Washington, D.C.

**Securities Arbitration:** American Arbitration Association; and, FINRA. (Chairperson Certified)

**EMPLOYMENT HISTORY:**

**1988-Present:** Attorney & Full-time Labor Arbitrator; Mediator; Fact Finder; and, Conciliator.

**1988-1989:** Intern Arbitrator to Jonathan Dworkin, National Academy of Arbitrators, Cleveland, Ohio

**1987-1989:** Intern Arbitrator to Charles L. Mullin, Jr., National Academy of Arbitrators, Pittsburgh, PA.

**1984-1988:** Labor Tribunal Administrator, American Arbitration Association, Cincinnati, Ohio Regional Office.

**1976-1984:** Full-time employment at S&T Industries Hardware Wholesaler's, while attending the University of Louisville at night. Duties included general warehousing as Laborer, Forklift Operator, Cherry Picker Operator; and, Manager of Quality Control.

**DAVID W. STANTON, ESQ.**
**RESUME**
**PAGE Four (4)**

**PER DIEM:**

$1,300.00 (or that designated by the Appointing Agency - NMB; SERB; IEERB); **OR,** that designated by, or agreed to, for Permanent Panels

$1,500.00 - Mediation

$2,000.00 - Commercial; Labor & Employment

Per Diem fee assessed for any cancellations/postponements of less than thirty (30) working days notice exclusive of Holidays; Hearing date: and, the date of notification. **(Unless other arrangements apply)**

**BUSINESS ADDRESSES:**

5600 Harrison Avenue                     Phone - (513) 941-9016
Cincinnati, Ohio 45248                   Fax -    (513) 941-9016

5711 Lyman Avenue                        Phone - (502) 292-0616
Chicago, Illinois 60516                  Fax -    (502) 292-0616

7321 New LaGrange Road, Suite 106        Phone - (502) 292-0616
Louisville, Kentucky 40222               Fax -    (502) 292-0616

Cell Phone:    502-533-9838

Email:         davidwstanton@bellsouth.net


**\*\* (Parties are billed travel-related fees/expenses from nearest/cheapest address.)\*\***

**\*\* PLEASE DIRECT ALL CORRESPONDENCE TO THE LOUISVILLE OFFICE \*\***

June 2016

5

ATTACHMENT ONE Delaware Supreme Court

TEXAS COURT
VOID AGREEMENTS

Cases & Codes (https://caselaw.findlaw.com/)   Practice Management (https://practice.findlaw.com/)   Legal Techno    Search FindLaw

(https://lp.findlaw.com/)

...

FINDLAW (HTTPS://LP.FINDLAW.COM/)   /   CASELAW (HTTPS://CASELAW.FINDLAW.COM/)   /   TEXAS (HTTPS://CASELAW.FINDLAW.COM/COURTS/TEXAS)   /
TX CT. APP. (HTTPS://CASELAW.FINDLAW.COM/COURT/TX-COURT-OF-APPEALS)   /   JV V. THE ALTMAN GROUP, INC. AND LAURIE DIAZ, APPELLEES

# JV v. The Altman Group, Inc. and Laurie Diaz, Appellees

Print                                                           Font size:   A   A   Reset

## Court of Appeals of Texas, Amarillo.

### Jody James Farms, JV, Appellant v. The Altman Group, Inc. and Laurie Diaz, Appellees

### No. 07-15-00060-CV

### Decided: October 17, 2016

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ. Anna McKim, J. Paul Manning, for The Altman Group, Inc. J. Paul
Manning, for Diaz, Laurie. Jody D. Jenkins, for Jody James Farms, JV.
OPINION

Appellant Jody James Farms, JV ("JJF") appeals the trial court's order confirming an arbitration award in favor of
appellees The Altman Group, Inc. and Laurie Diaz ("Altman and Diaz" or "appellees"). We will affirm the court's order.

Background

In 2010, JJF purchased a Crop Revenue Coverage Insurance Policy from Rain & Hail, L.L.C. JJF purchased the
insurance through The Altman Group, an insurance agency. Diaz is a registered insurance agent employed by The
Altman Group.

The policy was one issued for the 2010 crop year under the authority of section 508(h) of the Federal Crop Insurance
Act,[1] and reinsured by the Federal Crop Insurance Corporation (FCIC).[2] The policy contains, within its "basic
provisions," a section 20, entitled "Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial
Review." Section 20 is lengthy, and provides for resolution, by various means, of various categories of disputes. Some
disputes are narrowly described, such as that given in section 20(d) for reconsideration of determinations made by the
insurer or FCIC regarding whether the insured has "used a good farming practice ." Others, like the provision the
parties in this case discuss, are described in broad terms.[3] Section 20(a) of the policy reads in part:

If [the insured] and [the insurer] fail to agree on any determination made by [the insurer] except those specified in
Section 20(d), the disagreement may be resolved through mediation in accordance with Section 20(g). If resolution
cannot be reached through mediation, or [the insured] and [the insurer] do not agree to mediation, the disagreement
must be resolved through arbitration in accordance with the rules of the American Arbitration Association .4

Subsection 20(a)(1) reads in part:

All disputes involving determinations made by [the insurer], except those specified in section 20(d), are subject to
mediation or arbitration.5

In November of 2010, JJF incurred a loss on an insured grain sorghum crop. According to JJF, it notified Diaz of the
loss in a telephone conversation. The claim was not formally submitted to Rain & Hail until some time later. Rain & Hail
eventually denied the claim, in part because it was not timely submitted.[6]

After Rain & Hail denied JJF's claim, their disagreement over its determination was arbitrated under the policy. The
arbitrator upheld Rain & Hail's denial of the claim.[7]

Thereafter, JJF filed suit against Altman and Diaz asserting they breached a fiduciary duty and violated the Texas
Deceptive Trade Practices Act when they failed to submit the claim in a timely fashion. Altman and Diaz sought an
order compelling arbitration under the Federal Arbitration Act [8] and, over JJF's objection, the trial court compelled
arbitration of its causes of action. The arbitrator found in favor of Altman and Diaz and the trial court entered an order
confirming and enforcing that finding, thus ordering that JJF take nothing. From that order, JJF now appeals.

Analysis

An arbitration award under the FAA must be confirmed unless it is vacated, modified or corrected as prescribed in sections 10 and 11 of the FAA. 9 U.S.C. §§ 9–11; Hall St. Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 128 S.Ct. 1396, 170 L.Ed.2d 254 (2008); Nafta Traders, Inc. v. Quinn, 339 S.W.3d 84, 90 (Tex. 2011). One of the grounds on which an award may be vacated is that the arbitrator exceeded the arbitrator's powers. 9 U.S.C. § 10(a)(4). A party moving to vacate an award has the burden of proof. Lummus Global Amazonas, S.A. v. Aguaytia Energy Del Peru, S.R. Ltda., 256 F.Supp.2d 594, 604 (S.D. Tex. 2002); Petrobras Am., Inc. v. Astra Oil Trading NV, No. 01–11–00073–CV, 2012 WL 1068311 at *16, 2012 Tex. App. LEXIS 2458 at *46 (Tex. App.–Houston [1st Dist.] March 29, 2012, no pet.) (mem. op.).

JJF contends on appeal the trial court erred by enforcing the arbitrator's award because the arbitrator exceeded his authority. It argues there was no agreement to arbitrate between JJF and Altman and Diaz; and in any event its claims are outside the scope of the policy's arbitration agreement. See In re Rubiola, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding) (party seeking to compel arbitration under FAA must establish there is a valid arbitration clause and claims in dispute fall within that agreement's scope) (citing In re Kellogg Brown & Root, Inc., 166 S.W.3d 732, 737 (Tex. 2005)).[9]

In cases in which a party resists arbitration, "it matters whether the party resisting arbitration is a signatory or not." Merrill Lynch Investment Mgrs. v. Optibase, Ltd., 337 F.3d 125, 131 (2nd Cir. 2003); see Roe v. Ladymon, 318 S.W.3d 502, 515 (Tex. App.–Dallas 2010, no pet.); see also DK Joint Venture 1 v. Weyand, 649 F.3d 310, 316–17 (5th Cir. 2011); Elgohary v. Herrera, 405 S.W.3d 785, 791 (Tex. App.–Houston [1st Dist.] 2013, no pet.). Here JJF, the party resisting arbitration, was a party to the policy containing the broad requirement that "[a]ll disputes involving determinations made by [Rain & Hail]," with an exception not relevant here, were subject to arbitration. Altman and Diaz, though not parties to the policy, sought to enforce JJF's agreement to arbitrate.[10]

After the trial court referred JJF's claims against Altman and Diaz to arbitration, JJF filed with the arbitrator a motion to dismiss the arbitration. Among other contentions, the motion argued the claims were not arbitrable because appellees were not parties to the policy, and because JJF's claims against them were entirely separate from its claim against Rain & Hail under the policy and in fact did not even arise until JJF's claim against Rain & Hail was finally resolved against JJF. The arbitrator denied JJF's motion to dismiss by written order.

In the trial court, JJF's response to appellees' petition to confirm the arbitration award also addressed the arbitrator's authority, noting that under American Arbitration Association rules, "it is the arbitrator's responsibility to 'rule on his . jurisdiction, including any objections with respect to the existence . of the arbitration agreement or to the arbitrability of any claim.' "[11]

"Under the FAA, absent unmistakable evidence that the parties intended the contrary, it is the courts rather than arbitrators that must decide 'gateway matters' such as whether a valid arbitration agreement exists." In re Weekley Homes, L.P., 180 S.W.3d 127 (Tex. 2005) (orig. proceeding). We review the issue in the manner set out in First Options. 514 U.S. at 943, 115 S.Ct. 1920 ("Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute ., so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter") (internal citation omitted; italics in original); see In re Weekley Homes, 180 S.W.3d at 130–31 (determining whether nonparty must arbitrate, Texas courts "apply state law while endeavoring to keep it as consistent as possible with federal law"). In this instance, the contract is one promulgated by the FCIC pursuant to its statutory authorization. See 7 U.S.C. § 1508(h) (providing for review and approval of policies by FCIC).

Federal courts are largely in agreement that incorporation of the AAA rules containing language like that JJF quoted to the trial court constitutes clear and unmistakable evidence that the parties to the arbitration agreement "agreed to arbitrate arbitrability." See Oracle Am., Inc. v. Myriad Group, A.G., 724 F.3d 1069, 1074 (9th Cir. 2013) ("virtually every circuit to have considered the issue" has so held); see also Chesapeake Appalachia, LLC v. Scout Petr., LLC, 809 F.3d 746 (3rd Cir. 2016) (quoting "virtually every circuit" language); Petrofac, Inc. v. DynMcDermott Petr. Ops. Co., 687 F.3d 671, 675 (5th Cir. 2012) (agreeing with "most of our sister circuits that the express adoption of [AAA] rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); Fallo v. High–Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009); Qualcomm Inc. v. Nokia Corp., 466 F.3d 1366, 1372–73 (Fed. Cir. 2006); Terminix Int'l Co., L.P. v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332–33 (11th Cir. 2005); Contec Corp. v. Remote Solution Co., 398 F.3d 205, 208 (2nd Cir. 2005).

In Haddock v. Quinn, 287 S.W.3d 158, 172 (Tex. App.–Fort Worth 2009, orig. proceeding),[12] the court recognized the "majority view," consistent with the holdings of the federal circuit courts, but found that a "general reference" to the AAA rules in the arbitration agreement did not clearly and unmistakably indicate the parties' intent to submit issues of

arbitrability of the arbitrator in that case. See also Burlington Res. Oil & Gas Co. L.P. v. San Juan Basin Royalty Trust, 249 S.W.3d 34, 40 (Tex. App.–Houston [1st Dist.] 2007, pet. denied) (also finding agreement's reference to AAA rules did not provide clear and unmistakable evidence of intention to submit arbitrability issues to arbitrator).

We find Haddock distinguishable from our present case. The arbitrability issue there concerned the waiver of the right to arbitration through inconsistent litigation conduct, 287 S.W.3d at 170, and the court appropriately relied primarily on waiver cases. Id. at 173–74. And the court noted that rule 7(a) of the AAA rules, on which the party urging arbitration relied, did not exist at the time the arbitration agreement was added to the parties' contract. Id. at 175. Similarly, the court in Burlington Resources found the agreement there limited arbitration to specifically identified audit disputes, and did not contain "a clear and unmistakable indication that the parties authorized an arbitrator to decide the arbitrability of claims or amounts not specifically identified" in the agreement, notwithstanding its reference to the AAA rules. 249 S.W.3d at 41.[13]

We will apply the majority view to this federal crop insurance policy,[14] and thus find its incorporation of the AAA rules [15] constitutes clear and unmistakable evidence the parties to the policy intended the arbitrator to decide whether JJF's agreement to arbitrate is binding on it as against its effort to litigate its claims against Altman and Diaz in court. Petrofac, 687 F.3d at 675; In re Weekley Homes, 180 S.W.3d at 130–31.[16] In its motion to dismiss the arbitration, JJF contended both that it had no agreement to arbitrate with Altman and Diaz, and that its claims against them were outside the scope of the policy's arbitration agreement. As noted, the arbitrator denied JJF's motion by written order.

JJF's brief on appeal contends the arbitrator exceeded his authority "by entering an award where no agreement to arbitrate existed and the scope of the arbitration agreement did not cover the disputes." JJF gives no other reason for its assertion the arbitrator exceeded his authority. Because we conclude JJF agreed in the policy that an arbitrator would have authority to determine the question of arbitrability, the arbitrator did not exceed his authority by resolving the question contrary to JJF's position. And, under the narrow and deferential review standard applied to arbitration awards, JJF's arguments give us no basis to conclude the arbitrator acted outside his powers in his resolution of the merits of the issues presented to him, whether issues of arbitrability or those relating to appellees' asserted liability to JJF. See Forsythe Int'l, S.A. v. Gibbs Oil Co., 915 F.2d 1017, 1020 (5th Cir. 1990); Petrobras, 2012 WL 1068311 at *11– 12, *16, 2012 Tex. App. LEXIS 2458 at *30–31, *46 (standard of review of awards under FAA). The trial court did not err by affirming the arbitration award over JJF's contrary argument.

For the reasons discussed, we overrule JJF's appellate issue and affirm the trial court's judgment.

FOOTNOTES

1. 7 U.S.C. § 1508(h); see generally Olsen v. United States, 546 F.Supp.2d 1122 (E.D. Wash. 2008), aff'd, 334 Fed.Appx. 834 (9th Cir. 2009); Greenwood v. Rural Cmty. Ins. Servs., No. 2:02CV00047, 2005 U.S. Dist. LEXIS 29331 (E.D. Mo. Nov. 22, 2005); 7 C.F.R. § 457.2 (2004). See Wiley v. Glickman, No. A3–99–32, 1999 WL 33283312, 1999 U.S. Dist. LEXIS 20278 (D. N.D. Sept. 3, 1999) (reciting history of crop revenue coverage policies).

2. The FCIC is managed by the United States Department of Agriculture's Risk Management Agency. See 7 U.S.C. § 6933 (creating USDA's Office of Risk Management).

3. The policy's section 20 is much like, though not identical to, the section 20 (for reinsured policies) contained in the policy form set out in 7 C.F.R. § 457.8.

4. Section 20(g) describes the requirements and procedures for mediation.

5. Subsection 20(a)(1) continues with language requiring, however, that if a dispute "in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure," parties must obtain "an interpretation from FCIC in accordance with 7 C.F.R. part 400, subpart X or such other procedure as established by FCIC." The FCIC interpretation procedure was not initiated in this case. JJF's brief cites the provision in its argument that the policy's arbitration provisions are not suited to its claims against Altman and Diaz, but the parties do not otherwise discuss its potential application.

6. JJF's brief contends Rain & Hail denied JJF's claim because it determined the claim was untimely submitted. The statement is true, but not complete. Rain & Hail's letter explaining its denial of the claim detailed three reasons. It cited JJF's failure to submit a timely notice of loss, but it said also JJF's manner of storing the harvested grain sorghum precluded adjustment of the loss. The letter quoted from JJF's loss adjustment manual and concluded, "Based on the claim adjustment procedures spelled out above, your grain sorghum claim must be denied because without our measurements of the farm-stored production, you do not have the required verifiable records for the stored grain." The

letter also stated Rain & Hail's belief that JJF intentionally misrepresented the planting dates of its grain sorghum crop. Citing the policy's "concealment, misrepresentation or fraud" provisions, Rain & Hail declared the policy coverage for grain sorghum for the 2010 crop year to be void.

7.    The arbitration award recited the arbitrator's agreement with Rain & Hail on the claim notice issue and on its contention that JJF's commingling of stored grain precluded a "presentable loss."

8.    See 9 U.S.C. § 1 et seq.

9.    By its over-arching sole appellate issue, JJF questions "whether a non-party to an arbitration agreement can compel arbitration of claims that are not within the scope of the arbitration agreement." JJF's argument encompasses both the existence of an arbitration agreement between these parties and the scope of the policy's arbitration provision.

10.    "A person who has agreed to arbitrate disputes with one party may in some cases be required to arbitrate related disputes with others." Meyer v. WMCO–GP, LLC, 211 S.W.3d 302, 304 (Tex. 2006)

11.    JJF's response to appellees' motion to confirm the award also constituted its motion to vacate the award. JJF cited rule R-7 of the AAA's Commercial Arbitration Rules (2010), available at https://www.adr.org. JJF also quoted from rule R-8 of the same rules, stating in its response, "The arbitrator has the power 'to determine the existence or validity of a contract of which an arbitration clause forms a part.' " Commercial Arbitration Rules (2010), available at https://www.adr.org. JJF went on to argue the merits of its contention its claims against Altman and Diaz were not arbitrable.

12.    In its opinion, the court addressed a consolidated interlocutory appeal and mandamus proceeding.

13.    The courts in Haddock, 287 S.W.3d at 174–75, and Burlington Resources, 249 S.W.3d at 41, also considered language in each arbitration agreement stating that its terms controlled over any inconsistent provision of the AAA rules as indicating the parties did not clearly and unmistakably agree to allow the arbitrator to determine questions of arbitrability. Similar language is present in section 20(f) of JJF's crop insurance policy, but we do not consider its presence determinative of the parties' intention regarding arbitrability.

14.    Among the policy's basic provisions also is its section 36, entitled "Applicability of State and Local Statutes." That section provides:If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail. State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy.

15.    See Risk Management Agency Final Agency Determination FAD-126, Nov. 2, 2010 (2008 crop year; generally addressing application of AAA rules incorporated by reference into policy).

16.    We do not suggest that JJF's act of filing its motion to dismiss with the arbitrator and thus obtaining the arbitrator's ruling was itself an indication of its willingness to arbitrate the question. See First Options v. Kaplan, 514 U.S. 938, 946, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).

James T. Campbell, Justice



ABOUT US  › (https://www.findlaw.com/company.html)          FIND A LAWYER › (https://lawyers.findla

Our Team
(https://www.findlaw.com/company/our-          By Location (https://lawyers.findlaw.com/lawye