IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

FILED
RICHARD W. NAGEL
CLERK OF COURT

2021 MAR 31 PM 2: 58

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

TIMOTHY GALES
    PLAINTIFF
V.

THOMAS P. CHARLES, et, al.,

} Case No. 2:21-cv-328
}
} Judge Micheal H. Watson
}Magistrate Judge, Kimberly
}Jolson


Jury demand endorsed herein,


## PURSUANT TO FEDERAL RULE15 CIVIL: PLAINTIFF AMENDED 1983 RETALIATION COMPLAINT


I. Now comes Plaintiff, Timothy Gales with the permission of the court submits his amended 1983 retaliation complaint. However, for the court to understand the full nature and involvement of all defendants, even though time barred for sake of the two year statute of limitation. The plaintiff will provide context to the complaint so the court will understand how and why the plaintiff brings this 1983 action against the defendants.

II. On March 20, 2013, the plaintiff was terminated from his employment by Thomas P. Charles at the recommendation of then, state patrol superintendent John Born. After John Born and Thomas Charles authorized the state patrol to conduct an illegal private property investigation as it related to the sale of a motor vehicle to an acquaintance. The Plaintiff returned to $2100 in a fifth third money order back to the acquaintance. However, the patrol

bargaining requested by Public Safety. John Born Paul Pride, and Charles were livid that they lost the appeal.

VI. Therefore, On. June of 2016, John Born requested that the office of collective bargaining to appeal the lower court decision to the Tenth District Appeals Court of Ohio. However, on April 14, 2017 the Tenth District Court of Appeals upheld the lower court decision, to the dismay of Born, Charles, and, Pride., and further affirmed that the defendant, namely, the State pay interest on all money due the plaintiff in addition to back pay and benefits.
 (a.) It should be noted that during the time of  plaintiff 2016 2017appeals, John Born, Paul Pride, met on several occasion and spoke with Gwen Callender and Douglas Behringer in reference to forcing the plaintiff departure from DPS as an enforcement agent.  Gwen Callender also ordered me to come to the fraternal order of police and for the state, personally told me she wanted my resignation and that was the only thing she was after, My resignation from the state. The plaintiff declined Gwen Callender was highly upset she could not get my resignation for the state of Ohio at their request

VII.  On May 15, 2017 the plaintiff Timothy Gales was returned back to his position as an enforcement agent. The state on June 26, 2017 removed from the plaintiff back pay $ 35.300 as an offset, uncontested by the plaintiff, for income and unemployment received from April 13, 2013 until November 24, 2014 as required by E. William Lewis issued time stamped period, on the arbitration award. No additional sanctions were provided for by the arbitrator including mitigation language for any additional years of the parties continued disputes

VIII. January 11, 2018, the Defendants John Born, Paul Pride, with the approval of Douglas Behringer, Gwen Callender, and Cathy Brockman, of the FOP opened an unlawful investigation, claiming that the plaintiff failed to adhere to an arbitration award issued on November 24, 2014 by Arbitrator E. William Lewis. There were no new issues that could have resulted in discipline from the original award.

and James Hogan, that his friend David Stanton would take care of the problem with the plaintiff. And after a careful review of the fraudulent award clearly demonstrates that David Stanton issued an award in violation of the laws of Ohio, and the laws of the United States for the sole purpose to assist the FOP, and it representatives Douglas Behringer, Cathy Brockman, and Gwen Callender to allow the defendants to retaliate and deprive the plaintiff of his protected speech and equal protection rights against the state of Ohio and it directors, and superintendent. Namely, Ohio Department of Public Safety, Thomas P. Charles, (former director) John Born (former director) state Patrol, Paul Pride (former), (superintendent of (OSP) State Patrol. By continuing to carry out the bad actions of their predecessors, and while joining in to retaliate against the plaintiff for his asserting his protected First Amendment speech. And by depriving the plaintiff of his equal protection right under the 14th amendment by unlawfully seizing the plaintiff 33 year career by retaliation. The acts occurred while under color of law by the state actors.

(A2). Pursuant to Federal Arbitration Act, which recognize arbitration over litigation when a grievance has been filed. Courts have set aside or dismissed civil litigation in favor of arbitration. In addition, both state and federal courts have stated no civil actions can commence against a party until the issue of arbitration has been resolved.. In addition, section 10 of the federal arbitration act allows courts to set aside awards by arbitrators who have committed fraud, evidence of partiality, misconduct by the arbitrator, and arbitrator exceeding his authority. The plaintiff is prepared to prove each element against the arbitrator that demonstrates his January 25, 2019 award was procured by fraud, misconduct, partiality, and with David Stanton exceeding his authority and clearly acted outside his duties as his arbitrator ethics required and then used his position to impose his own brand of industrial justice from an expired contract that ended 6.30.2015, to assist, Thomas P. Charles, John Born, Paul Pride, James Hogan, of the department of public safety, and his good friendships with Douglas Behringer, Cathy Brockman, and Gwen Callender, to terminate and, retaliate against the plaintiff for his protected speech, under the First Amendment of the constitution. Based on the foregoing is why it has taken so long to initiate legal action against named defendants.

under ORC 2711.11. However, John Born failed to ask for modification, or correction of an award instead he chose to retaliate by orchestrating a fake arbitration against the plaintiff , and by assisting in the selection of a rogue arbitrator to overturn court decisions. The January 25, 2019 award substantiates his motives. The Second Circuit Court, in the case of General RE Life Corp v. Lincoln National Life Insurance,, 909f.3d544(2dcir.2018) where an arbitration award is ambiguous , the arbitrator retains their authority to clarify an award. There is nothing in the law that allows John Born, Paul Pride, to use unlawful means to correct an award. Simply put the award is a fraud FOR THE PURPOSE OF RETALIATION.

(A4).
In addition, John Born without authority of the Ohio General Assembly falsely and with malice in an effort to continue his retaliation. Allowed the Ohio State Patrol to oversee the functions of the Ohio Investigative Unit. On January 25, 2019, Arbitrator David Stanton issued an award in the name of the Ohio Department of Public Safety, and the Ohio State Patrol. ORC 5503.01 designate the duties of the Ohio State Patrol Superintendent, and provides for the appointment of troopers and radio personnel. The Ohio General Assembly at no time identified the highway patrol as having the ability to appoint enforcement agent and or oversee the operations of enforcement agents. John Born, allowed this to occur in violation of the law for the sole purpose to allow, OSP Superintendent, Paul Pride to retaliate, for he and Charles, against the plaintiff, and by doing so, prevent other enforcement personnel from engaging into the same activities as the plaintiff.

(A5) On or about January 29, 2019, at the directions of OSP superintendent Paul Pride. The plaintiff arbitration award was placed on the agency portal for all to review. The arbitration awards was placed in the OSP Portal where enforcement agents and trooper must read and sign for no other reason than to intimidate, retaliate against the plaintiff, by smearing his name through the portal and alerting others that what has happened to the plaintiff can happen to you as well. The scare tactic to not complain. John Born Knew or should have known his retaliation would cause severe harm to the plaintiff well being, health and his employment standings. However to not let his predecessor Thomas P. Charles down. Born chose to retaliate and, deprive the

(A7)  On or about January 29, 2019, with approval of Paul Pride, former OSP superintendent of the patrol. The plaintiff award  which identified the Ohio State Patrol as a party in violation of the law. Identified the plaintiff as being terminated for all 1700 patrol staff and all 80 plus Ohio Investigative Unit Personnel to review, Paul Pride ensured the posting of the award for all to see for the sole purpose to humiliate and retaliate against the plaintiff and to cause and inflict injury to the plaintiff mental health and well being. The award was procured by fraud as of the result of Paul Pride initiating an unlawful investigation solely to retaliate against the plaintiff. Then placed on the OSP portal to cause the plaintiff undue embarassment and retaliation, and to prevent others for acting in the same manner as the plaintiff. Paul Pride actions were retaliatory and in violation of Title USC 42 1983

XIII, THE JANUARY 25, 2019 AWARD ISSUED BY DAVID STANTON.

(A8). David Stanton a seasoned 30 plus year arbitrator with  exceptional experience in labor contract and disputes. Typically courts have found arbitrator to enjoy the same immunity from civil suits as judges, unless it can be found that an arbitrator acted in bad faith and exceeded his or her authority. Arbitrator Stanton clearly and with malice aligned himself with his good friends with the Fraternal Order Of Police. Namely, Douglas Behringer, Cathy Brockman, and, Gwen Callender, for the sole purpose carryout the objective of the defendants named herein to retaliate against the plaintiff. Dave Stanton unlawful arbitrary, and capricious, conduct allowed his signature to flow through a fraudulent and relitigated award for which he was not the original arbitrator. The courts have stated an arbitrators powers are terminated once an award is delivered to the parties. The court further stated as in Lockhart at 101, citing Citizen Building, of West Palm Beach ,Inc . The arbitrators powers are limited because.

(A9).  Arbitrators  are appointees with but one single duty and *** and the performance of that duty terminates their authority when the arbitral board renders a final award. Its powers and duties under the submission are terminated. Its authority is not a continuing one, and after its final decision is announced it is powerless modify it, or revoke it, or make a new award upon the same issues.

fashioned a false and incomplete award based on testimony from state witnesses included

1. Joe Exstein: who testified that he was told by staff attorney James Hogan not to pay any additional money to the plaintiff, even though he knew his calculations were wrong for calculating court ordered interest. However to satisfy the wishes of the defendants named herein and to support the award he fashioned and delivered on January 25, 2019 David Stanton intentionally omitted testimony that would have supported the plaintiff claim, that he was owed thousands of dollars by the state of Ohio defendants named herein.

(2). OSP Lt. Chad Miller, testified at the hearing that the during the investigation process the plaintiff was truthful with his answers, in addition, Mr. Miller explained that he did not have the authority to investigate the plaintiff for alleged IRS tax violations, and that his investigation focused on what the arbitrator requested the plaintiff to honor in the award. However, David Stanton intentionally and with malice omitted any testimony given by Lt. Chad Miller, so that he could fashion his  January 25, 2019, award to meet the demand of the defendants named herein. The fake arbitration conducted by David Stanton was nothing more than a sham.

(3) OSP Captain Lennox, testified that the plaintiff very well could have misunderstood his responsibility as it related to providing documents. However Captain Lennox admitted the plaintiff was not being dishonest based on his own interpretation of the award issued by E. William Lewis on November 24, 2014. However, David Stanton, intentionally and with malice on January 25, 2019, omitted any testimony made by Capt Lennox for the sole purpose to fashion an award to meet the demand of the defendants named herein and to allow retaliation by the defendants and himself.

(4). Katy Robeson, testified ans was caught in a lie when she claimed that the plaintiff failed to tell her he had been terminated from his employment when he was hired by Allied Universal Security where she served  as human resource manager. She then was hired by the defendant agency in the human resource department. However, with her interview with OSP clearly demonstrates she was untruthful when she stated that the plaintiff told her he had been fired by the defendants agency named herein. However, David Stanton,  intentionally, and with malice omitted any false testimony made by Katy Robeson, so that he could fashion a falsified and untruthful award to meet the demand of the defendants names herein, David Stanton action were

However, in doing so David Stanton violated well well established public policies. He did so to retaliate against the plaintiff for no other reason than to violate the protected rights of the plaintiff free expression of speech, and to assist the defendants named herein to retaliate. Against the plaintiff and reverse court decisions. (See Appendix C award 1.25.2019).

IX.     FRATERNAL ORDER OF POLICE RETALIATION 1.25.19

(A14) Douglas Behringer, on January 25, 2019, received through email an award from Arbitrator David Stanton, captioned: Ohio Department of Public Safety, and the Ohio State Highway Patrol. Douglas Behringer is a seasoned labor attorney for defendant Ohio Fraternal Order of Police. He is well versed on arbitration negotiations and, in determining who are parties to agreements he has negotiated, specifically, agreements between the office of collective bargaining and the FOP. Douglas Behringer knew or should have known that he was violating ORC 4117.09, and ORC 4117.04, Ohio Collective Bargaining laws, when he intentionally engaged himself and the fraternal order of police into a staged second arbitration, based on a previously issued November 24, 2014, award, issued by arbitrator E. William Lewis. This second arbitration occurred without a valid contract agreement, and in violation of ORC 4117.09, Douglas Behringer knew the Ohio State Patrol were no longer members of the fraternal order of police. Douglas Behringer also knew that the Ohio State Patrol formed a union, known as the Ohio Troopers Association, and enforcement agents hired under the department of public safety were not members of the troopers association collective bargaining agreements. And, that there were no agreements made between the Ohio Office of Collective Bargaining under ORC 4117.10 (D) to include any agreements between the FOP and the State Patrol. Douglas Behringer knew from the beginning that his involvement was unlawful , and failed to properly represent the plaintiff. His actions were to assist the defendants named herein, and himself, to retaliate against the plaintiff for his protected activities. There were no legal basis for a second arbitration. The contract had expired on June 30, 2015.

violation of the laws of Ohio and the United States. The complaint outlined discriminatory, and retaliatory action of Douglas Behringer. In addition, to his complete failure to properly represent the plaintiff with whom he forced into a staged arbitration as outlined in the January 25, 2019 award. Behringer, failed to protect the rights afforded the plaintiff. Instead, he did so by, aligning himself with Thomas P. Charles, John Born, Paul Pride, James Hogan, and his good buddy David Stanton, so that he could engage in an acts of retaliation and deprivation against the plaintiff for filing complaints and, resisting racism. (See Appendix A 2 – 3.23.20 email to Behringer). The complaint made was not investigated by FOP of the plaintiff concerns.

(A18). Cathy Brockman, director of the Ohio Fraternal Order of Police., and, Gwen Callendeer, chief legal for the FOP

On March 29, 2019, the plaintiff Timothy Gales submitted a 56 page complaint letter to Cathy Brockman, that outlined the years of mistreatment the plaintiff had received from staff members of the FOP. Namely, Douglas Behringer, and former representatives, Paul Cox, and Joel Barton. The plaintiff explained in his letter to Ms. Brockman the failure of Doug Behringer to represent fairly at a staged arbitration he helped the defendants put together. On April 9, 2019, Cathy Brockman,and Gwen Callender, provided a negative response to the plaintiff request. Ms. Brockman in her response to the plaintiff. Denied the plaintiff request for an appeal to common pleas court. Instead she provided information that typically a judge would write in his or her opinion to vacate an award. The fraternal Order of Police do not have the authority to fashion decision, left to the court. Ms. Brockman, pointed in her letter and acknowledged the plaintiff dislike for Douglas Behringer ( See A-1- FOP 4.9.20 response letter). Cathy Brockman further pointed out in her letter, that pursuant to Ohio Revised Code 2711.10 that there are limited grounds for challenging an award and my claims do not exist. Even though the award was procured by fraud, and retaliation by the fop and Behringer. The award was issued under an expired contract, and the award was re-litigated from the original award in violation of the law. This violated my due process rights under the 14th amendment. TRIED TWICE FOR THE SAME ACT However, Cathy Brockman and Gwen Callender were engaged to assist the defendants named herein to retaliate against the plaintiff. That the two used their positions retaliate by having there good

Hogan, who attended the fraudulent and staged arbitration for which a January 25, 2019 award was issued. It also was James Hogan who attended the September 10, 2014 arbitration conducted by E. William Lewis as it related to the plaintiff grievance against Thomas P. Charles and John Born. James Hogan, used his position as a state labor attorney to influence the decision of the arbitrator by telling him. Under no conditions do John Born or Paul Pride, both, defendants named herein, would accept nothing less than the plaintiff termination. James Hogan acted in the same manner as Thomas P. Charles, John Born, and Paul Pride while under color of law And as a result of the sham award issued by David Stanton, James Hogan assisted defendants named herein to retaliate against the plaintiff for his protected activity. On several occasion the plaintiff submitted email to Mr. Hogan, requesting that the defendants (state) pay interest and additional back pay owed. With the latest email being sent July 7, 2020. James Hogan ignored the email in its entirety and refused to respond. James Hogan, committed the act and refused to respond based on the plaintiff filing complaints on the agency, and, defendants named herein. In addition, during the 2018 arbitration fake hearing. Joe Exstein testified that, it was James Hogan who told him not to pay the any additional money to the plaintiff that was owed. James Hogan committed the retaliatory acts for no other reason than to support the wishes of Thomas Charles, John Born, and Paul Pride, all who had in the past been sued by the plaintiff in federal court and in state court. Therefore, James Hogan assumed the same customs and norms of the defendants named herein to retaliate against the plaintiff for rejecting discrimination and racism. As a result, the January 25, 2019 fake arbitration award stole a 33 year state employee career due to retaliation and deprivation of rights. James Hogan failed his ethics as an attorney, however he chose to use his position as a labor attorney to retaliate and cost a 33 year Black law enforcement officer his career with no other justification other than retaliation. ( See appendix A July 7, 2020 titled back pay and interest owed)

Special note:

The plaintiff is advising the court that there is presently an open case with the Ohio Supreme Court. Case No. 21-0331 filed March 15,2021

## Certificate of Service

I Timothy Gales the affirm that a copy of the amended complaint was sent to the defendants at the below address via U.S. Mail on March 31, 2021, to, Thomas P. Charles, John Born, Paul Pride, James Hogan, 1970 West Broad Street Columbus, Ohio 43223. Douglas Behringer, Cathy Brockman, fraternal order of police, Gwen Callender 222 Town Street Columbus Ohio 43215. David Stanton, 7321 New Lagrange Rd, Covington Kentucky,40222 and Cullen Jackson 1602 West Broad street Columbus Ohio 43223

Timothy Gales  *3-31-21*
710 Glendower Avenue
Columbus, Ohio 43207
614 376.9346
tgales37@gmail.com

 Gmail                                                      timothy gales <tgales37@gmail.com>

## Misconduct complicity fall to represent

2 messages

**timothy gales <tgales37@gmail.com>**                              Sat, Mar 23, 2019 at 4:17 PM
To: Douglas Behringer <dbehringer@fopohio.org>, das.ocb.serb@das.ohio.gov, CURTIS HUNDLEY
<cmhundley@dps.state.oh.us>, timothy gales <tgales37@gmail.com>

Please find the attached complaint against Staff Representative Douglas Behringer. This complaint is as a failure of
Behringer to his legal duties. He conspired with the arbitrator, DPS/OSP and James Hogan to secure this fraudulent
award. This award must be appealed by FOP. if not the FOP has cleared this grievant/ petitioner to file an application to
vacate this bias award from Doug Good Friend David Stanton. The FOP can't stand back and allow this injustice to occur
with a 33 years employee. Which was fraudulently reduced to 21 years by Behringer and his complicit buddies at the
state.

 **complaint.rtf**
405K

**timothy gales <tgales37@gmail.com>**                              Sat, Mar 23, 2019 at 4:25 PM
To: PL O <keely208@msn.com>

[Quoted text hidden]

 **complaint.rtf**
405K

A-2

## CONTRACTUAL
## LABOR ARBITRATION PROCEEDINGS

| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| ARBITRATION BETWEEN | ) | |
| | ) | |
| | ) | |
| STATE OF OHIO, | ) | |
| OHIO DEPARTMENT OF PUBLIC SAFETY, | ) | |
| OHIO STATE HIGHWAY PATROL | ) | |
| | ) | DECISION IN |
| | ) | |
| -AND- | ) | EMPLOYMENT |
| | ) | TERMINATION |
| | ) | |
| FRATERNAL ORDER OF POLICE | ) | ENFORCEMENT AGENT, |
| OHIO LABOR COUNCIL, INC., UNIT - 2 | ) | TIMOTHY GALES |

---

**CASE NO.:**     DPS 2018-01038-02; Timothy Gales; Grievant

**GRIEVANCE:**     The Grievance, as set forth in Joint-Exhibit 2, challenges the termination of Grievant, Timothy Gales, as lacking "Just Cause".

**AWARD:**     The Grievance is Denied.

**HEARING:**     September 10, 2018; Columbus, Ohio

**ARBITRATOR:**     David W. Stanton, Esq.

---

### APPEARANCES

**FOR THE EMPLOYER**
Lieutenant Jake Pyles, OSP Advocate
Cassandra Brewster, Staff Lieutenant
Cullen Jackson, OCR 2nd Chair
Jim Hogan, DSP Legal
Samantha Shepherd, OSP-Intern
Chad Miller, Staff Lieutenant OSP
Katy Robson, Analyst

**FOR THE FOP/OLC**
Douglas J. Behringer, Attorney
Renee Engelbach, Paralegal
Curtis Handley, FOP Associate
Timothy Gales, Grievant

A-7

current position as Enforcement Agent. In addition, there was no progressive discipline in violation of article 19.05. The State was in violation of Articles 20.01 and 20.09.

**RESOLUTION REQUESTED:**

Return the Grievant (Tim Gales) to his current position as Enforcement Agent in the Columbus District Office and restore all Back Pay, benefits, union dues, Public retirement deposit as required by PERS.

\* \* \* \* \*

The stipulated issue(s) for disposition by the Arbitrator is/are:

Was the Grievant terminated for just cause?
If not, what shall the remedy be?

## OHIO DEPARTMENT OF PUBLIC SAFETY
## WORK RULES

The following Work Rules served as the basis of the Grievant's Termination:

DPS 501.02(D)(1)- False Statements, Truthfulness

- An Employee shall not make any false statement, verbal or written, or false claims relating to the performance of, or fitness of duty

\* \* \* \* \*

DPS 501.01(W)(1)- Compliance to Orders

- An Employee shall immediately and completely carry out the lawful orders of a supervisor, or designated officer in charge, which pertain to the discharge of the employee's duties.

## FACTUAL BACKGROUND

The operative facts which gave rise to the filing of this Grievance, challenging the

March 20, 2018 Employment Termination of Enforcement Agent, Timothy Gales, are,

except where otherwise indicated, essentially undisputed. The State of Ohio, Department

of Public Safety, hereinafter referred to as the "Employer", under the auspices of the

Ohio State Highway Patrol, operates the Ohio Investigative Unit wherein the Grievant,

Grievant returned to work on May 15, 2018. Pursuant to the Arbitration Award, the Employer sought Grievant's earnings documents through the Union. The Union gathered the requisite documents from Grievant from the time he was terminated to calculate his back-pay and the appropriate offset amount. The Union provided various Tax and other Income documents concerning the Grievant. On May 31, 2017, Grievant contacted DPS-HR about his back-pay. Mr. Eckstein requested Grievant to confirm all his earnings from 2013-2017 and provided the afore-referenced Documents for verification. Grievant confirmed the accuracy of all of his income information via Email on June 5, 2017.

At the direction of DPS Chief of Staff, Mark Gibson, Mr. Eckstein checked with the Private Investigator Security Guard Services ("PISGS"), who license and regulate private security guards in the State, to confirm whether Grievant was employed by Allied Universal as was suggested by Ms. Robson. A photo provided by Allied Universal assisted Eckstein's verification the Grievant had in fact been employed there. Staff Lieutenant Chad Miller, in turn, contacted Allied to confirm the Grievant's employment. An audit of Allied Universal employment records revealed Grievant worked at Allied Universal from September 4, 2016 to May 1, 2017, working a total of 863.5 hours during that time at a rate of $14.60 per hour, totaling $12,607.10. This total only reflects the amount made during the Audit period and did not include possible earnings between February 3 through May 1, 2017.

By letter from Ohio Department of Public Safety Director, John Born, dated March 19, 2018, the Grievant was provided notification he was terminated arising from the issues surrounding undisclosed income earned at Allied Universal. During the course

- 4 -

to assist in calculating his back-pay, did not include any earnings from Allied Universal. No other documents submitted by Grievant disclosed the earnings from Allied Universal. Grievant worked at Allied Universal until May 1, 2017 and stated he had provided all Tax documentation when requested by Mr. Eckstein. He submitted multiple forms reflecting his earnings from 2015 and 2016; however, these documents did not include any mention of Allied Universal. Only after the Employer discovered Grievant had been previously employed by Allied did Grievant claim, he did not have to provide that documentation. Grievant misled the Employer and tried to hide the truth of his employment. Grievant had an opportunity to provide the requisite documentation when Mr. Eckstein requested he confirm that all appropriate documentation had been provided; the Grievant refused. If Grievant was acting truthfully, he would have disputed the accuracy of his back-pay as it did not include his time and earnings at Allied Universal.

During his second interview, Grievant did not produce the documents his Supervisor ordered him to bring. Employees are required to comply with Administrative Investigations. When asked if the documents provided were accurate, Grievant stated they were his Federal Tax Returns and they were accurate. Grievant refused to answer the question twice more. Grievant knew the earnings from Allied Universal were not properly reported on his Tax Returns. During his interview, Grievant eventually stated his Returns were accurate as far as he knew. Both statements were untruthful. He had only just left the employ of Allied Universal on May 1st and had earned over $12,000.00. Lieutenant Miller tried to discuss Grievant's overall earnings on his reported 1040 and Grievant refused and quit cooperating entirely. Grievant ended the interview stating everything he had said was true to the best of his knowledge. This was a false statement.

necessary has been provided. Mr. Eckstein requested Grievant review the provided documents to assure all were present. Grievant testified he read said Email and he was aware Mr. Eckstein asked him to confirm all income from 2013-2017. Grievant confirmed he did not include information from Allied Universal, and he did not question or dispute the Email from Mr. Eckstein. Based upon Grievant's testimony and the evidence presented, it is clear Grievant knew of the information that Mr. Eckstein was missing and deliberately chose not to provide the same. A short time later, Grievant made the same choice again. Grievant clearly refused to follow a written request made by his supervisor.

On February 14, 2018, Staff Lieutenant Miller emailed Harry Love, Grievant's Supervisor. The email asked Mr. Love to inform Grievant of the need for a second interview. He was asked to provide employment and income information concerning Allied Universal, as well as, any other Employer in that time frame. Mr. Love relayed that information to Grievant. Grievant replied stating he had provided all required documents and he would not provide his Tax Returns. He also stated he had submitted the requested Tax Returns to the Agency through the Attorney General. This is untrue. At this point, Grievant had submitted Tax documentation but it did not reflect his Allied Universal earnings. This information was necessary to offset his back-pay as required by the prior Arbitration Award. Grievant was also requested to provide pay stubs from Allied Universal; to which he replied, he did not have them, and the Employer had effectively received that information already. This statement is untrue as well.

He did not provide his original 2016-2017 1040 Tax Return to anyone or bring it to his interview. The only Tax records Grievant had at this point came from the Union,

Grievant about the 1040 they did receive. Grievant stated the Employer was not entitled to information concerning his Tax Returns – he was wrong.

Grievant's argument the Tax Returns were private, and the Employer did not have the right to request them is incorrect. He provides no evidence of the same. Why would Grievant provide the information initially and then claim they were privileged at a later date? They are only private because they do not include his earnings from Allied Universal. He never attempted to provide that earning information to the Employer. Grievant had multiple chances to do so but refused. Grievant stated he was not going to provide the information regardless. This is a pattern of deliberate, misleading and untruthful behavior. It was these behaviors that led to his termination.

Throughout the Investigation and Hearing, Grievant continued to state he did not have to provide any earnings documents after the Arbitration Award issued in 2014. It is unclear what Grievant believes as he has provided some, but not all, of his earnings documents. Regardless, it does not absolve Grievant's duty to mitigate his back-pay by providing documentation of outside compensation. Grievant claims the Employer owed back-pay from the November 24, 2014 Award date until his reinstatement, and yet, he also claimed he had no duty to mitigate his loss and the Employer was barred from deducting outside compensation through that same period.

It is commonly accepted that outside earnings are properly deducted from back-pay. The Employer does not dispute the Grievant was entitled back-pay until his reinstatement; it was within its right to ask that the Grievant mitigate at the same time. This is done through requesting Grievant's Income documentation. The Grievant's assertion that he did not have to provide the information was incorrect. The Grievant was

as evidence in the present claim. If the "amended" 1040 does exist, it only proves

Grievant refused to cooperate and made inaccurate statements about his Allied earnings.

He claims he found a W-2 from Allied Universal and it reminded him he worked there

for approximately 6 months and received at least $12,000. More likely, Grievant learned

the Employer knew about his prior employment and knew the 1040 submitted did not

include those earnings. Even if his testimony is true, he still did not provide the income

documentation as requested.

In Grievant's second interview, he testified the 1040 provided to the Employer

was accurate. If the 1040 was accurate at that time, he would not have needed to

subsequently amend it later. Grievant testified he submitted the amended 1040 in July

2017, but the second interview did not occur until February 2018. If the amended 1040

existed after July 2017 as Grievant claims, then he withheld the same from the Employer

through his Termination in March 2018. Grievant told the Employer the initial 1040

provided was accurate during his second interview. If the amended 1040 exists, then it

only proves and bolsters the dishonesty of Grievant.

The Employer's next argument concerns Grievant' actions in regard to the Union

and its representation. The Union claimed that the Employer cut out the Union when

trying to gather documents about Grievant's back pay. This is not true. The Employer

emailed a representative of the Union on May 2, 2017 regarding the requested

documentation. The emails directly to the Grievant were covered thoroughly in the

investigation. Grievant initiated that correspondence and did not include the Union in the

email initially. Mr. Eckstein simply responded to an email. Grievant excluded the Union

in this case.

from 2013-2017. The Email correspondence reflects that request; however, he chose not to provide the documentation and refused to participate or raise any concerns to the Employer or the Union. Just because an Employee believes they are right, does not mean they can choose to refuse to comply with an Order – especially in law enforcement. Grievant should have obeyed the Order and grieved the issue later. The Grievant's own Union told him to comply and he still refused. Grievant also had a chance to mitigate when he was told to provide his pay stubs from Allied Universal. Grievant replied by saying that his Tax Return information was private. He then stated the initial 1040 he provided was accurate, but required he file an amended 1040 months prior to the interview. The Grievant made multiple choices to be defiant, misleading, and dishonest.

Union and Grievant both made allegations stated as fact without any evidence backing the same. The evidence provided by the Employer contradict these claims. The Grievant and Union tried to obfuscate the truth with irrelevant side issues, but the material fact remains: Grievant was dishonest, refused to comply with Orders from his Supervisor, and misled the Employer throughout the Investigation. Once the Employer proves dishonesty, the Arbitrator does not have the authority to modify the discipline imposed. The discipline was not arbitrary, capricious, or discriminatory. Grievant was dishonest, misleading, and refused to provide requested documents to the Employer.

For these reasons, the Employer requests the Grievance be denied.

## UNION CONTENTIONS

The Union contends the Grievant did not violate DPS 501.02(D)(1) concerning the Employer's claim Grievant falsely reported his income after his reinstatement. This charge is based upon the reluctance of Grievant to provide income information from

the documentation to the Employer, not the Grievant. The Employer should have
contacted the Union about any issues regarding the materials provided initially, not the
Grievant. The Employer instead "cut out" the Union and approached Grievant directly.
The Employer knew about Grievant's employment at Allied Universal as early as
February 2, 2017. The Employer contacted the Grievant directly about his documentation
in spite of, or due to, that knowledge.

The Employer claims Grievant's answers to their first inquiry were dishonest. The
Employer also claims Grievant failed to notify them when he disagreed to their
interpretation of the necessary documentation they requested. Grievant has insisted
consistently the only earnings due were those he received prior to November 24, 2014.
Grievant replied to the Employer's Email stating he attached all of the Documents he
submitted to the Email the Employer sent. Mr. Eckstein admitted this was the first time
he has handled back-pay after an appellate process, and he agreed the Arbitrator could
only rule upon what he knew at the time of the Award. The ruling bases the reinstatement
upon a November 24, 2014 date, and Grievant relied upon this date. Grievant did not
affirm or deny the earnings from Allied Universal; as he did not believe it was relevant to
the date of the Award.

During the Investigation, Grievant reported there was nothing requiring him to
disclose where he worked during the time in question. He was not trying to hide
anything, he just did not believe that was information he was required to turn over.
Grievant has not changed his position regarding the same. He currently believes he does
not have to provide the Employer any information of his income following the November
24, 2014 date. Testimony given by Charles Linek supports the position of the Union

The Union submits Grievant was not fired for dishonesty or non-compliance of orders; rather, Grievant was fired due to a long-standing vendetta against him. This is shown by the Employer's Appeal of the 2014 Arbitration Award. This Case has nothing to do with Grievant's work performance and the Employer has never denied he is a good Enforcement Agent. Grievant's conduct does not negatively affect his ability to perform in his position nor does it negatively affect the ability of the Employer to function properly. He has not been charged with any crime that would create a conflict of interest for Grievant. He did not lie under oath. The Employer was just unhappy with the 2014 Arbitration Decision requiring his return to work with back-pay.

The Employer was aware of Grievant's income from Allied Universal before they ever contacted Grievant and yet, the Employer never directly discussed Allied with Grievant. A follow-up would have clarified the misunderstanding. The Employer was not looking for the truth; it was only interested in manufacturing dishonesty to justify Termination. The Employer admitted it readily paid money to Grievant to which it believes he is not entitled. They were aware Grievant had worked at Allied Universal before making that payment. Making a mistake does not constitute dishonesty.

The Employer hired Ms. Robson in January 2017 and she claims she hired Grievant at Allied Universal. However, it appears the Branch Manager hired Grievant. Ms. Robson testified Grievant had lied to her before - during the interview process for Allied. She testified Grievant claimed he left DPS because he did not receive a promotion. Most who apply for a new position will inflate their work history and avoid discussing prior terminations. However, Ms. Robson told Mr. Eckstein Grievant admitted he was fired from DPS during his interview at Allied Universal. Ms. Robson's testimony

- 18 -

not shown Grievant to be dishonest; it has demonstrated Grievant had a different opinion regarding necessary documentation to prove back-pay.

The Employer has the burden to substantiate the discipline in this case was justified; a burden it did not meet. The Employer was not able to prove just cause for the discipline imposed nor why the progressive discipline standard was inapplicable. Evidence supporting both is required by the CBA and is entirely lacking here. The Employer was aware it had violated the contractual requirement of progressive discipline. Just cause entitles Grievant to specific protections related to fairness in disciplinary situations. The Employer cannot discipline on a whim. The discipline carried out must be relative to the offense. The discipline here is disproportionate to the alleged offense for an Employee with over 20 years of service. The burden to establish just cause falls with the Employer and the Employer failed to meet this burden.

Contrary to the Employer's assertion, the Arbitrator has the power and duty to determine the reasonableness of the discipline imposed. Grievant was truthful and he complied with the Employer's requests to the best of his knowledge. If the Employer had any questions regarding the documents it had received to determine back-pay, the Employer could have contacted a Union Representative. If the parties were unable to clarify the appropriate documents, the matter should have gone back to the 2014 Arbitrator for clarification. Instead, the Employer terminated Grievant.

Since the Employer failed to establish just cause for any discipline in this case, the Grievance should be sustained. The Union respectfully requests the Arbitrator sustain the Grievance; order the Employer to return the Grievant to his former position; and,

does deny he failed to report that information to the Employer. He insists he made no false statements, verbal or written, and there is no evidence to suggest he was dishonest. He was never untruthful about what he believed the Employer required to calculate his back-pay. While he may have been incorrect as to what the necessary documentation consisted of, he was not untruthful. He was of the opinion the money earned at Allied Universal was no different from any other Employee who worked a second job, and such was not necessary to disclose to the Employer. At no time did he deliberately engage in false and/or misleading statements to the Employer during its inquiries to provide the documentation it was seeking.

The Union insists the Grievant is not an Attorney or an Employee of the Union and does not possess the knowledge and/or experience of Union Representatives concerning back-pay calculations. Had the Employer required additional documentation, the Employer should have contacted the Union, who represents the Grievant, about any unresolved issues regarding the documentation initially provided and whatever subsequent documentation it required. The Employer instead cut the Union out of its endeavors and dealt directly with the Grievant. The Union emphasizes that not only was the Grievant unaware of what was required with respect to the calculation of ordered back-pay and the concept of setoff in relation thereto, Mr. Eckstein testified it was his first occasion to address the calculation of back-pay.

The Union insists the Grievant was not trying to evade the request or mislead the Employer. He simply believed the monies earned at Allied Universal were nothing more than any other Employee who works a second job and therefore would not be subject to the monies owed to him by the Employer herein. He was not untruthful and did not in

thereto. He was terminated by the division in March 2013; ordered to be reinstated via
that Award dated November 24, 2014; and, returned to work in May 2017. Given the
delays, the Arbitration Award being rendered and being subject to Appeals, he was not
returned to Employment with the Division until May 2017.

The Arbitration Award required the Grievant "...to supply records of *all* receipts
for wage earnings...", as well as, "unemployment compensation if any", which is indeed
consistent with the majority view with respect the mitigation of wages lost. The implicit
presumption suggests such be accurate and complete. The Arbitration Award is
tantamount to an Order from a Judge and mandates each Party to comply with the
directives contained therein. Those amounts would indeed reduce the amount of back-pay
required to be paid by the Division on behalf of the Grievant and pursuant to the Award.
During the course of an email exchange with the Grievant, on or about June 2, 2017,
Director of Human Resources for the Department of Public Safety, Joe Eckstein, asked
him to confirm the list of employment he had for the time period in question - 2013-2017.
The Grievant confirmed the list depicting his employment for the time period in question;
however, he failed to disclose employment with Allied Universal. As the record
demonstrates he provided security services for that organization for which he received
$14.60 per hour.

The Union would have the Arbitrator conclude the Grievant simply
misunderstood what was required with respect to the calculation of the back-pay ordered
by Arbitrator Lewis. The Union, as the Grievant's Collective Bargaining Agent and well
versed in these matters, indicated to him such, as requested, would be required in order
for him to "get his money." Whatever assertions the Grievant has raised with respect to

nothing to mitigate or temper his conduct or his assertions he "misunderstood" and/or "had a different interpretation" regarding his obligations under the Award. He failed to heed the representational advice of his Collective Bargaining Agent for which he has no one to blame but himself.

Neither his 2016 1040 Federal Tax Return, or any of the documentation provided by him through the FOP, disclosed the earnings from Allied Universal. It is simply implausible to conclude the Grievant failed to recall that timeframe, those earnings, and/or his employment with Allied Universal and was only reminded of same when the W-2 from that organization fell from the top of his refrigerator. Throughout the interview process concerning these matters, the Grievant insisted his Tax records were private which is evident in his statements taken from the interview wherein he indicated, "...whatever I gave you is accurate as far as I know and whatever is on my 1040 is between me and the lamp post". It is simply implausible to conclude the Grievant, as he asserts, was unaware of, or could not recall, his earnings at Allied Universal. In his second interview with Staff Lieutenant Miller in February 2018, he indicated he amended his 1040 to include those earnings thereby rendering impossible the accuracy of the original 2016 1040 Federal Tax Return the Grievant previously insisted was accurate and complete. Such did not include the Allied Universal earnings.

Additionally, with respect to the Grievant's non-compliance to orders to provide the necessary documentation to compute the back-pay owed him; the inaccurate Federal Tax Return, and the amended Tax Return for the same year(s) in question, not to mention the assertions made by him such was "all he had", the email from Mr. Eckstein requested him to confirm *all* income for the timeframe in question. Based on this evidentiary

pay by his primary Employer, that income existed at the time when the Grievant was terminated from his employment. Again, there is no evidence the Grievant worked at Allied prior to his Termination to corroborate his claim such was secondary employment.

His misunderstanding, if you will, with respect to the timeframe being limited from the date of Termination until the date of the Arbitration Award, is misplaced. The affected, aggrieved and reinstated Employee continues to be afforded back-pay considerations until such time he is returned to work; whenever that may be. To state another way, the period of the time the Grievant was terminated until such time he was returned to work, is the timeframe in which the obligation, the affirmative obligation to provide whatever documentation to substantiate earnings, whether via another Employer and/or Unemployment Compensation, must be established and provided; otherwise, the Grievant forfeits the opportunity to receive those earnings that are not substantiated. He would be in violation of the "Order" issued by the Arbitrator, i.e., the "Judge" in the employment realm.

Based on the totality of this evidence as presented, the actions of the Grievant run inconsistent with an individual who is committed to truthfulness and compliance to direct orders. The Grievant herein is a victim of his own demise. He had every opportunity to comply with the Employer's requests and for whatever reason chose to charter his own path inconsistent with that recommended by his Collective Bargaining Agent; and, as such, he can only blame himself for the circumstances that currently exist. This evidentiary record establishes for whatever reasons the Grievant was untruthful regarding his employment/income record-keeping and was non-compliant with the directives of the Employer, via the Arbitration Award, to provide such for proper back-pay

**Franklin County Ohio Clerk of Courts of the Common Pleas- 2016 May 19 3:58 PM-15MS000119**

EX- A4

## IN THE COURT OF COURT OF COMMON PLEAS
## FRANKLIN COUNTY, OHIO

STATE OF OHIO,
OHIO DEPARTMENT OF
ADMINISTRATIVE SERVICES, OFFICE
OF COLLECTIVE BARGAINING, ET AL.:   Case No. 15-MS-119

   Plaintiffs,

   v.   JUDGE COCROFT

FRATERNAL ORDER OF POLICE OF
OHIO, INC., OHIO LABOR
COUNCIL, INC.

   Defendant.

### DECISION AND ENTRY DENYING PLAINTIFF'S MOTION
### TO VACATE ARBITRATION AWARD
### FILED FEBRUARY 20, 2015
and
### GRANTING DEFENDANT'S MOTION TO CONFIRM
### FILED MARCH 20, 2015

This matter is before the Court on the motion of the plaintiffs, State of Ohio Department of Administrative Services, Office of Collective Bargaining and Ohio Department of Public Safety ("the State"), to vacate an arbitration award under Chapter 2711 of the Revised Code. The defendant, Fraternal Order of Police, Ohio Labor Council, Inc. ("FOP"), has opposed the motion. For the following reasons, the State's motion is denied.

### I. FACTS

In 2012, the State and the FOP entered into a collective bargaining agreement ("CBA"). The State alleges that following a workplace investigation, the Director of the Ohio Department of Public Safety terminated Timothy Gales' employment as an Enforcement Agent with the Department of Public Safety for violating workplace rules,

Please write on Page B - A-4

motions, except as otherwise expressly provided in such sections." For this reason, the Tenth District Court of Appeals has found "the applicable rules in both the local rules and Ohio Rules of Civil Procedure are those pertaining to motions rather than those pertaining to the commencement of an action." *Reynoldsburg City Sch. Dist. Bd. of Educ. v. Licking Heights Local Sch. Dist. Bd. of Educ.*, 10th Dist. Franklin No. 11AP-173, 2011-Ohio-5063, ¶ 15.

The filings in this matter are procedurally puzzling at best. On February 20, 2015, the State filed their "Application and Motion to Vacate Arbitration Award" to the Court's docket as a complaint. Like a complaint, it contains number paragraphs setting forth the State's claims, a statement alleging proper venue, and a concise statement of the relief sought. In response the FOP filed a motion to confirm the arbitration award and a separate "answer and counterclaim," generally denying the allegations in the State's motion and seeking interest on the money owed to Gales. The State filed an "answer to [the FOP's] counterclaim." Then on May 14, 2015, the State filed a "Motion for Summary Judgment and Opposition to Defendant's Motion to Confirm the Arbitration Award." The FOP filed a "response" and thereafter the State replied.

In its response, the FOP argues that the State's motion for summary judgment should be dismissed because it is procedurally improper. The FOP points out that, even though the State timely filed a motion to vacate under R.C. 2711.13, it failed to include a memorandum in support as required by the local rules. It argues, inter alia, that the State's motion for summary judgment is an "attempt to substitute the memorandum or brief which should have accompanied the motion to vacate * * *," and does not comply with R.C. Chapter 2711. The State counters that its motion for

### B. Motion to Vacate

Turning to the State's application and motion to vacate the arbitration award, it argues that the "Arbitrator exceeded his authority or so imperfectly executed them by reading provisions into the CBA that did not exist and disregarding applicable Ohio law. Specifically, the State argues that the arbitration award should be vacated "because the Arbitrator disregarded applicable Ohio law on the sale or transfer of vehicles, namely Section 4517.02(A)(6) and Section 4738.02(B) of the Ohio Revised Code and, thereby, disregarded the expressed written provision in the CBA that his award must 'conform with the Law of Ohio.'"

However, the State fails to cite any law or authority in support of its motion. It also fails to specify how it believes the arbitrator disregarded R.C. 4517.02(A)(6) and 4738.02(B) in determining his award.  As the Tenth District has pointed out, the parties must conform to the applicable local rules and Ohio Rules of Civil Procedure pertaining to motion.  Loc.R. 21.01 provides that "[a]ll motions shall be accompanied by a brief stating the grounds and citing authorities relied upon."  Accordingly, the State has failed to comply with Loc.R. 21.01.  This alone is reason to deny the State's motion.

Even considering the merits, the State's argument still fails.  When parties agree to submit their controversy to binding arbitration, they agree to accept the result even if is it legally or factually wrong. *Prosper Bus. Dev. Corp. v. Intervenor*, 10th Dist. Franklin Nos. 11AP-855, 11AP-856, 2012-Ohio-2992, ¶ 42.  "Because Ohio law favors and encourages arbitration, courts only have limited authority to vacate an arbitrator's award. * * * R.C. 2711.10 restricts the grounds on which a court may vacate an arbitration award to fraud, corruption, misconduct, an imperfect award, or that the

5

Franklin County Ohio Clerk of Courts of the Common Pleas- 2016 May 19 3:58 PM-15MS000119

and exceeded his authority as alleged by the State in its application and motion to vacate. Accordingly, the State's motion to vacate the arbitration award is **DENIED**.

<u>C. Motion to Confirm</u>

Turning to the FOP's motion to confirm, it opposes the merits of the plaintiff's application and motion to vacate arbitration award and moves the Court to confirm the arbitration award under R.C. 2711.09. The State did not file its opposition to the motion to confirm within 14 days of the date of service as set forth on the FOP's certificate of service attached to the motion, thus the opposition is untimely under Loc.R. 21.01. Accordingly, the Court will not consider it when ruling on the FOP's motion to confirm.

R.C. 2711.09 provides in relevant part "[a]t any time within one year after an award in an arbitration proceeding is made, any party to the arbitration may apply to the court of common pleas for an order confirming the award. Thereupon the court shall grant such an order and enter judgment thereon, unless the award is vacated, modified, or corrected as prescribed in sections 2711.10 and 2711.11 of the Revised Code."

"When a motion is made pursuant to R.C. 2711.09 to confirm an arbitration award, the court *must* grant the motion if it is timely, unless a timely motion for modification or vacation has been made and cause to modify or vacate is shown." *Warren Edn. Assn. v. Warren City Bd. of Ed.,* 18 Ohio St.3d 170, 480 N.E.2d 456 (1985), syllabus. (Emphasis added.)

Therefore because the State has not shown cause to vacate the arbitration award, R.C. 2711.09 requires the Court to confirm the award. Accordingly, the FOP's motion to confirm is **GRANTED**.

7

**Franklin County Ohio Clerk of Courts of the Common Pleas- 2016 May 19 3:58 PM-15MS000119**

Franklin County Court of Common Pleas

**Date:**           05-19-2016

**Case Title:**      OHIO STATE DEPT ADMINISTRATIVE SERVICES ET AL -VS-
                     FOP OHIO INC OHIO LABOR COUNCIL INC

**Case Number:**     15MS000119

**Type:**            DECISION/ENTRY

It Is So Ordered.

/s/ Judge Kimberly Cocroft

Electronically signed on 2016-May-19     page 9 of 9

OD542    RØ3 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Apr 14 11:34 AM-15MS000119

No. 16AP-457                                                                                        2

## I. Facts and Procedural History

{¶ 2}  Effective July 1, 2012, the state and FOP entered into a collective bargaining agreement ("CBA") allowing, among other things, the parties to submit certain disputes to arbitration. On March 1, 2013, the director of DPS issued a letter to Timothy Gales, an employee of the Ohio Investigative Unit, informing him that his employment had been terminated. Following a workplace investigation into allegations that Gales had sold numerous vehicles that he purchased at auction to members of the public without obtaining a dealer or salvage license from the Ohio Bureau of Motor Vehicles, DPS decided to terminate Gales' employment for violation of workplace rules, violation of Ohio law, and "actions that brought discredit" upon DPS. (Feb. 20, 2015 Application & Mot. to Vacate at ¶ 9.)

{¶ 3}  Pursuant to the terms of the CBA, Gales filed a grievance challenging the nature and merits of his March 13, 2013 termination. The parties then submitted the matter of Gales' termination to arbitration. Following a two-day hearing in September 2014, the arbitrator rendered a decision and award dated November 24, 2014 modifying Gales' termination to a one-month suspension without pay.

{¶ 4}  On February 20, 2015, the state filed an "application and motion to vacate arbitration award" in the trial court, arguing the arbitrator exceeded or so imperfectly executed his authority by disregarding applicable Ohio law. The state further asserted the arbitrator disregarded the plain and unambiguous meaning of the CBA. Along with its motion to vacate, the state filed the arbitrator's award and the CBA. FOP responded on March 20, 2015 in an "answer and counterclaim" asserting the trial court should deny the state's motion to vacate and seeking an order (1) confirming the arbitration award, (2) requiring the state to pay Gales any and all back pay and benefits, (3) awarding interest to Gales, and (4) requiring the state to pay all costs.

{¶ 5}  Subsequently, on April 17, 2015, the state filed a document captioned "plaintiffs' motion for summary judgment and opposition to defendant's motion to confirm the arbitration award," along with documents related to the proceedings before the arbitrator. That same day, the state filed an answer to FOP's counterclaim.

{¶ 6}  In response, FOP filed a memorandum contra the state's motion for summary judgment on April 23, 2015 arguing (1) a motion for summary judgment is not

Franklin County Ohio Court of Appeals Clerk of Courts- 2017 Apr 13 1:35 PM-16AP000457

OD542 - R95 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Apr 14 11:34 AM-15MS000119

No. 16AP-457                                                                                     4

{¶ 9} As to FOP's motion to confirm, the trial court reiterated that the state did not file its opposition to FOP's motion within 14 days of the date of service as required by Loc.R. 21.01. The trial court then granted FOP's motion to confirm on the grounds that, pursuant to R.C. 2711.09, the state did not show cause to vacate the arbitration award. Additionally, the trial court stated it was awarding both pre- and postjudgment interest on the back pay due to Gales from November 24, 2014 until the date he is reinstated. The state timely appeals.

## II. Assignments of Error

{¶ 10} The state assigns the following errors for our review:

> 1. The Common Pleas Court erred as a matter of law in finding that the State has not complied with the jurisdictional and/or procedural requirements to vacate the arbitration award.
>
> 2. The Common Pleas Court erred as matter of law in confirming the award, failing to vacate the award and in failing to address the substantial grounds upon which the State sought to vacate the arbitration award.
>
> 3. The Common Pleas Court erred as a matter of law when it awarded pre-judgment interest to the Appellee.

## III. First and Second Assignments of Error — Arbitration Award

{¶ 11} In its first assignment of error, the state argues the trial court erred in determining the state did not comply with the jurisdictional and/or procedural requirements of R.C. Chapter 2711 in order to vacate the arbitration award. The state argues in its second assignment of error that the trial court erred in failing to vacate the arbitration award on the merits. In its decision and entry, the trial court stated it was denying the state's motion to vacate the arbitration award on the grounds that (1) the state did not satisfy the jurisdictional and/or procedural requirements of R.C. Chapter 2711, and (2) even if the state's motion and subsequent filings were proper under R.C. Chapter 2711, the motion nonetheless fails on its merits. Thus, because the state's first two assignments of error address the trial court's alternative bases for denying the state's motion, we address the first two assignments of error jointly. Taken together, the first two assignments of error assert the trial court erred in denying the state's motion to vacate the arbitration award.

Franklin County Ohio Court of Appeals Clerk of Courts- 2017 Apr 13 1:35 PM-16AP000457

Case: 2:21-cv-00328-MHW-KAJ Doc #: 7-1 Filed: 03/31/21 Page: 48 of 55 PAGEID #: 145

OD542 - R97 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Apr 14 11:34 AM-15MS000119

No. 16AP-457                                                                                        6

09AP-608, 2010-Ohio-2850, ¶ 19. Thus, "the applicable rules in both the local rules and Ohio Rules of Civil Procedure are those pertaining to motions rather than those pertaining to the commencement of an action." *Reynoldsburg City School Dist. Bd. of Edn. v. Licking Hts. Local School Dist. Bd. of Edn.*, 10th Dist. No. 11AP-173, 2011-Ohio-5063, ¶ 15. Relying on this language, the trial court determined that even though the state timely filed a motion to vacate, it did not file a memorandum in support as required by Loc.R. 21.01. The trial court did not agree with the state that its motion for summary judgment could be construed as a memorandum in support of its motion to vacate. Additionally, the trial court determined that to the extent the state intended its motion for summary judgment to operate as a memorandum in opposition to FOP's motion to confirm, the filing was untimely under the local rules. Loc.R. 21.01 (stating "[a]ll motions shall be accompanied by a brief stating the grounds and citing the authorities relied upon * * * on or before the 14th day after the date of service").

{¶ 16} The state argues the trial court erred in not considering its "motion for summary judgment" based on procedural grounds. However, we need not determine whether the trial court erred in its application of the procedural requirements of R.C. Chapter 2711 and the relevant local rules to this case because, even if it did, the trial court also decided this case on the alternative basis of the merits of the motion. Thus, even if we were to agree with the state that the trial court erred in its procedural rulings, our next step would be to review the trial court's disposition of the state's motion to vacate on the merits. Accordingly, the question before us is whether the trial court erred in denying the state's motion to vacate on the merits and granting FOP's motion to confirm the award.

**B. Merits of the State's Motion to Vacate the Arbitration Award**

{¶ 17} "Because Ohio law favors and encourages arbitration, courts only have limited authority to vacate an arbitrator's award." *Fraternal Order of Police Capital City Lodge No. 9 v. Reynoldsburg*, 10th Dist. No. 12AP-451, 2013-Ohio-1057, ¶ 22, citing *Assn. of Cleveland Fire Fighters, Local 93 of the Internatl. Assn. of Fire Fighters v. Cleveland*, 99 Ohio St.3d 476, 2003-Ohio-4278, ¶ 13. Pursuant to R.C. 2711.10, a court may vacate an arbitration award only on the grounds of fraud, corruption, misconduct, an imperfect award, or that the arbitrator exceeded his or her authority. *Id.* Here, the state requested

Franklin County Ohio Court of Appeals Clerk of Courts- 2017 Apr 13 1:35 PM-16AP000457

OD542 - R99 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Apr 14 11:34 AM-15MS000119

No. 16AP-457          8

Franklin County Ohio Court of Appeals Clerk of Courts- 2017 Apr 13 1:35 PM-16AP000457

motor vehicle by a person other than a new motor vehicle dealer"). Article 20.08(4) of the parties' CBA provides that "[t]he arbitrator's decision shall be final and binding * * * provided such decisions conform with the Law of Ohio and do not exceed the jurisdiction or authority of the arbitrator as set forth in this Article." Thus, the state argues that by creating exceptions in the Revised Code that did not exist in the plain language of the statutes, the arbitrator rendered a decision that did not conform with the law of Ohio, in contradiction of the express terms of the CBA.

{¶ 21} After reviewing the record before us, even construing the state's "motion for summary judgment" as a brief in support of its motion to vacate and considering the arguments advanced therein, we agree with the trial court that the state is unable to show that the arbitrator exceeded his authority. The issue before the arbitrator was whether Gales' conduct warranted termination. After taking evidence and hearing arguments from both parties, the arbitrator made the factual determination that Gales' conduct did not rise to the level of requiring termination but did warrant discipline in the form of a one-month suspension without pay.

{¶ 22} "The arbitrator is the final judge of both the law and the facts, and a court may not substitute its judgment for that of the arbitrator." *Fresh Eggs Manager, LLC v. Ohio Fresh Eggs*, 10th Dist. No. 12AP-1074, 2013-Ohio-3454, ¶ 13, citing *Madison Local School Dist. Bd. of Edn. v. OAPSE/AFSCME Local 4*, 11th Dist. No. 2008-L-086, 2009-Ohio-1315, ¶ 9. Though the state may disagree with the arbitrator's interpretation of the applicable law, the arbitrator nonetheless considered and applied the statutes to each of Gales' title transfers, concluding there was not clear and convincing proof that Gales' offenses rise to the level of termination. *Id.* at ¶ 27 ("[w]hile appellants clearly disagree with the arbitrator's conclusions, that is not a valid basis for vacating an arbitration award"). Additionally, the arbitrator went through the various applicable provisions of the CBA and applied the terms of the CBA to the dispute at hand. *Id.* at ¶ 18 (noting that "[a]s long as the arbitrator is arguably construing the contract, the trial court is obliged to affirm its decision"). Therefore, we find the arbitrator did not exceed his authority, and the trial court did not err in denying the state's motion to vacate the arbitration award.

Case: 2:21-cv-00328-MHW-KAJ Doc #: 7-1 Filed: 03/31/21 Page: 52 of 55 PAGEID #: 149

OD542 - S7 Franklin County Ohio Clerk of Courts of the Common Pleas- 2017 Apr 14 11:34 AM-15MS000119

No. 16AP-457                                                                                                                   9

### C. Public Policy

{¶ 23} The state additionally argues that the arbitrator's award violates public policy and, thus, this court must vacate it. We disagree.

{¶ 24} "If the arbitrator's interpretation of a collective bargaining agreement violates an explicit public policy, the resulting award is unenforceable." *Fraternal Order of Police Capital City Lodge No. 9* at ¶ 34, citing *Southwest Ohio Regional Transit Auth. v. Amalgamated Transit Union, Local 627*, 91 Ohio St.3d 108, 112 (2001). "The public policy must be well defined and dominant, and must be ascertained ' "by reference to the laws and legal precedents and not from general considerations of supposed public interests." ' " *Id.*, quoting *Southwest Ohio Regional Transit Auth.* at 112, quoting *Muschany v. United States*, 324 U.S. 49, 66 (1945). "Vacating an arbitration award for public policy reasons is a narrow exception to the 'hands off' policy that courts employ in reviewing arbitration awards and ' "does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy." ' " *Id.*, quoting *Southwest Ohio Regional Transit Auth.* at 112, quoting *United Paperworkers Internatl. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 43 (1987).

{¶ 25} Here, the state argues the arbitrator's award violates the "settled public policy * * * that police officers are held to a higher standard of conduct than the general public." (Citations omitted.) *Jones v. Franklin Cty. Sherriff*, 52 Ohio St.3d 40, 43 (1990). We note, however, that *Jones* involved an appeal to the State Personnel Board of Review and not an arbitration award under a collective bargaining agreement. Moreover, though the arbitrator reversed Gales' termination, the arbitrator nonetheless disciplined Gales in the form of a one-month suspension without pay. The state does not point to any authority requiring termination of a law enforcement officer rather than suspension for similar conduct, nor does the state demonstrate whether Gales was or was not held to a higher standard than a member of the general public engaging in the same conduct. Thus, the arbitrator's award was not in violation of public policy.

{¶ 26} Having concluded the trial court did not err in denying the state's motion to vacate the arbitration award, we overrule the state's first and second assignments of error.

Franklin County Ohio Court of Appeals Clerk of Courts- 2017 Apr 13 1:35 PM-16AP000457

# 4117.08 Matters subject to collective bargaining.

(A) All matters pertaining to wages, hours, or terms and other conditions of employment and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement are subject to collective bargaining between the public employer and the exclusive representative, except as otherwise specified in this section and division (E) of section 4117.03 of the Revised Code.

(B) The conduct and grading of civil service examinations, the rating of candidates, the establishment of eligible lists from the examinations, and the original appointments from the eligible lists are not appropriate subjects for collective bargaining.

(C) Unless a public employer agrees otherwise in a collective bargaining agreement, nothing in Chapter 4117. of the Revised Code impairs the right and responsibility of each public employer to:

(1) Determine matters of inherent managerial policy which include, but are not limited to areas of discretion or policy such as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, and organizational structure;

(2) Direct, supervise, evaluate, or hire employees;

(3) Maintain and improve the efficiency and effectiveness of governmental operations;

(4) Determine the overall methods, process, means, or personnel by which governmental operations are to be conducted;

(5) Suspend, discipline, demote, or discharge for just cause, or lay off, transfer, assign, schedule, promote, or retain employees;

(6) Determine the adequacy of the work force;

(7) Determine the overall mission of the employer as a unit of government;

(8) Effectively manage the work force;

(9) Take actions to carry out the mission of the public employer as a governmental unit.

The employer is not required to bargain on subjects reserved to the management and direction of the governmental unit except as affect wages, hours, terms and conditions of employment, and the continuation, modification, or deletion of an existing provision of a collective bargaining agreement. A public employee or exclusive representative may raise a legitimate complaint or file a grievance based on the collective bargaining agreement.

Effective Date: 04-01-1984; 09-29-2005; 2007 HB119 09-29-2007 .

**Note:** The amendment to this section by 129th General AssemblyFile No.10, SB 5, §1 was rejected by voters in the November, 2011 election.

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

## DEFENDANTS

**(b)** County of Residence of First Listed Plaintiff Franklin
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant Licking
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

614-376-9346

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Self 710 Glendower Ace
Col Ohio 43207

(466-8468)

Attorneys *(If Known)*
State of Ohio Attorney
30 E Broad St - Col 43215

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☒ 441 Voting | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☒ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
1983 Action
Brief description of cause:
Deprivation of Equal Rights - 1st Amendment

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 10,000,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*
JUDGE Ohio Supreme Court
DOCKET NUMBER 21-332

DATE 3/31/21

SIGNATURE OF ATTORNEY OF RECORD
Self /s/

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____