# IN THE UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF OHIO

FILED
RICHARD W. NAGEL
CLERK OF COURT
2023 MAR 22 AM 10: 48
U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

TIMOTHY GALES                                    CASE: 2: 21-328

710 Glendower Ave.                               Judge Watson

Columbus, Ohio, 43207                            Magistrate Judge Jolson

PLAINTIFF                                        Jury demand endorsed herein

                                                 Request Permanent Injunction

                                                 and, Equitable Relief be granted

THOMAS CHARLES et, al,

JOHN BORN – INDIVIDUAL

PAUL PRIDE – INDIVIDUAL

JAMES HOGAN – INDIVIDUAL

DAVID STANTON – PRIVATE PARTY

DOUGLAS BEHRINGER - PRIVATE PARTY

GWEN CALLENDER - PRIVATE PARTY

CATHERYN BROCKMAN – PARTY

JAKE PYLES – INDIVIDUAL

FRATERNAL ORDER OF POLICE, OHIO LABOR COUNSEL INC,

 Defendants

PLAINTIFF SECOND AMENDED CIVIL COMPLAINT PURSUANT TO FEDERAL CIVIL RULE 15

Second Amended Complaint

1. Now comes "Plaintiff", (Timothy Gales) for his several causes of action against the following defendants states as follows. Plaintiff is requesting the court to grant this SECOND REQUEST to amend pursuant to Federal Rule 15 of Civil Procedures. The request is to provide to the court with a much clearer understanding of the events which gave rise to aforementioned retaliatory defendants joint action lawsuit. And to add and include to the lawsuit. Ohio State Patrol trooper Jake Pyles, as he along with ODPS attorney James Hogan, John Born, Paul Pride, and, Thomas Charles, and, attorney Cullen Jackson were each instrumental in violating the plaintiff constitutional rights, while having full control over the non-state private parties, namely. Douglas Behringer, Cathy Brockman, David Stanton, and, Gwen Callender. While engaged into joint activity, while conspiring with one another to violate the plaintiff constitutional rights to free speech, and equal treatment, and deprivation of rights. under the constitution and, the laws of Ohio. The Defendants and non- state actors deprived the plaintiff of hid due process rights as of the result. The state of Ohio has a statutory procedure to follow under ORC 2711.09, 2711.10, 2711.13, when any party to an arbitration seeks to vacate an

arbitration award. The policy pursuant to a second arbitration under 2711.11 is strictly forbidden. Ohio Office of Collective Bargaining v. OCSEA Union. State officials designed their own policy and regulation on how to redo an arbitration award by which they lost and refused on two occasion by the Franklin County Courts to vacate the award. The state official namely, James Hogan, John Born, Paul Pride would not be swayed based on the court decision. The plaintiff has no state procedure that would be adequately to redress the deprivation See Macene v. MJW Inc, @951 F2d 700, (6th circuit 1991) or see Victory v. Walton, @721 F2d 1062, 1064 (6th Circuit. 1983). It is for this reason the plaintiff is able to demonstrate to the court how the Defendants and, Non-state actor deprived the plaintiff of his Fourteenth Amendment rights to equal treatment under the laws of the United States. The defendants pursuant to 1983 is liable to the plaintiff for relief sought. In addition, the plaintiff further states to the court, that state remedies under 2711.09 2711.10, 2711,11 2711, .13 are inadequate to redress the wrong the plaintiff have incurred. Redress can only occur from liability under U.S.C. 1983 action.

2. The Plaintiff is fully aware that, Joint activity is part of the four prong test support liability under U.S.C. 1983 who over saw the unlawful and staged arbitration with all the defendants named herein, were under the control of state officials solely to violate the plaintiff rights to free speech and to retaliate against the Plaintiff by joint activity to deprive the plaintiff of liberty, and property rights to include all earnings earned by the plaintiff which the defendants and, non- state actors have illegally seized

and maintained control over in violation of the plaintiff
constitutional Fourth Amendment Rights, without having a lawful
reason to seize.

3. The courts and applicable law have long held that if the
allegations of the amended claim relate back to the occurrence
stated in the original complaint, as it does here, the allegation will
not be barred by statute of limitation. Watkins & Sons Pet
Supplies v. Iams Co., 107 F. Supp.2d883(S.D. Ohio 1999): Boerkoel
v. Hayes Mfg. Corp. 76 F Supp. 771,776 (S.D. Mich. 1948):, Hall v.
Spencer County KY., 583 F3d 930,933,934, (6th Cir. 2009) The
court stated as long as the new cause of action is merely to
explain, expand or bolster" the plaintiff existing claims of actions
of the first amended complaint. The request to amend should be
allowed. The plaintiff seeks to further explain, expand and bolster
his original complaint to further show the continuing collusion by
state actors while they controlled non state actors to conspire in
joint activity to injure the plaintiff 33 years of employment,
through the disguise of a fraudulent arbitration, whereas, a
meeting amongst the actors to develop a scheme began to unfold
as earliest as February 15, 2015, and continued until the
continuing conspiracy achieved its results on January 25, 2019
through the joint activity of the defendants named herein.

4. No defendant named herein had any legal rights to undertake a
fake arbitration under the Federal Arbitration Act, or, the Ohio
Arbitration Statute ORC 2711.10, 2711.11, 2711.13 to include the
arbitrator, David Stanton who was controlled by state official and,

was bought and paid for in advance. Who while under the control of the state officials conspired with the state officials to violate the plaintiff rights as a private non- state actor. See attachment # 4 arbitration award.

# HISTORICAL BACKGROUND AND JURISDICTION

## INTRODUCTION

5. Plaintiff (Timothy Gales) believes that it's important to provide historical background of this case so the court may understand the magnitude of unlawfulness, and retaliation issues plaintiff have faced over the last decade with the defendants named herein, which were each in violation of the plaintiff First, Fourth, and, Fourteenth Amendment constitutional rights. As well as his private rights under the Internal Revenue Code USC 7203. H is contractual rights under Ohio Collective bargaining, as well Ohio constitution sections 6, and 11, "due process" and "freedom of speech". All violated by the state officials while in joint activity with non- state actors by developing a scheme to undo the plaintiff legally obtained arbitration award, by which state officials namely, John Born, Paul Pride, James Hogan, Jake Pyles, and Thomas P. Charles, and Cullen Jackson, pursuant the collective bargaining agreement 20.08. The defendants abused their state high level positions to retaliate against the plaintiff by having non-state actors join the scheme to harm and injure the plaintiff through a staged and fraudulent arbitration and, by forcing the plaintiff to attend so that the bought and paid for arbitrator,

David Stanton, could abuse his position as a neutral arbitrator for no other reason than to inflict serious injury, emotional and mental health stress on the plaintiff for refusing to accept their demands to retire and leave the agency and, to never apply for a position with the state DPS Ohio Investigative Unit ever again.

6. As a result of the violations, the defendants and non-state actors named herein began developing scheme on or before February 15, 2015 and continuing with known non state private actors, in joint activity together until January 25, 2019 to violate state prerogatives, specifically, ORC 4117, ORC 4112, ORC 2711, 10, 2711.13, Ohio Administrative Code Chapter 119, ORC 5502.14, ORC 5502.01, and ORC 5503.01 ORC 2305.06, ORC 1303.03, and, ORC 2705 ` retaliate against the plaintiff regardless of cost to the state of Ohio, each of the above laws are state prerogatives violated by state officials and non-state actors engaged in joint activity to violate U.S.C. 1983 while acting outside the scope of jurisdiction as director, union representatives, attorney, superintendent of the Ohio State Patrol, arbitrator.

7. It is for these reasons the plaintiff has suffered irreputable harm at hands of the defendants, and non- state actors. They each held and, abused their high level of positions within state government agencies, specifically, the department of public safety, the office of collective bargaining and the Fraternal Order of Police, along with private arbitrator/attorney.

8. The state Defendants, and non- state actors named herein each were hellbent as a group while the non- state actors were completely controlled by state officials to violate the rights of the

plaintiff, and as group jointly conspire and, retaliate against the Plaintiff at any cost to the state of Ohio, while having full control over the FOP, representatives and the arbitrator.

9. The state officials, namely, James Hogan, John Born, Paul Pride, Thomas Charles, Jake Pyles, and, Cullen Jackson maintained over non- state actors while they each disrespected the opinion of the state courts, Franklin County Common Pleas, and the Franklin County 10th District Court of Appeals. The decisions, defendants state officials, and non - state actors were in total disagreement, and refused to honor in violation of 2705.02 contempt of court.

10.    The defendants state officials unlawfully abused their positions by acting outside the scope of their jurisdictions as, Director of Public Safety, ORC 5502.01, the Superintendent of the Ohio State Highway Patrol, and, OSP trooper Jake Pyles 5503.01, and state attorneys for DPS and, State Employees Relation Board (SERB) that houses the Office of collective bargaining under ORC 4117 to engage into a conspiracy of joint activity with non- state actors namely, Douglas Behringer, Catheryn Brockman, Gwen Callender, and, David Stanton their actions against the plaintiff were willful and intentional. The defendants meant to cause severe injury and harm at any cost to the state and for state officials with whom they acted in concert with to violate the plaintiff rights.

11.    Thomas P. Charles, John Born, and Paul Pride, James Hogan, Cullen Jackson, and, trooper Jake Pyles used and abused their state official titles to join and control non- state actors, to

conspire in joint activity to injure the plaintiff, and to violate the plaintiff constitutional rights to free speech and to equal treatment under the constitution. Namely, Cathy Brockman, Gwen Callender, Douglas Behringer, and finally, David Stanton. Each who were, non- state actors cloaked with state authority while acting under color of state law and, each non state actor played a major role while being controlled by state officials to retaliate against the plaintiff for invoking his constitutional rights to free speech and due process. The plaintiff provides to the court a continuing pattern of corrupt and complicit unlawful behavior of past retaliatory acts with state defendants, (officials) who have been in the complaint with the help of non- state actors named herein, FOP, and, rogue arbitrator.

12. PLAINTIFF PROMOTED TO THE ASSISTANT AGENT IN CHARGE.

On November 10, 2010, plaintiff (Timothy Gales) was promoted to the position of Assistant Agent in charge of the Columbus District, for the Ohio Investigative unit, along with another black male enforcement agent after scoring number one (1) and number two (2) respectfully on an agency promotional exam.

13. The plaintiff promotion didn't set well with many members of the Ohio investigative unit, to include the former Agent in Charge, and the plaintiff direct supervisor, SuAnn Cook. The Plaintiff promotion took place under former Gov. Ted Strickland a democrat 2010. However, former director, Cathy Collins Taylor sent Suann cook to a different location (Athens, Ohio) because she refused to follow orders and deemed insubordinate while targeting the plaintiff and creating a hostile work place for the plaintiff

14. Then, November of 2010, an election for Governor took place. Ted Strickland lost to John Kasich, now starts the time line for all the Plaintiff problems with Thomas P. Charles, John Born, Paul Prided, and, other state officials and non- state actors named herein.

15. January 13, 2011, John Kasich appoints Thomas P. Charles Director of Public Safety. Thomas P. Charles, the appoints John Born as the Superintendent of the Ohio State Highway Patrol. At the time of Thomas P. Charles appointment, The Ohio Investigative Unit was under the direction of the director of the Ohio Department of Public Safety, and, not the Ohio State Highway Patrol.

16. February, 2011, Thomas Charles with less than a month on the job as director called a staff meeting for each Ohio Investigative Unit Agent in charge, throughout the state of Ohio. Hereinafter known as (OIU). This meeting was, a get to know you meeting with the agents in charge. could voice their concerns regarding present and past concerns they had with the past administration, to include promotions of agents.

17. Greg Croft, the plaintiff former direct supervisor (Agent in Charge) returned to the Columbus District office from 1970 West Broad Street, Columbus, Ohio, and, informed this plaintiff that a shakeup will soon be coming, and that, some assistant agents in charge will be getting demoted.

18. It should be noted: That at the time of the meeting the Agents in Charge had with Thomas P. Charles, their were no Black Americans in the group at the meeting. So, I asked AIC Croft. if the plaintiff was included as one of the assistant agent in charge getting demoted. Croft, replied, there will be demotion coming very soon. At this point, I ended conversation with Agent in Charge Greg Croft conversation.

19. The plaintiff believed that he became a target of Thomas P. Charles, to be removed as an assistant agent in charge based on complaints from those in attendance. The other black male who had been promoted with the plaintiff, on November 10, 2010, was the other target for Thomas Charles.

November 10, 2010 promotions to Assistant Agent in Charge.

(a).William Scott: Black Male scored number one on the promotion list. with (21 years of service) Forced out by Thomas Charles

(b). Timothy Gales: (Plaintiff) Black Male scored number two on the promotional list. With (25 years of service at time of promotion) terminated twice without just cause by Thomas Charles and, John Born,

(c) Adam Johnson: White Male scored number three on the promotional list with (five years of service) Still active as Agent in Charge

(d) Michelle Thourout: White female scored number four on the promotional list with (four years of service) still active as agent in char

20. June 2011, William Scott, was asked to retire after being followed in his issued vehicle by subordinates who had observed him at dinner with an unknown female. The information was turned over to DPS, Director Thomas P. Charles, the, former Ohio Inspector General, who then notified his replacement of the allegations. William Scott retired from the agency based on pressure placed on him by Thomas P. Charles, the, former (Ohio Inspector General),. Now, the agency has one promoted black male gone with one to go. The plaintiff.

21.June 2011, Thomas P. Charles returns Suann Cook, back to Columbus

District (OIU) office knowing full well a firestorm between the plaintiff and her would occur. Suann Cook, was given the order to evaluate the plaintiff performance as a newly promoted assistant agent in charge, herein after knowns as (AAIC). This supervisor hated the plaintiff so bad she would never speak or acknowledge the plaintiff newly sworn position (AAIC). she had one goal, that was to have the plaintiff demoted by Director Thomas Charles.

22. December, 2011, Suann Cook, (AIC) prepared an evaluation for the plaintiff. The evaluation identified that the plaintiff failed in all categories of the evaluation. The plaintiff was given until February 6, 2012 to improve. In addition, in December of 2011, Thomas P. Charles came to the Alum Creek office where the plaintiff was housed as the (AAIC). The plaintiff stepped out from his office and was met by Thomas P. Charles. Who stated to the plaintiff.... Thanks for stepping out of your office so that i could see you. After a very brief conversation Thomas Charles departed the plaintiff.

23. On February 6, 2012, the plaintiff was called back to the Columbus District Office where he was instructed to report. Upon arrival, the Plaintiff was met by SuAnn Cook, (AIC), DPS, Mark Bentley (Deputy Director) and Eric Wolf DPS, (Deputy Director) Suann Cook, requested that the plaintiff return his Assistant Agent in Charge Badge, she further provided paperwork from Thomas P. Charles, notifying the plaintiff that he had been demoted.

24. February 2012 plaintiff filed an EEOC charge against Thomas Charles, SuAnn Cook, and Mark Bentley in 2012 for conspiring with Thomas Charles to unlawfully demote the plaintiff from his assistant agent in charge position. Thomas Charles racist and discriminatory

behavior was reported to the Governor office by the plaintiff. The attack and retaliation by Thomas P. Charles and his handpicked Patrol superintendent John Born would be non stop until Thomas P. Charles got the results he sought. Which either to unlawfully convict the plaintiff of a crime and/or unlawfully seize the employment of the plaintiff through falsified means to include false criminal charges.

25. August 2012, the Ohio Department of Public Safety administered a promotional exams for agents. The plaintiff was the only minority agent to past the test, and as a result of passing the exam a second time. the plaintiff earned the right to attend the next step in the process called the (ASSESSMENT CENTER). To the disappointment of Thomas P. Charles who was adamant the plaintiff would not return to supervision with DPS.

26. August 2012, Thomas Charles called all agents around the state to a staff meeting at DPS. Thomas Charles talked about his time with Inspector General Office and how complaints came to him all the time for investigations. Thomas Charles then told agents not to file any complaints outside the agency. Thomas Charles advised agents that if a complaint was filed, he would find out and it may not be good for the agent who had filed the complaint. Thomas Charles, left the agents feeling intimidated at the conclusion of the staff meeting which was to bring attention to all agents about complaints be filed anonymously against his department.

27. September 7, 2012, the plaintiff attended a promotional assessment center at the Ohio Department of Public Safety. The Assessment Center was put on by the Ohio Chief of Police Association. Agents who were attending the Assessment were told by a member of

the Ohio police of Chief association that, he had heard the Assessment Center put on by the agency in 2010, a few agents had fallen through the cracks. He assured agents in attendance that would not occur this time around.

28. At the conclusion of the assessment center, the plaintiff (Timothy Gales) was asked to stay back by Deputy Director, Richard Cologie. The Plaintiff was advised that he was ordered to return all of his agency issued equipment to include car, badge, and gun, per Director Thomas Charles placing the plaintiff on administrative leave. Richard Cologie transported the plaintiff home, without informing the plaintiff the nature of the investigation.

29. October 2012, Thomas Charles called a meeting at the state highway patrol academy with all agents from around the state. At the meeting agents reported to this plaintiff the narrative of Thomas Charles. Thomas Charles pointed out to the agents that the plaintiff had been placed on administrative leave and was under a criminal investigation. Thomas Charles, pointed at the Columbus District where the plaintiff was employed. Was the district office causing the most problems with complaints WITH EEOC.

30. Thomas Charles assured the agents at the meeting that the plaintiff (Timothy Gales) wouldn't survive the investigation conducted by his good buddies at the Ohio State Patrol. And will never be an enforcement agent ever again. This was stated by Thomas Charles and Paul Pride who went on to say that the plaintiff was a cancer to the agency and that the patrol knew how to get rid of cancer employees.

31. Thomas Charles approached Mike Smith, an agent assigned to the Columbus District. Thomas Charles asked Agent Smith: How does it feel

now that I have gotten rid of your problem at the district office. (Meaning the plaintiff). Mike Smith, responded by saying well! you need to do more of it.

32. February 3, 2013, Thomas P. Charles through the agency human resource department required the plaintiff to report to the DPS Human Resource Department. Upon arrival, the plaintiff was met by a male associate. The plaintiff was advised that he had been indicted by the Franklin County Grand Jury as a result of an investigation spearheaded OSP superintendent John Born. However, the associate refused to tell the plaintiff the nature of the indictment. He simply stated we are taking you off paid administrative leave and placing you on unpaid leave.

33. March, 20, 2013, Thomas Charles, Director of Public Safety, terminated the Plaintiff from his employment with the Ohio Investigative Unit. based on a trumped up felony 5 theft indictment presented by a rogue and dishonest trooper, based on an alleged unlawful vehicle transfer to a private associate, and the transfer was not on state property. It was on private property. The investigation conducted by a trooper at the Ohio State Patrol, who had been given her marching orders by John Born to come up with any criminal violation against the plaintiff to support a termination for Thomas P. Charles.

34. April 2013, the plaintiff wrote a letter to then Governor John Kasich. In the letter, the plaintiff outlined how Thomas P. Charles came in as director and immediately began attacking black employees in the investigative unit, either firing them, or forcing the black employees to retire or resign. The plaintiff also complained that Thomas Charles had

removed blacks from more desirable positions in (OIU) and placed the black agents and black supervisors in less desirable positions. The plaintiff accused Thomas Charles of blatant racism toward black employees. Early June 2014, Thomas P. Charles was asked to resign as director of public safety. A former OSP Lt. Colonel, who worked directly with Thomas Charles, stated to others, that He would never mistreat anyone and lose his job like Thomas Charles just had done to an agent. I believe, that the Lt.

35. During the time period of April 2013 until February 2014 the plaintiff was fighting criminal charges in both Common Pleas Court and Municipal Court as a result of John Born and Thomas Charles, allowing a OSP trooper to misrepresent facts in order to bring the criminal charges against the plaintiff. Then June 2014, Thomas P. Charles was asked to resign his position as Director of Ohio Department of Public Safety.

36. It was well known that the plaintiff was behind the letter to Gov. Kasich whereas the plaintiff was told that Thomas Charles would retaliate for filing the complaint which required him to resign. "THE PLAINTIFF BECAME A WANTED MAN BY THE DEFENDANTS Charles and, Born." for fighting against racism in the agency which cost Thomas Charles his position as director for DPS.

37. However, Thomas Charles recommended to Gov. Kasich that John Born should replace him as Director of Public Safety. The Governor then appoints John Born Director June 2014. While Thomas Charles continued to be seen at DPS and the Ohio State Highway Patrol for next 4 years, and, in the company of John Born and Paul Pride.

38. February 6, 2014, the plaintiff (Timothy Gales) was brought to trial in the Franklin County Common Pleas Court, on charges of theft of the

fifth degree. The plaintiff reached out to the fraternal order of police for help with legal representation but was denied by Paul Cox and, Douglas Behringer each who were hoping for a conviction to forgo an arbitration the plaintiff was found not guilty within 45 minutes of jury deliberations and released from the court jurisdiction.

39. However, John Born, Paul Pride, and Thomas Charles, who was no longer director, made the decision not to allow the trooper who conducted the unlawful investigation, to honor her subpoena to testify in the case she unlawfully investigated. The defendants identified above knew that the trooper had provide false information to grand jury and could now get exposed for perjury and, causing embarrassment to the department of public safety, and the state highway patrol.

40. On February 8, 2014, the jury after hearing 3 days of testimony returned a not guilty of for plaintiff. This was to the dismay of all defendants named herein, they truly were expecting a conviction on trumped up highway patrol false charges. The plaintiff was released from the court and the indictment.

41. On or about March 13, 2014, the plaintiff reported to the Franklin County Municipal Court, to fight additional charges the Ohio State Patrol falsely filed charges against the Plaintiff, alleging unauthorized sale of a motor vehicle. The motor vehicle charge was dismissed to the dismay of the defendants named above.

42. April 2014 I was contacted by the Fraternal Order of Police representative Douglas Behringer (Attorney). Douglas Behringer requested to meet with the plaintiff at First Watch, a breakfast restaurant on High Street. At this point "THE PLAINTIFF" had never met

Douglas Behringer.

43.The plaintiff, upon arrival to First Watch Restaurant, met with Representative Behringer seated at a table. The first remarks out of his mouth, were, "so you are the infamous "Tim Gales", I heard so much about. Douglas Behringer, further stated he was told I called Thomas Charles, the director of public safety a racist. The plaintiff confirmed that he did indeed call Thomas Charles a racist and stands by his statement.

44. Douglas Behringer response to the plaintiff confirmation of the statement was "that", he heard the plaintiff was a black racist. D. Behringer, then went to say, that he doesn't like a black racist. As a result of the insulting remarks made by Douglas Behringer, the "Plaintiff", became confused as to why those unprovoked remarks would come from an attorney, and, union representative. Then to present false and unfounded comments to a black law enforcement member in such a disrespectful tone and manner was unjustified.

45. During the meeting with Douglas Behringer, the Plaintiff was of the belief that meeting representative, that he was there to assist with the plaintiff termination grievance. Not to brow beat the plaintiff for his protected comments about Thomas P. Charles. However, Douglas Behringer let it be known, he was not satisfied that the "Plaintiff", had called the director, Thomas Charles a racist. He then said be careful of your comments of others, you may not enjoy the protection you seek from the union.

47. August 2014, the plaintiff began preparing for the September 10, 2014 arbitration. The preparation was to meet with FOP representative Douglas Behringer at 222 Town Street, and Paul Cox to lay out

strategies for the Plaintiff arbitration. Douglas Behringer continued giving the plaintiff hard stares and, reminded the plaintiff that he was wrong to called Charles a racist Behringer then stated he had read the letter I sent to Gov. Kasich

47. On September 10, 2014, the Plaintiff along with Fraternal Order of Police chief legal counsel, Paul Cox attended the arbitration with Arbitrator E. William Lewis presiding over the meeting. The case was presented by the state of Ohio Office of Collective Bargaining located at 1602 West Broad Street Columbus Ohio. Fraternal order of police, Ohio Labor Counsel Inc, v. Ohio Office of Collective Bargaining. James Hogan (Attorney) sitting in for the office of collective bargaining as an observer.

48. On November 24, 2014, Arbitrator E. William Lewis issued his award to the parties, to include the fraternal order of police and the state of Ohio Office of Collective Bargaining. The award issued sustained the Plaintiff Grievance and by doing so, reduced the Plaintiff termination to a 30 day suspension. The agency director John Born was ordered to return the Plaintiff back to his normal duties as an enforcement agent. The award did not sit well with John Born, Paul Pride. They would not let their Mentor Thomas Charles eat his words of not allowing the Plaintiff to return back to his employment after telling all enforcement agents the plaintiff would never return.

49. On February 15, 2015, John Born and Paul Pride, through the office of collective bargaining, requested the that the plaintiff arbitration award be vacated. It should be noted that at no time in the history of the Ohio State Patrol have any of it superintendents and or, director of public safety, have ever appealed an arbitration award of a grievant.

However, the dislike and unlawful behavior of the defendants Thomas Charles, John Born, and, Paul Pride would not allow an arbitrator to reverse the results they sought for the plaintiff. It is that the plaintiff had personally attacked Thomas P. Charles in a letter to the gov. and had filed EEOC complaints AND LAWSUITS against him, that retaliation was imminent for the plaintiff.

50. On May 19, 2016, Honorable Common Pleas Judge, Kimberly Cocroft returned her decision to uphold the award in its entirety. judge Cocroft in her decision ordered the defendant (State of Ohio) to reinstate the plaintiff and pay to him interest on all money due to him under orc 1303.03

51. On or about June 15, 2015 at the direction of John Born and Paul Pride, and through the office of collective bargaining, the state officials filed an appeal with the tenth district court of appeals. to simply further harass, intimidate, and retaliate against the plaintiff and to cause further financial harm.

 SPECIAL NOTE:    It should be noted that during the period. The Plaintiff filed a federal lawsuit in the Federal Court Southern District, against Charles, Born, and, Pride. In addition, the same year, the plaintiff filed a lawsuit against Charles, Pride and Born in the Ohio Court of Claims. The lawsuit filed by the plaintiff against the three named above upset them and the defendants three set out to retaliate because they were in high position to do so at the government agency (Ohio Department of Public Safety) and (Ohio State Highway Patrol).

52. On April 14, 2017, the Ohio Court of Appeals 10th District upheld Judge Cocroft May 19, 2016 decision to the dismay of the defendants named herein, to Include the FOP. Douglas Behringer, advised the

plaintiff that he should consider retirement because the defendants named herein at the plaintiff place of employment would prepare to fire the plaintiff a second time and that he may not be able to get the plaintiff job back if that occurs.

53. On May 15, 2017 the plaintiff was returned to his position as an enforcement agent. The Plaintiff was contacted by Sgt. Johnson who requested that the plaintiff submit to a polygraph and a background check upon his return. The plaintiff refused the request and was told by Sgt. Johnson that a determination will have to be made human resources department based on the plaintiff refusal to submit to the background check.

54. On or about May 30, 2017, the plaintiff while at the Ohio State Patrol Academy receiving updates for law enforcement officers, was approached by internal affairs Lt. Bush and another unidentified agency employee. Lt. Bush began asking the plaintiff several question in regards to his time away from the agency, to include employment. The plaintiff advised Lt. Bush, that, any questioning regarding the plaintiff time away from the agency wouldn't be provided a response, because, ODPS had all information they were looking for and needed, as it related to the Plaintiff outside employment.

55. The Plaintiff explained, this information provided, includes the agency placing the plaintiff former employer (Allied Universal under a false investigation, during the month of February 2017, for which ODPS director (John Born) demanded the information be returned to him by March of 2017, two months prior to the return back to work by the plaintiff. Upon receiving the requested information from Allied Universal. The agency audit identified my name, amount of pay, and

hours the plaintiff had worked and provided a spread sheet that outlined the plaintiff activity at Allied Universal.

56.     On or about June 24, 2017, Joe Extstein, Human Resource Director, came to the plaintiff office with other personnel to include Katie Robson, the plaintiff former human resource officer employed with Allied Security. The purpose of the visit was for Ms. Robeson to confirm the identity of the plaintiff who had worked for Allied Universal during the time identified on the spread sheet supplied by Allied Universal 2016-2017 for the plaintiff. This act of the actors, was simply pretextual to began an unlawful harassment and retaliation investigation against the plaintiff for his constitutional protected rights to free speech and equal treatment.

57. on or about August 17, 2017, the plaintiff was an assignment at the Ohio State Fairgrounds and was standing on the steps of the Ohio State Patrol Academy, When Thomas P. Charles approached the Plaintiff appearing upset. Thomas Charles, made the following statement to the plaintiff "Quote", I SEE YOU DONE MADE IT BACK TO WORK The Plaintiff responded back by saying with a smile "YES I HAVE", Thomas Charles final reply to the Plaintiff, " WELL LETS SEE HOW LONG THAT GOING TO LAST THIS TIME", Enquote",. +Thomas Charles, then entered into the Academy, the plaintiff observed him walk into the cafeteria and into a conference room inside the cafeteria and met with John Born, Paul Pride, Richard Frambro and Mike Black. The door was then shut to the conference room.

58. On January 18, 2018, the plaintiff received notice from the Ohio Highway Patrol which is under the supervision of Paul Pride, the man the plaintiff sued in state and federal court. The, letter identified the

plaintiff as a subject of the investigation for not complying with an arbitrator award, for which the Ohio State Highway patrol have no authority investigate, modify, or enforce.

59. On or about February 22, 2018, the Plaintiff was called in as a subject for the impending investigation and was requested to turn over his original 2016 and 2017 1040 tax returns to the Ohio State Patrol Lt. Miller Investigator who had no authority under the federal tax code to request from the plaintiff. The plaintiff refused in a email to relinquish tax documents to the Ohio State Patrol. (See exhibit A-2- Jan 2018 email February 2018 email).

60. On or about March 7, 2018, the plaintiff was contacted by Harold Kolsky to go meet with OSP Captain Gary Allen. Upon arrival at Captain Gary Allen Office. The Plaintiff was instructed to sit down. Gary Allen told the Plaintiff that prior to the meeting with him, he was instructed to go to Thomas P. Charles house, located in Buckeye Lake, Ohio. Gary Allen stated his purpose was to let Thomas P. Charles know, that that the plaintiff had been an exemplary employee upon his return back to duty. However, Gary Allen that Thomas Charles didn't care about that. So let me read to the requested discipline being proposed. The act above clearly demonstrates Thomas P. Charles involvement to retaliate against the Plaintiff for his protected activity, which continued up to the termination of the plaintiff.

61.    On or about March 13, 2018, the Plaintiff was required to attend a pre- disciplinary hearing with patrol. The contract allows the affected employee to choose who he/she want to represent them at the hearing. However, when the Plaintiff reported to hearing Douglas Behringer was there without being invited by the plaintiff. The Plaintiff

asked Douglas Behringer who called him to attend and why did he show up uninvited. Douglas Behringer response to the plaintiff was that, the state officials OSP had contacted him out of fear the plaintiff was bringing a private attorney, that the state officials didn't want that to occur, namely James Hogan, John Born, and Paul Pride . Mr. Behringer further told this Plaintiff that it was not his idea to attend, because, had the decision been left up to him, he wouldn't have been there to represent the Plaintiff. At the conclusion Pre- D hearing. D. Behringer departed by saying with a smile. They are getting ready to fire your "ass Gales". You should have taken the retirement offer when we offered it to you. At the pre- disciplinary hearing Douglas Behringer failed to properly represent the plaintiff whereas, he clearly on this date filed an emergency injunction with the Franklin County Court to enjoin the state from the wrongful action. However, Douglas Behringer intension were to conspire in joint activity with state officials which is demonstrated here to violate the rights of the plaintiff while he engaged into a meeting with state official with whom John Born, and Paul Pride oversee on a daily basis to carry out the unlawful missions of harassment and retaliation because they didn't agree with the arbitration award issued the plaintiff.

62. On March 13, 2018, the Plaintiff received from non- other than Paul Pride , the superintendent of the Ohio State Highway Patrol for whom the Plaintiff had filed lawsuits in Federal and State Court as well as an EEOC complaint. In the letter, Paul Pride stated he was recommending the plaintiff for termination, violating several policies of the Ohio State Highway Patrol. The recommendation was made to his good friend, director, and former superintendent John Born. At this point the Plaintiff will be unable to escape the wrath of unlawful retaliation and

harassment he will receive. (See exhibit A-3- letter dated March 2018 from P. Pride). Paul Pride by Ohio laws doesn't possess the powers to request the removal of an enforcement agent as defined under 5502.14, nor can he recommend the dismissal as outlined in 5502.14 that makes the position of an enforcement agent clear as to maintaining the position unless that agent has been convicted of a felony or serious misdemeanor. The section code 5502.14 is very clear and not misleading as to its meaning. An enforcement agent must be convicted of a felony to lose his position. Paul Pride violated 5502.14 and 5503.01 whereas he had no standing by legal law to request the plaintiff removal. The plaintiff due process rights were violated by Pride.

63. On March 20, 2018, the Plaintiff received from non- other than Director John Born, with whom the Plaintiff sued personally under color of law, in state and federal court, the letter from Born stated that the Plaintiff had been terminated as an enforcement agent for not providing income as required by an arbitration award.    contacted Douglas Behringer, to advise him of the outcome, and the plaintiff need to file a grievance within 20 days. Upon arrival at the FOP, the Plaintiff was met by Douglas Behringer Para Legal Renee Englebach. She attempted to give the Plaintiff a paper grievance form that at the time of dispute had been replaced by online grievance filing "only", the paper copy given was obsolete. When the Plaintiff requested that the grievance be filed by the fop as a result of the Plaintiff access being taken away by the state of Ohio officials, I was only able to file by using another member account without the knowledge of FOP. They refused to help.

64. Douglas Behringer refused to file the grievance. Therefore, the

Plaintiff reached out to an active agent, namely, Curtis Hundley, who allowed the Plaintiff to submit the timely grievance for which Douglas Behringer and the FOP was trying to prevent from occurring.

65. June 12, 2018, the Plaintiff received a call from Curtis Hundley, who had just been contacted by FOP representative Douglas Behringer an attorney with the fraternal order of police. Agent Hundley, advised the Plaintiff that Douglas Behringer told him that John Born and the state had allowed him to select the arbitrator for the Plaintiff case. Douglas Behringer, further elaborated that, he had selected his good buddy and a friend of the fop. and if the Plaintiff said anything about him now negatively or the union, his arbitrator buddy will not take kindly to it and will take care of the Plaintiff for bad mouthing him and the union.

66. On or about August 25, 2018, the plaintiff met with Douglas Behringer, at the fop Columbus, Ohio office. The Plaintiff questioned Douglas Behringer in reference to the statement "MY GOOD BUDDY WILL TAKE CARE OF THE PLAINTIFF should he say something negative about him or the union. Douglas Behringer, became very sincere and sure to his response, allegedly to Curtis Hundley. Behringer stated that the Plaintiff had made unsettled comments, against him in the Plaintiff administrative investigation with the Ohio State Patrol, and if that should that occur again, he now has his good friend the arbitrator who won't take kindly to the Plaintiff disrespecting his friend. Behringer stated, Trust me "Gales", this arbitrator isn't the one to play with.

67. While the Plaintiff was at this preparation hearing with fop representative Behringer, the Plaintiff requested Behringer to appoint the original arbitrator E. William Lewis and to not appoint his buddy David Stanton, Behringer was advised that to appoint Lewis, because it

was he who issued the November 24, 2014 award. However, Douglas Behringer claim that E. William Lewis no longer does arbitrations to include question of corrections to awards he made. Douglas Behringer stated that the issues are new and not related to the old award. The plaintiff and Curtis Hundley disagreed with him then the Plaintiff told Behringer the arbitration is a set up and he should be removed because it's obvious he can't be fair to the Plaintiff. On the day for preparation, the Plaintiff, Douglas Behringer, or the FOP meeting accomplished nothing. The wheels are now in motion for the for to conspire with the State (Ohio) and its actors, and, defendants named herein to harm, retaliate, discriminate, and violate the Plaintiff 1st and 14th, Fourth, Amendment rights, as well as, Ohio Article 1 section 16 Due Process, and, Ohio Article 1 section 11 Freedom of speech, ORC 2711.01. 2711.16, 5502. 14, 2913.02, (FRAUD) Federal Arbitration Act (FAA)

68. September 10, 2018 the defendants named herein conducted an unlawful and retaliatory "FAKE", ARBITRATION which clearly was a SHAM. However, in an attempt to mask their wrong doings, the defendants used the identical date of arbitration as the 2014 arbitration date to confuse readers of the award. Clearly this unlawful act was committed so that the defendants state officials named herein could get a second bite at the pie with a totally different result. The arbitration was a "SHAM", and fraudulent and carried out by all actors named herein.

## CLAIMS ASSERTED BY THE PLAINTIFF

69. Now comes Plaintiff Timothy Gales and for his several causes of action against the defendants states as follows, First Amendment

violations, Fourth Amendment violations, 14th Amendment violations U.S.C. 42 1983 Violations Retaliation, Due Process, Equal Treatment and Protection

JURISDICTION

70. This is an action for violations of Plaintiff Timothy Gales First Amendment Rights to Freedom of Speech in that the Plaintiff suffered an adverse employment action after engaging in constitutionally protected speech and for state claims for racial based harassment and retaliation and hostile work environment for having engaged in activity protected ACTIVITIES under the state anti- discrimination laws under ORC 4122

71. At all times relevant hereto Plaintiff, Timothy Gales resided at the above address, and in the jurisdiction of this U.S. District Court, Ohio, and was at all times relevant a state of Ohio employee from August 19, 1985 until his third unlawful termination on, March 20, 2018 by John Born with full help of the Ohio Fraternal Order of Police Ohio Labor counsel Inc., and the Office of Collective Bargaining. The plaintiff was at all times a highly recognized undercover agent who at all times maintain honesty, integrity, and the highest level of ethics. The plaintiff at the time during his employment had no discipline on his record. However, it should be noted that each time a former trooper became director. The plaintiff was singled out and fired for no true or apparent reasons. The union was fully aware of the behavior of the Highway Patrol and was adamant in assisting state official in joint activity to violate the plaintiff constitutional 1st, 4th, and 14th Amendment rights. However, the FOP being complicit in the acts with state officials

refused to enjoin the state from the wrongful actions for which the

FOP conspired with state official in joint activity to injure the plaintiff employment and to cause serious emotional trauma, by violating ORC 2711.10 2711.11.2711.13, and, orc 4117 (SERB) The fake and fraudulent arbitration administered by joint activity between, the FOP, State officials, and a rogue arbitrator violated the plaintiff bargaining rights under 4117 and the 2012-2015 contract agreement where article 20.08 is clear: Decision of the arbitrator between the Office of Collective Bargaining and the Fraternal Order of Police, Ohio Labor Counsel, states the following, under 20.08 section (4) The arbitrator shall render his/her decision no later than 45 days after the conclusion of the hearing unless the parties agree otherwise. The arbitrator shall submit an account for the fees and expenses of arbitration. The arbitrator decision shall be submitted in writing and shall set forth the findings and conclusions with respect to the issue submitted to arbitration. The section further states that the arbitrator decision shall be binding upon the employer, FOP, Ohio Labor Counsel and the employees involved provided such decision conforms with Law of Ohio and, do not exceed the jurisdiction or authority of the arbitrator as set forth in the article. Parties may on case by case basis request an arbitrator retain jurisdiction of the specific case. In that the parties are using a permanent arbitrator, questions of clarification of awards will normally be submitted to that arbitrator.

72. Defendant Thomas P. Charles was at all times relevant an appointed state of Ohio employee, residing in the jurisdiction of this U.S. Federal Southern District Court Ohio. He worked under former Governor John Kasich, and Ted Strickland, holding high ranking positions, as Ohio Inspector General, and, Director of Ohio Department of Public Safety, and other appointed to other state positions namely, the Ohio State

Fair Commission until 2018. Thomas Charles. Thomas Charles maintained a high level of influence over John Born, and Paul pride whom both owed their loyalty too, and were adamant that they would carry out his wishes to harm and injure the plaintiff employment.

73. Defendant John Born was at all time relevant a state of Ohio employee, with the Ohio State Patrol from 1990 until his appointment by Thomas Charles to the position of Superintendent of the Ohio State Patrol, 2011. Also, at the request of Thomas Charles, John Kasich appointed John Born director of Public Safety after the departure of Thomas Charles. John Born maintained the position of Director until February 2019.

74. Defendant Paul Pride was at all times relevant a state of Ohio employee, with the Ohio Highway Patrol from 1989 until his appointment by Director John Born, to the position of Superintendent of the Ohio State Patrol June 2014. P. Pride maintained the position of superintendent until his retirement March 2019. And a relevant factor in collaborating with other state officials and, non- state actors to assist in carrying out the pre- planned scheme to undo the arbitration award issued November 24, 2014. The very same award that two courts in franklin County refused to vacate.

75. Defendant James Hogan was at all times relevant a state of Ohio employee, appointed by the Ohio Attorney General office as a labor attorney James Hogan, transferred to the Office of Collective Bargaining and finally was appointed as an attorney by John Born, Director for the Ohio Department of Public Safety where he continues to be employed as of August 2022.

76. Defendant Ohio Fraternal Order of Police, Ohio Labor Counsel LLC

located at 222 Town Street, Columbus, Ohio, Franklin County, is a duly licensed and recognized labor organization for statewide law enforcement union members. And, organized under the laws of the state of Ohio to act as sole representative for its members.

77. Defendant Department of Administrative Services, Office of Collective Bargaining located in Franklin County, Ohio and is a duly state of Ohio agency organized under Ohio Revised Code 4117, and for the sake of contract negotiations and enforcement. (OCB), Is known as the employer and sole statutory representative of all state agencies bargaining units, to include wages, working conditions discipline, and enforcement of and signing state employee's bargaining agreements to include the Ohio Fraternal Order of Police, Ohio Labor Counsel Inc.

78. Defendant Douglas Behringer was at all times relevant an attorney employed with the Ohio Fraternal Order of Police, Ohio Labor Counsel, Inc located in Columbus, Ohio, Franklin County, and employed as a union representative for bargaining unit members.

79. Defendant Cathy Brockman was at all times relevant, Director of the Ohio Fraternal Order of Police, Ohio Labor Counsel Inc, located 222 Town Street, Columbus, Franklin County, Ohio. Cathy Brockman overseen the functions of the Fraternal Order of Police and all of it employees.

80. Defendant Gwen Callender was at all times relevant Chief Legal Counsel for the Ohio Fraternal Order of Police. Ohio Labor Counsel Inc located 222 Town Street, Columbus, Franklin County, Ohio. She overseen, attorneys and make arbitration assignments and decisions for the fraternal order of police. She is the defendant Douglas Behringer direct supervisor.

81. Defendant David W. Stanton was relevant at all times self employed licensed attorney in the field of arbitrations and provided arbitration services to the defendant state of Ohio, State Patrol, Ohio Department of Public Safety, and the Ohio Office of Collective Bargaining, as well as, to the Fraternal Order of Police, Ohio Labor Counsel, located in Columbus, Franklin County, Ohio. David Stanton resides outside of the jurisdiction of the Southern District of Ohio and he maintains an address in both Cincinatti Oh, and Kentucky. However, at all times relevant the discriminatory and constitution violations occurred while he unlawfully reviewed an arbitration award outside of his jurisdiction, the unlawful act was committed in Columbus Ohio.

82. Defendant Cullen Jackson was relevant at all times an employee (Attorney) for the Office of Collective Bargaining, located at 1602 West Broad Street, Columbus, Franklin County, Ohio. Cullen Jackson duties were to handles disputes for state agencies when dispute occur through the filing of employee's grievance.

83. Defendant Jake Pyles was relevant at all times a State of Ohio employee in the position of trooper for the Ohio State Highway Patrol, located at 1970 West Broad street Columbus Ohio 43223. She provides to state agencies overviews of the collective bargaining agreements and the enforcement of same. She makes decisions to appeal arbitration award that were not favorable to the state of Ohio.

84. Plaintiff bring these claims pursuant to 28 U.S C. & 1331, 28 U.S.C. 1343, 42 U.S.C. & 1983 for the First, Fourth and Fourteenth Amendment of the United States Constitution.

84. Venue is proper for all Timothy Gales claims pursuant to 28 U.S.C. & 1391 (b) as all of the parties resides in Southern District Court of Ohio,

with the exception of David Stanton, and all of the events giving rise to Timothy Gales claims occurred in this judicial district.

85. Plaintiff Timothy Gales raises a Federal Constitutional question over which this court has original jurisdiction. Plaintiff Gales' claims presents federal questions over which this court has jurisdiction pursuant to, 28 U.S.C.1331, 28 U.S.C. 1343, 42 U.S.C. 1983.

86. The defendants named herein were at all times acting under color of state law within the meaning of the Civil Rights Act of 1871 as Amended 42 U.S.C. 1983 ("1983").

87. Pursuant to the First Amendment a public employer cannot condition the terms and conditions of public employment on the basis that infringes upon the employee's constitutional protected interest in the freedom of expression of speech.

88. Defendants at all times relevant hereto, were acting in concert with one another in relation to Galess employment matters.

89. This court has jurisdiction by reason 42 U.S.C. &&2000, et, (Titled VII"); and pursuant to the federal Civil Rights Act of 1871, as amended 42 U.S.C. 1983 ("1983").

This court has pendent, supplemental and/or ancillatory jurisdiction over Gales Ohio statutory claims by virtue of 28 U.S.C. &1367.


COUNT 1 (Constitutional Violations) U.SC. 1983 Actions)

90. The U.S.C. 1983 Act was derived from the Civil Rights Act of 1871, 42, U.S.C. 1983. (The Act) imposes civil liability including equitable

remedies on one who, under color of any state statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights privileges, or immunities secured by the constitution shall be liable to for redress to the injured person. The U.S.C. Includes act committed by private citizens who conspire and was in direct control of state officials engaged into joint activity. In., addition, the state officials named herein further put together a group of non- state officials to conspire with them until the results Thomas P. Charles sought against the plaintiff was carried out to its fullest. No actor named herein ever left the conspiracy or notified anyone that they no longer wanted to be a part of the conspiracy. Each were willing participants.

91. While the courts have stated. Generally not applicable to private parties to act under the color of law… does not require that accused be an officer of the state: the court stated that it is enough that he is a willing participant in joint activity with the state or its agents (see) Dennis v. Sparks, 449,U.S. 24, 29, (1980).The court pointed out that actions taken by a private individual may be under color of state law" only where there is "significant" state involvement in the action Howerton v. Gambica, 708 F2d 380, 382, (9th Cir. 1983).

92. The U.S. 9th district court recognizes four different criteria or test to evaluate whether a private actor has engaged in significant 0state action: the first test determined was the function a public function 2. Was their joint activity. 3. Was there compulsion or coercion, and, 4. Was there a governmental nexus. Kirtley v. Rainey, 326, F 3d 1088, 1092, see also Sutton 192, F3d at 835-36 Johnson v. Knowles 113, F3d

1114, 118, (9th Cir. 1996).

93, Section 1983 is an important means of redress for constitutional violations committed not only by state government officials, but also non -state actors such as private individuals and federal officials. Indeed the act is known as the KLU KLUX KLAN ACT based on constitutional violations committed by private organizations. (see) Monroe v. Pape, 365, U.S. 167,174-76,(1961) The plaintiff instant case falls into this category whereby state official used non state actors to assist in injuring the plaintiff by developing a ruse (Scheme to violate the plaint due process rights under the Fourteenth Amendment to undo an arbitration award state officials didn't not agree with. As a result state officials and non – state actors began a continuing conspiracy dating back to February 2, 2017 when state official became aware that they wouldn't be successful in getting the 10th district court common pleas court to vacate the arbitration award that they each did not agree with and as a result threw a legal temper tandrum then developed a scheme to violate the plaintiff constitutional rights to free speech, and, equal treatment under the constitution.

RETALIATION UNDER 1983 IS ACTIONABLE

94. The state officials named herein as defendants were highly upset that the plaintiff September 2014 arbitration failed to yield the results that Thomas P. Charles, John Born sought as a remedy to the unlawful termination of the plaintiff on March 18, 2013.Thomas P. Charles was adamant that after the Highway patrol unlawful investigation. As a result of the plaintiff favorable arbitration award the defendants, state officials began their retaliation to undo the favorable award issued on behalf the plaintiff. The Plaintiff First Amendment, 4TH Amendment, and

14th Amendment is attached to the plaintiff 1983 actions which identify his four claims.

95. At the request of Defendant John Born, and, Paul Pride, the Ohio Attorney General filed an application on February 15, 2015 to undo the arbitration award. The attorney General explained to FOP chief of staff Paul Cox that the department doesn't want the plaintiff to return back to the agency therefore an application to vacate the award will be made (SEE ATTACHMENT 1- 2.15.15 EMAIL). The plaintiff would like to make the court aware that, not ever during the 35 years history of the collective bargaining agreement have state officials at the department of public safety or, the Ohio State Highway patrol had ever appealed an award issued by an arbitrator of employees who were members of the Fraternal Order of Police, Ohio Troopers Association, or OCSEA. The Plaintiff was treated different at the time for speaking out and, fighting against racism in the agency. And, by filing complaints with EEOC and making internal complaints of wrong doings, namely, Thomas Charles, John Born, Mark Bentley, Thomas Charles, handpicked deputy director who unlawfully acting as a peace officer, by driving police vehicle fully equipped, carrying a concealed firearm and, assisting in investigations without first having the proper Ohio Peace Officer certification required by 2935.01. The Plaintiff further was targeted after writing letters to the governor office identifying Thomas P. Charles as a racist, after he was appointed as the director of public safety and, came he in with mindset that blacks didn't belong in management in the Ohio Investigative Unit. The plaintiff further pointed out how Thomas Charles attacked the positions of both the plaintiff and another black male who were promoted to the positions of supervisor. The unlawful acts committed by Thomas Charles against the plaintiff was to silence

the plaintiff freedom of speech and to further send a strong message to other minority employees that speaking out against him or his administration would result in serious consequences. Thomas Charles has used his enormous influence to convince those he had joint activity, meetings and discussions with each other to keep his continued retaliation and harassment against the plaintiff until the results sought by him are accomplished. Thomas Charles, while director of Ohio Department of Public Safety has not treated any other employee in the manner he has treated or had to be treated. In doing so Thomas P. Charles used his influence to caused state officials namely, John Born, Paul Pride, James Hogan, J, Pyles Cullen Jackson to continue to retaliate by use of the Franklin County Court System, which is a state prerogative and to treat the plaintiff differently that all other employees at the defendant agency. As a result of the continuing conspiracy until the conspiracy met it's end on January 25, 2019 between the defendants named herein. Thomas Charles violated the plaintiff First Amendment and Fourteenth Amendment rights. Even though Thomas Charles wasn't employed during the time as state official it was Charles influence that began the unlawful acts and continue to encourage the unlawful act against the plaintiff until the final conspired act occurred on January 25, 2019, when the arbitrator without authority issued an award reversing the original arbitration and court confirmation while operating in joint activity with state official in a state owned building (OCB). The courts have stated that private individual need not be under the control or influence of a state government in order to be subjected to a 1983 action liability (see Dennis 449 U.S. 27 The court further stated consistently held that under certain circumstances, non - state actors engage in conduct under the color of law when their acts were

complicit with state officials. It is further undisputed by the defendants named herein that the dispute between Thomas P. Charles who first fired the plaintiff March 19, of 2013 didn't conclude his retaliation, but continued by conspiring with non state actors, until the final conspired act by state official and non - state officials obtained the adverse results that was sought by Thomas P. Charles. The rogue arbitrator used Thomas P. Charles 2013 original termination in his fraudulent award while violating Ohio and Federal law and, continuing the retaliation for Charles until the adverse action occurred, and by doing so, the arbitrator unlawfully committed a collateral attack against the first award that was issued on November 24, 2014 by neutral arbitrator E. William Lewis. Thomas P. Charles action even though silent, his influence and control to harm and retaliate against the plaintiff was met and carried out by state officials and non - state actors, on January 25, 2019, namely Douglas Behringer, Cathy Brockman, Gwen Callender, and David Stanton. The plaintiff is asking the court to award 4Million dollars in damages and any other equitable relief the court deems appropriate. Thomas Charles shall be held accountable for the relief requested.

THE SCHEME OF THE STATE OFFICIALS IS NOW IN FULL SWING

96. On May 19, the Franklin County Common Pleas Court rejected the state application to vacate the plaintiff arbitration award. Honorable judge Cocroft upheld the arbitrator award and ordered the state, namely, Ohio Department of Public Safety and, the Office of Collective Bargaining to comply with the award by returning the plaintiff back to his original position as an enforcement agent and to pay all backpay, benefits, to also include interest from the date of the award until the plaintiff was returned back to his employment. However, the state

officials namely Thomas P. Charles, Paul Pride, and, John Born wouldn't be deterred by the lower court decision. John Born abused his position to unlawfully attack a binding arbitration in favor of the plaintiff requesting the Ohio Attorney General to filed an appeal to the Franklin County 10th district court of appeals. John Born did so only to carryout the wishes of his mentor Thomas P. Charles to continue the retaliatory attacks. The state, DPS, OCB, OSP, have never in the history of the collective bargaining ever requested a case of a union member arbitration award whether it a member of the FOP, State Trooper union, or OCSEA be appealed to the Franklin County 10th district and even up to this date have requested a member award be tested by the court and/or appealed. John born abused his position as a state official by treating the plaintiff differently than any other employees, employed within the agency where he was the director and yielded a great deal of authority and he clearly abused that authority while targeting the plaintiff for invoking his rights to free speech based on information testified to in the original arbitration award. John Born used his position to convince others to assist him with his retaliation against the plaintiff the request to have the plaintiff original award appealed constitutes continued conspiracy to unlawfully harm the plaintiff John Born has violated the plaintiff first amendment rights and due process rights. The Plaintiff is requesting 4 million dollars in relief from John Born and the plaintiff ask the court to hold John Born liable for same and any other equitable relief the court deems appropriate, and, enjoin any actions committed by John born after April 14, 2017, to include termination of the plaintiff and to require full reinstatement as a result of John Born unlawful action. This appeal was written in the fraudulent January 25, 2019 fake arbitration award by David Stanton.

97. On April 14, 2017 the 10th district appeals court that returned its decision and upheld the lower court decision. However, this did set well with the state officials namely John Born Paul Pride, James Hogan. The fact that the court have told them to return the plaintiff back to his employment, pay him his back pay, and benefits and pay post judgment interest they threw a legal TANDRUM. The state official wouldn't be outdone by any court and, WHEREAS John Born, Paul Pride and James Hogan, had already began developing a scheme which would require non – state actors to participate to assist in violating the plaintiff employment rights.

98. The continuing conspiracy began with John Born, Paul Pride, James Hogan, abusing their positions as state officials. By authorizing the state Highway Patrol to engage into a private property investigation as it related to the plaintiff employment while not being employed at the Ohio Department of Public Safety. Section Ohio Revised Code specifically leaves the duty to investigate any applicant licensed under the Ohio Revised Code 4749.02 only upon a written complaint. The director John Born without "PROBABLE CAUSE", authorized the Ohio State Highway Patrol who duties are under ORC 5503.01 to unlawfully conduct an investigation against the plaintiff employer, Allied Universal Security, on or about February 2, 2017 almost four months prior to the plaintiff scheduled return back to DPS as an enforcement agent. The Ohio State Highway Patrol had no authority under 4749.11 to investigate any applicant and/or security firm licensed or unlicensed in the state of Ohio, without any violations occurring in a state building or state road. John Born, and Paul Pride, unlawful attempt to obtain information on the plaintiff employment at Allied Universal prior to the completion of the appellate appeal, was pretexual and, committed

solely to intimidate and harass the plaintiff former employer and its management staff at Allied Universal Security, while seeking information on the plaintiff earnings at the company. The continuing retaliation by John Born and Paul Pride was to develop a strategy and scheme to redo an arbitration award that the Franklin County Common Pleas Court, and Franklin County Appeals court refused to vacate on their behalf. As a result of Thomas Charles, John Born, Paul Pride losing the appeals there strategy has changed. now is to use a technique that will be carried out by the Ohio State Patrol, the unlawful scheme being concocted by state officials, John Born, Paul Pride and James Hogan, the defendants no full well this time taking the plaintiff employment will not fail because the state patrol unlawfully are now in control of the dispute in violation of 2711.10 2711.11 and 2711.13, for which they have no authority    to correct an arbitration award, review figures of an arbitrator award or write an investigation to vacate an arbitrator award. Now the outcome of the plaintiff future is in the hands of OSP who will deliver to Born, and pride an investigative report that will substantiate an unlawful termination of the plaintiff. OSP will deliver the adverse action against the plaintiff, that was sought for by Thomas Charles, John Born, and Paul Pride. The unlawful scheme has now been formed and non-state actors at the FOP being sought out to assist in joint activity with state officials, after the plaintiff had returned to his employment at DPS. However, unbeknown to the plaintiff his employment would be short lived. The Ohio State Highway Patrol duties are under ORC 5503.01, in, addition the law doesn't allow for the patrol to carry out private property investigations nor does the section allow for the patrol to conduct investigation against an employee PRIVATE PROPERTY EMPLOYER unless the hours worked by that

employee are in conflict with the hours worked for the state. The plaintiff in the instant case before the court, wasn't an employee of the state at the time the Director John Born unlawfully initiated a complaint on Allied Universal Security, and by using the patrol to intimidate the plaintiff former employer into turning over plaintiff personal information to them, without a court ordered subpoena, solely to intimidate, harass, and retaliate, against the plaintiff and his employer only to use the information against the plaintiff upon his court ordered return back to work to claim the plaintiff owed money to the agency but failed to follow the arbitration award issued November 24 2014.

A dispute that can't be arbitrated between Allied Universal, FOP, and, OCB Allied Universal Security isn't part of a collective bargaining agreement and further the plaintiff wasn't employed by defendant agency during the time earning were requested and Allied universal illegally investigated. A violation of the plaintiff constitutional rights to due process and, equal treatment. No other employee under the control of John Born and Paul Pride has been treated in the manner the plaintiff has been treated. Thomas Charles influence over John Born, Paul Pride, and other actors to include Douglas Behringer, James Hogan, Jake Pyles, Cullen Jackson, Catheryn Brockman, and Gwen Callender is so intimate with each other that causing constitutional violations against the plaintiff, for Charles would never be a concern to them while engaged into joint activity together. The non state actors simply want the state officials to know where there loyalty stands, just want to appease Thomas Charles at any cost to the state or FOP.

99. John Born, and Paul Pride with advice of James Hogan unlawfully seized records at Allied Universal unlawfully and without a search warrant or subpoena thereby violating the plaintiff fourth amendment

rights to be secure in his property and effects. The unlawful seizure was used in the arbitration award issued by David Stanton on January 25, 2019, and by doing so violated the plaintiff due process rights conferred in the 14th Amendment of the United states, The plaintiff as a U.S. citizen have the right to equal treatment under the laws. John Born, abused his official position as director, Paul Pride abused his official position as OSP superintendent to unlawfully put a team of co conspirators together to cause serious injury to the plaintiff mental health, employment.

## 100. JOINT ACTION BY THE OHIO FRATERNAL ORDER OF POLICE OHIO LABOR COUNSEL INC. CONTINUED CONSPIRACY AND JOINT ACTIVITY

101. It is well settled that the Fraternal Order of Police is recognized as the exclusive representative for enforcement agents at the Ohio Department of Public Safety. It is also well settled that representatives of the FOP know and understands contracts agreements entered into between the state and the Ohio Office of Collective Bargaining has a beginning date, and an end date pursuant to ORC 4117,and, enforced by the Ohio State Employment Review Board (SERB). However, the instant case before the court involves, The Office of Collective Bargaining, who under Ohio law 4117 is sole representative for state agencies to include the Ohio Department of Public Safety as well as the Ohio State Patrol who maintains a separate bargaining unit contract that's different from enforcement agents. The Patrol has a contract with the Ohio Troopers association, and operated by troopers. Enforcement agents aren't part of the troopers contract and the patrol has no statutory rights to hire, fire, demote, or make decisions that are

detrimental to the position of an enforcement agent. Agents for the Ohio Investigative Unit are hired under ORC 5502.14 that designates the director to appoint enforcement agents. The superintendent of the Patrol is prohibited by law 5503.01 to hire and or appoint an enforcement agent.

102. ACTIONS OF THE FRATERNAL ORDER OF POLICE THAT CONNECTS JOINT ACTIVITY WHILE CONSPIRING WITH STATE OFFICIAL TO VIOLATE THE PLAINTIFF CONSTITUTIONAL RIGHTS AND ACTIONABLE UNDER U.S.C. 1983 as private parties. Brentwood Academy v. Tennesee Secondary School Athletic Association (2001) where the court stated that under certain circumstances, the conduct of a putatively private individual, entity, or organization will be treated as if the state caused the conduct to be performed. The private actor will be deemed to act under color of law, subject to constitutional limitation and to 1983 suits for liability. The court looks for joint participation between the government and private actor which may be treated as that of state. The plaintiff will provide factual evidence to support that non-state actors For The Fraternal Order of Police, Ohio Labor Counsel Inc, participated in joint activity with state officials to violate the constitutional rights of the plaintiff. The state officials without the help of Catheryn Brockman, director of the Fraternal Order of Police, Gwen Callender Chief legal FOP, and, Douglas Behringer chief negotiator FOP each engaged in a pattern of corrupt activity while conspiring with state officials. The courts have stated that non state actors merely providing information to state officials does not by itself constitute joint activity under the color of state law, but where there is evidence of a conspiracy, preconceived plan, with mutual understanding, or concerted action between the state officials and the non- state actors

there can be 1983 liability.

103. The Fraternal Order of Police joint activity and conspired activity was and has been a continuing one. The Representative Douglas Behringer, has repeatedly told the Plaintiff of the disdain he has for him dating back to when he informed the plaintiff of his displeasure of the freedom of speech statement made to Thomas Charles, who the plaintiff identified as a racist, after Charles initiated several unprovoked attacks on the plaintiff. As, a result Douglas Behringer began his own personal attacks on the plaintiff. The instant case before the court will demonstrate the joint activity between, Douglas Behringer, Catheryn Brockman and Gwen Callender. The facts will further show the intimate relationship between the state officials and fop, and how they each conspired together to injure the plaintiff.

On November 24, 2014 the Fraternal Order of Police received an arbitration award from E. William Lewis. The award ordered the state officials to return the plaintiff back to his enforcement agent position. However, state officials were unwilling to comply with the November arbitration award. John Born and Paul Pride, had the Attorney General appeal the award to the franklin county common pleas court. Showing their displeasure for the plaintiff by stating that they do not want the plaintiff to return back to the agency.

104. May 19, 2016 the Franklin County Common Pleas Court upheld the arbitrator award and again to displeasure of the state officials John Born, Paul Pride had the award appealed to the 10th district Franklin County Court of Appeals

105. April 14, 2017 Douglas Behringer advised the plaintiff that the Appellate court upheld the lower court ruling, judgement was entered

in favor of the plaintiff to return back to his employment. However, Douglas Behringer further advised the plaintiff by stating the following " Gales", don't get to happy because when you get back the state is going to fire your ass again. I asked why did he believe I would be fired again well before I ever returned. Behringer response to the plaintiff was that they hate your ass over there, and that you should have taken the retirement offers and got the hell out of there when you had the chance. Douglas Behringer, and Gwen Callender on multiple occasion for the state officials asked me to retire but the plaintiff refused. On the final request prior to the plaintiff return back to employment. August 2016, FOP Chief legal Gwen Callender, summons the plaintiff to appear at the office of the fraternal order of police 222 Town Street Columbus, Ohio 43215. Upon arrival with Curtis Hundley, a union steward, the plaintiff was met by Gwen and Douglas Behringer. Gwen Callender told me that I was not called to the fop to discuss my case. Gwen stated that she wanted my resignation from the department of public safety and, that was the only discussion needed. I told her and Douglas Behringer to go pound salt because I was not given the fop a resignation. The continued conspiracy from state officials attempting to have the union author my resignation again clearly shows the intimate relationship and joint activity while violating the plaintiff due process right. This unlawful acts of fop and it representatives continued until January 25, 2019.

106. On or about May 3, 2017 Douglas Behringer at the request of DPS requested receipts showing my earning up to 2017. I advised I would only provide receipts up to 2015, for deductions while not employed at the agency. The plaintiff supplied receipts totaling $35.300. At this time Douglas Behringer and state officials were in several meetings on how to implement the arbitration award and backpay to the plaintiff. But,

the meetings were really on how to undo the arbitration award and refire the plaintiff because he refused their offers to retire.

107. On or about May 15,2017 the plaintiff returned back to the Ohio Department of Public Safety Investigative Unit

108. On or about June 7, 2017, the fraternal order of police removed the plaintiff as member of the fraternal order of police and without the knowledge of the plaintiff made the plaintiff a fair share member. I believe the FOP committed the act to assume their role in the scheme with John Born, Paul Pride, James Hogan, Jake Pyle, and Cullen Jackson. Knowing, the level of representation would not be that of a regular member, which would allow the fop to skirt its duties then aligned themselves with state officials named herein which would then allow the joint activity of joint activity to name a like thinking arbitrator who bear dislike for non union member who are only fair share and not fully aligned with their unions. As a result of the fair share tag on a member this allows the union to unlawfully mistreat and fail to represent as will be outlined further in this complaint. The fop and its representatives named herein have acted jointly with state officials and have continued to conspire with state officials to violate the constitutional rights of the plaintiff. Concerted action between non state actors and state officials there can be 1983 action See Annunziato, 744 F2d at 252 also see Adickes @398 152

110. On or about June 9, 2017 Douglas Behringer contacted Curtis Hundley and advised him that the state allowed him to pick his good friend as a arbitrator, and to tell Gales, he better be careful now his good buddy wont take kindly to anyone speaking ill of the FOP and this arbitrator would have no problem taking care of him for the union. This

again demonstrates continued conspiracy and joint activity. The union fop is fully aware that the state officials are with a scheme to harm the plaintiff and the union is in on it with the state officials to violate the rights of the plaintiff at all cost to the state and fop.

111. David Stanton Arbitrator files application for a state contract with the Ohio Office of Collective Bargaining on June 25, 2017 approximately one month after the plaintiff returned back to his employment. The fop and state officials selected an arbitrator who they know will undo the court judgment and redo an arbitration for which he unlawfully can't do or have jurisdiction over. The contract had expired. On July 25, 2017 the director of the office of collective bargaining agreed and signed the contract for David Stanton to act as a contractor to arbitrate dispute between the state and state agencies. The plaintiff would like to draw to the court attention the agreement between the Office of Collective Bargaining and the fraternal order of police. The facts presented will show a clear case of collusion between the state and the fop while both violates article 20.08 in the contract that states in part the following. The parties will select six (6) individuals as the permanent arbitrators, who will decide all contract disputes for the life of the agreement, unless he/or she is unable to serve or he/she services are terminated earlier by mutual agreement. The arbitrator Shall be notified of his/her termination by joint letter from the parties. A successor arbitrator shall be selected by the parties within 30 days after the resignation or termination of the parties. As a result of the state officials and the fop selecting an arbitrator at a time the agreement has six permanent arbitrator should be puzzling to the court. The plaintiff obtained document from Ohio Office of Collective Bargaining which clearly identifies seven (7) arbitrators after July 25, 2017 appointed as

permanent arbitrators. The court and the plaintiff can only imagine the need for FOP and the state officials to select a seventh arbitrator, when there were already six available to choose from should a dispute arise. The Plaintiff clearly has factual evidence on the continuing conspiracy to violate the plaintiff constitutional rights, with full willing participation of the FOP and its members to act jointly with state official in violation of both state and federal laws ORC 2711, and, FAA section 10.

112. David Stanton was handpicked by his good buddy Douglas Behringer he is now bought and paid for arbitrator to violate his ethics as an arbitrator and begin his preparations to injure the plaintiff for state officials.

THE STAGED AND UNLAWFUL OSP INVESTIGATION

113. Continued conspiracy, harassment and retaliatory action by state officials John Born, Paul Pride and, James Hogan, Cullen Jackson, and Jake Pyles to undo the plaintiff 2014 arbitration award, and reverse any court decision entered in judgment by the Franklin County Common Pleas Court, and the 10th District Court of Appeals. John Born by no means will allow a court decision deter him from making his mentor Thomas Charles wishes of injury to the plaintiff come true and keep in place the termination Thomas P. Charles imposed on the plaintiff March of 2013. The conspiracy with the state officials named herein has continued until the last overt action occurred on January 25, 2019. Therefore actionable under 1983 on all defendants involved with the conspiracy to retaliate and violate the plaintiff constitutional 1st, 4th,

14th Amendment due process and equal treatment of the laws.

114. The Ohio Department of Public Safety have no policies or procedures for the Ohio State Patrol or any other law enforcement unit with the Ohio Department of public safety as it relates to arbitration awards, and troopers or OSP investigator have no authority or jurisdiction to review, correct, modify, or vacate an arbitrator award, The courts will clearly see the violations being committed by the state to violate the plaintiff rights to free speech and his rights to due process guaranteed under the U.S. Constitution which is wrapped up in the arbitrator fraudulent arbitration award he unlawfully issued on Jan 25, 2019, and it was written to discriminate and, appease state officials John Born, Thomas Charles, and, Paul Pride, who without authority authorized the investigation into the 2014 arbitration award, in violation of Ohio Revised code 2711. 10, 2711.11, and, 2711.13. The Ohio courts have stated: In appeal cases whereas an arbitrator reviewed a second award and or an award that was issued as final. The courts pointed out Ohio Revised 2711 does not confer authority on an arbitrator to reconsider its awards. Reynoldsburg City Schools Dist. V. Licking Valley Heights School Local District, Bd of Educ. 10th district No.08AP-415-2008, Ohio 5669. Also see, City of Cleveland School Dist. v. Laborer's Int'l Union 1099 No. 105378 161.The Ohio Law 2711 is clear, the Ohio State Patrol may not conduct an inquiry into matters related to final arbitrations awards nor can the director at DPS or the superintendent of OSP, develop policies, regulation, or customs to divert the meaning of ORC 2711, or, make written language to review an arbitration award, a clear violation of 2711, while also interfering with collective bargaining under ORC 4117. However, that is exactly what John Born, Paul Pride, and, James Hogan, and other state official

engaged in, solely, to violate the plaintiff rights to equal treatment and protection of the laws of Ohio, and the United States

113. On January 18, 2018 the Plaintiff received an email alerting him of an impending investigation and, that the plaintiff was the suspect of the investigation. OSP Lt. Chad Miller provided to plaintiff a copy of a complaint without showing who generated the complaint. The complaint subject line stated the plaintiff would be questioned as to his failure to comply with a arbitrator award during the time the plaintiff was not employed with the agency. The plaintiff advised Mr. Miller that he was violating the law and, that he had no authority to investigate the plaintiff and his arbitration award. Lt. Miller disputed that by saying the agency had a right to know how much earnings obtained by the plaintiff prior to returning back to work. I explained that I had complied with the terms and conditions and further I paid $35.300 in offset to the agency. I further told Lt. Miller that it's the agency who owe money to the plaintiff that they have failed to comply with per the arbitration award and the court judgment. I explained again to Lt. he was violating not only 2711 of the ORC he is also violating a court order. However, none of that mattered as John Born Paul Pride were on a mission to undo the award at all cost to the state. Pursuant to 2711.10 2711.11, 2711.13 the state of Ohio has a set procedure to follow when attempting to correct an award, vacate an award, or correct an award.

114. Lt Chad Miller violated this very statutory requirement and as a result violated the plaintiff Fourteenth Amendment rights while carrying the duties he had been assigned to carry out by John Born, former director, and Paul Pride former superintendent of the Ohio State Patrol this unlawful act is actionable under 1983.

115. On or about January 26, 2018 the plaintiff submitted a letter to John Born requesting that he comply with an arbitrator and court decisions and to make the plaintiff whole in benefits, promotions, and backpay James Hogan responded in written form that under no circumstances will agency honor it duty to comply. James Hogan knew in advance the joint activity he maintained with Douglas Behringer and the FOP. And, Knowing the plaintiff complaints in his letter to then director John Born would be ignored by the union for which the state officials have full control over in the unlawful joint activity. As result of the plaintiff complaint the state officials initiated a second administrative investigation on the plaintiff in violation of the plaintiff constitutional rights. (See attachment 5) The plaintiff speech was silenced by the state officials named herein to violate the plaintiff first Amendment Rights under the U.S. Constitution and as result is actionable under 1983.

116. On February 18, 2018 the plaintiff was ordered into a second interview, with OSP Lt. Chad Miller as it related to the plaintiff 2014 arbitration award. Chad Miller without authority under 2711.10.2711.11.2711.13, and, without authority over the IRS tax code 7203, he demanded that the plaintiff turn over his original 2016 2017 federal tax returns to him along with additional payroll earning from Allied Universal. The plaintiff advised OSP Lt. Chad Miller that he wouldn't honor his request and that the plaintiff 2016-2017 taxes as they are private under the laws of the United States and, under the IRS tax code 6203-7203. The plaintiff again reminded Lt. Chad Miller of his illegal actions as they related to his attempt in enforcing a arbitrator award by which the department have no policy outlining authority to the Ohio State Patrol to review. As stated earlier in this complaint

review of arbitration awards in Ohio under 2711 may only be reviewed by Ohio 88 Common Pleas Courts. And under the Federal Arbitration Act (FAA) Only the United States District Courts may review Awards for miscalculation of figures, correction of an award under section FAA 10. The patrol is a state law enforcement agency with limited jurisdiction. By law the patrol is not authorized to review an arbitration award regarding miscalculation of figures. This unlawful act was taken on behalf of Thomas P. Charles who wanted his termination of the plaintiff upheld and, who but his trusted director that he recommended for the job stepped outside of his official duties and, ordered the patrol trooper by way of Paul Pride to violate the law of the state of Ohio and by doing so when the request was made for the plaintiff taxes and the plaintiff refused the state officials with full knowledge violated the plaintiff First Amendment rights to free speech under the U.S. Constitution. John Born Paul Pride have consistently treated the plaintiff differently of same similar situated person within the agency, and as such violated the plaintiff equal protection this mistreatment was without a rational basis, other than the hate and discriminatory actions of the state officials See Rondigo,LLC v Township Richmond 641, F3d673,681,-682 (6th Cir2011) See Ranvansky v. City of Olmstead Falls 395 F3d 291,312, (6th Cir.2005) See Scarborough v. Morgan Cnty. Bd of Educ.470,F3d 250,260, (6th Cir 2006) The court have stated that when disparate treatment is shown the equal protection analysis is determined by    the classification used by the government decision maker. The plaintiff clearly can demonstrate disparate treatment and as such the state official and non- state actors are liable to the plaintiff. Simply put, there was no true basis for the state officials, John Born, Paul Pride and, Thomas Charles, each who have expressed their dislike

for the plaintiff, after being sued in 2016 by the plaintiff in both Federal and, State courts. As a results, Thomas Charles used his influence, with John Born, and Paul Pride to assemble a group of non- actors who would be willing participants in joint action to take back the arbitration award won by the plaintiff on November 24,2014. As a result the conspiracy has continued until the final overt act of January 25, 2019.

117. JOHN BORN, PAUL PRIDE RE-FIRES PLAINTIFF AGAIN.

118. On, or about March 13, 2018 Paul Pride issued to the plaintiff a letter with the patrol letterhead alerting the plaintiff that he was recommending the plaintiff termination after concluding the plaintiff failed to comply with an arbitrators award issued November 24, 2014, and that the alleged failure caused the improper offsets that could not be properly calculated. In, addition, The letter charged the plaintiff with untruthfulness and compliance to orders for allegedly failing to follow the orders of a supervisor.

119.                    DISCUSSION

(1). As, stated in the complaint the Patrol doesn't have the authority to review a arbitration award. Secondly, the patrol doesn't have the legal power or jurisdiction to terminate the plaintiff for an alleged failure to comply with an arbitrator award. The law is clear under ORC 2711. It states in part, any party seeking correction of an arbitrator award must submit application to the court of common please within 90 days. The agency forfeited its ninety days and under the law can't on its on accord investigate or correct an award. A clear violation ORC 2711.13

(2). The superintendent of the Ohio State Highway Patrol do not possess the power of the law of Ohio pursuant to 5503.01 to

recommend the termination of an enforcement agent. In fact, Ohio Revised Code 5502.14 makes it very clear and not misleading , that the Director of public safety may appoint enforcement agents not the Superintendent of the Ohio State Patrol. Each agency in Ohio operate off laws the Ohio General Assembly provided to them. At no time have the General; Assembly passed a law identifying enforcement agents as members of the patrol. Therefore, the letter issued by Paul Pride was unlawful, and issued to treat the plaintiff differently than any other employee working as enforcement agent that are similarly situated.

(3). Pursuant to 5502.14, is clear an enforcement shall not be terminated from his position as an enforcement agent unless that agent has been convicted of a felony. ORC 5502.14 also states that if an agent convicted of a felony files for an appeal and he/she are acquitted they agency shall return the agent back to his position with backpay. Clearly the court should see that the actions against the plaintiff was committed by the defendants by prior calculating and planning. The Plaintiff a 33 years employee terminated for no legitimate reason other than retaliation for opposing racist Thomas P. Charles, John Born, and, Paul Pride. As result of this illegal and adverse action taken against the plaintiff retaliation is actionable under 1983 as well as conspiracy.

120. On or about March 19, 2018, John Born whom the Plaintiff sued in Federal Court and state court and is now in the position to abuse his authority and retaliate against the plaintiff. Issued to the plaintiff a letter advising the plaintiff of his immediate termination for failure to provide his 2016 -2017 original 1040 tax returns as requested by a supervisor. And, for alleged failure to report income from an employer while not working at the agency as required by 2014 arbitration award.

DISCUSSION

`

The director of the Ohio Department of Public Safety can't authorized personnel under his command to violate the law of Ohio. The plaintiff was issued an award by E. William Lewis on November 24, 2014. John Born used his legal authority to attempt to have the arbitration award vacated on February 20, 2015 the court ruled against his application to vacate. John Born then used his legal option again, and, had the arbitration award appealed to the 10th district court of appeal. John Born lost again, and threw a legal temper tandrum John Born had no plans to let his mentor Thomas Charles be defeated by any court ruling.

(1)  The law of Ohio 2711.10. 2711.11, and, 2711.13 does not confer power to the director to order an investigation on an arbitration award issued by an arbitrator. At no time during the 35 year history have a director abused their authority as John Born has to violate the law solely to harass and, retaliate against a black male that sued him and, filed complaints on Thomas Charles, who openly put an employment hit out on me, to be carried by John Born.

(2)  ORC 5502.14 states the director shall terminate the employment of any enforcement agent appointed under such section who have been convicted of a felony. The Plaintiff committed no crime or state of Ohio employment infraction when Born terminated his employment without just cause. John Born with malice and in bad faith used and abused his position as the director and assembled a group of non- state actors to act jointly with him to retaliate and

injure the plaintiff by taking the plaintiff employment and, delivering to Thomas P. Charles the results he sought against the plaintiff for fighting racism under his command and reporting his actions to the Governor of Ohio which resulted in Charles being asked to step down from his director position. This unlawful action taken by John Born, Paul Pride was retaliatory while engaged into joint activity in a continuing conspiracy with non-actors to violate the 1st, 4th, 14th constitutional rights of the plaintiff which is actionable under U.S.C. 1983 and the plaintiff equal protection under the constitution. Having engaged into unlawful resubmission of a expired 2012-2015 contract agreement with non- parties constitute joint activity between state officials and non- state actors kirtley v. Rainey 326, F3d 1114,118, (9th circuit 1996) Brunette v Humane Society of Ventura County 294,F3d 1205 (9th Cir. 2002).

121. The unlawful joint activity of the FOP and, its representatives named herein who each were willing participant with the conspiracy until the final overt act accomplished the retaliatory, and, discriminatory goal of the state officials named herein, and the unlawful retaliatory act could only have been accomplished with the help of non- state actors, namely Douglas Behringer, Cathy Brockman, Gwen Callender, and David Stanton.

On or about August 19, 2018 the plaintiff was advised by the fraternal order of police Ohio Labor Counsel to attend meeting to discuss the impending arbitration. The plaintiff would like to bring to the court attention, that this was another opportunity for the fraternal order of police to do the right thing and, properly represent the interest of the plaintiff. Clearly, the fop instead

continuing to conspire with state officials to unlawfully redo an arbitration award confirmed by the court on May 19, 2016, (15-MS-119) should have filed a motion with Franklin County Common Pleas Court requesting an injunction against the state of Ohio Office of Collective Bargaining and the Ohio Department of Public Safety, and the State Patrol. FOP could have requested as earliest as February 2018 or March 2018, requesting the court to enjoin the state from its unlawful and wrongful actions for violating the confirmed November 24, 2014 arbitration award.

Courts have state that parties are bound by the decision of an arbitrator and his/her decisions are binding on all involved parties.

DISCUSSION

123. Douglas Behringer is the chief negotiator for the Fraternal Order of Police, as such his experience in contract labor law has proven over the years to be effective when at the negotiation table with state officials. Douglas Behringer knew that the state officials were violating Ohio Revised Code 2711 and FAA rules section 10. However, Douglas Behringer willingly continued to be a party to the continued conspiracy with state officials when he could have easily excused himself from the conspiracy. However, he did not. It is also very apparent that the state officials being connected having connections to the contract agreement establishes joint activity on the part of Douglas Behringer. Federal courts have found that willing participants in a continued conspiracy even non state actor may be liable under a 1983 action for injury caused to the plaintiff. The courts have also found that,

non- state actors engaged into state prerogatives with state officials as we have here are acting under the color of law.

124. Gwen Callender, is the Chief legal for the Ohio Fraternal Order of Police Ohio Labor Counsel Inc. Gwen Callender is a labor attorney with years of experience in labor law. State officials continued over the years beginning 2016 to assist them to convince the plaintiff to leave his state employment, even though the fraternal order of police were armed with an arbitration award that had been confirmed by the court. Gwen Callender joined the continuing conspiracy when she summons the plaintiff in September of 2016 to meet with her and, Douglas Behringer. Upon the plaintiff arrival Gwen Callender informed the plaintiff he was only asked to come to her office to receive the plaintiff resignation. Why would the Chief attorney for FOP be asking the plaintiff for his resignation when the fop is armed with a confirmed award. The clearly set the conspiracy in motion with her involvement while assisting state officials. Gwen Callender, as a non state actor intentionally and, with malice retaliated against the plaintiff for state officials while in joint activity cloaked under the color of state law.

125. Catheryn Brockman, (non attorney) but the Director of the fraternal order of police Ohio Labor Counsel, failed to protect the plaintiff by conspiring with the state in joint activity to violate the rights of the plaintiff while acting under color of law with state officials to discriminate and, retaliate against the plaintiff whereas, this was a clear violation of the plaintiff due process rights under article 9 of the collective bargaining agreement. Catheryn Brockman joined the conspiracy with state officials in

joint activity therefore her action is actionable under 1983. The meeting the plaintiff was requested to attend shouldn't have occurred. Cathy Brockman should have ordered her chief legal to file an action with the Franklin County court to under an injunction to enjoin the state from its wrongful actions. However, instead of doing the right thing for the plaintiff Catheryn Brockman joined the continuous conspiracy until the last overt act reached the results sought by state officials namely, Thomas Charles, John Born, James Hogan, Jake Pyles, Cullen Jackson, and Paul Pride.

126    September 10, 2018, Plaintiff ordered to attend a fake staged arbitration with the state of Ohio Office of Collective Bargaining, the Ohio State Highway Patrol, the Ohio Department of Public Safety, represented unlawfully by James Hogan in house attorney, and the state official who maintained full control over the non-parties who were each engaged into joint activity with each other illegally to assist state officials to retaliate against the plaintiff for engaging into his freedom of speech. The fake and unlawful arbitration was to undo the plaintiff freedom of speech when the plaintiff was sworn to testimony on September 9, 2014. As, a result of the free speech the plaintiff at the hearing while under oath, the original arbitrator E. William Lewis found that the state didn't have just cause to terminate a 29 year employee who had no discipline on his record. E. William Lewis stated the discipline was too harsh and reduced the discipline to 30 days for alleged misuse of a computer (OHLEG).

127. David Stanton, the arbitrator selected to conduct the hearing, should not have been allowed to review a confirmed

arbitration award. David Stanton, has over 30 years of arbitration experience and knew that his actions were wrong and ethically unjust. However, the state officials assisted the fop in the selection of David Stanton on or about June 25, 2017.

## DISCUSSION

The contract agreement calls for six permanent arbitrators under article 20.08. Why would the state and FOP request a seventh arbitrator one month after the plaintiff returned back to work, a review of the time lines of the plaintiff return to work on May 15, 2017 and then, the inclusion of David Stanton as an arbitrator on June 25, 2017 to join six permanent arbitrator should be puzzling to the court. Why David Stanton, when there were 6 on the board to include the original arbitrator E. William Lewis. The unlawful inclusion of David Stanton was part of the scheme to undo the court confirmation by continuing the pattern of corrupt action by the state officials and non- state actors.

128. On the day of the arbitration hearing it was clear from the start that the entire hearing was a "SHAM", and, a misuse of government money and resources. The first comments from David Stanton mouth, was that he should not be hearing the plaintiff grievance. The second comments that came from David Stanton Mouth was that as soon as he get his payment he was going to destroy all evidence. At this point thew plaintiff was well aware that the union FOP and state officials had entered into joint activity to harm and injure the plaintiff. David Stanton, knew or should have known his action were illegal under Ohio Revised code 2711 and under

the federal arbitration act (FAA) review of an original award that had met it finality. David Stanton was bought and paid for by the state officials and as result unlawfully conspired and engaged into joint activity with the state officials. David Stanton never, departed the conspiracy until the continued conspiracy had met it final results issued by non other than David Stanton. Who further conspired with state official to violate the plaintiff due process rights to file an unfair labor practice against the state and union. David Stanton was fully aware that the expired contract 2012-2015 for which the original had no force or effect. However, knowing his actions were wrong, and with the union and the state official being aware that the plaintiff most likely would file an unfair labor practice complaint for their illegal actions. The state officials, namely, James Hogan, John Born, Paul Pride, Cullen Jackson, and, Jake Pyles together in Joint activity with the FOP, Douglas Behringer, Cathy Brockman, Gwen Callender, and the rogue arbitrator decided that the 90 days requirement for filing a complaint under SERB they must exhaust to prevent the plaintiff of ever having the chance to have their unlawful actions reviewed by the state employee review board (SERB). The contract required that the arbitrator issue his decision no later than 45 days after all submission by the parties. Allegedly all submission were in by October 25, 2018 which meant that the arbitrator decision should have been rendered no later than December 10, 2018. However, the plaintiff was contacted in December of 2018, by fop representative Douglas Behringer, who advised that plaintiff

that the fop and the state agreed to extend the time line of 45 days for the arbitrator to make his decision on the merits of the case. Douglas Behringer claimed that the additional time was needed due the arbitrator and the arbitrator wife each were getting knee replacement. The plaintiff advised Douglas Behringer that he didn't believe the story of the arbitrator. The plaintiff stated to Douglas Behringer, that its does not make sense for the arbitrator and his wife to be getting knee surgery at the same time, and that the plaintiff sensed a more sinister reason behind the request. This action between the state officials, and the non- state actors in collusion with one another clearly demonstrates joint activity to violate a state prerogative ORC 4117 that extends to a charging party 90 days to file a complaint alleging a violation of the collective bargaining agreement.

125. On January 25, 2019 the arbitrator issued his biased filled arbitration award where he failed to sustain the plaintiff grievance against state officials who bought and paid for his services to undo an original arbitration award. The award made clear that not only did David Stanton issue a fraudulent award he issued the sham award on the 90th day while engaged into a continuing conspiracy to deprive the plaintiff of his due process rights. David Stanton identified in his award each stage the state official had went through to vacate the 2014 award for which he had no authority to redo. And, by issuing the award David Stanton violated ORC 2711 a state prerogative, David Stanton further violated ORC 4117 another state prerogative while in joint activity with

state officials to block the plaintiff from engaging in a legal right to file a complaint for unfair labor practice with SERB. Then to make matter worse, Douglas Behringer ensured the plaintiff would be unable to file an unfair labor practice against the state and, the union, by contacted the plaintiff at approximately 6:25 pm on Friday well after the state employee relation board had closed for the day. This concerted action between state officials and, non- state actors were committed to violate the plaintiff constitutional rights while the non- state actors acted under the color of law. Dave Stanton treated the plaintiff differently than he would have treated any other 33 years non- minority employee who had no discipline on his record and had achieved honorably the number of years to retire if the plaintiff chose to go in that direction. The unlawful arbitration award clearly biased and mean spirited that no normal good spirited individual would ever believe the actions by David Stanton taken against a 33 years employee he would violate the oath of his office by conspiring with state officials. Moreover, ORC 5502.14 a state prerogative was violated by David Stanton. The ORC section clearly states that no enforcement agent shall lose his/her employment unless convicted of a felony. The plaintiff at the time of this unlawful arbitration had committed no criminal violations or policy violation. David Stanton wrote an unlawful demeaning award to fit the desire of state officials even when he had no authority or jurisdiction to redo an arbitration award after the award reached it final state. The

Plaintiff was bound by the award, the state officials were bound by the award, the fop was bound by the award. However to complicit with the state not only did David Stanton correct and vacate an original award, he began his own personal attacks on the plaintiff. David Stanton, is fully aware that he may not insert new language into an award. The original award issued on November 24, 2014 did not have truthfulness/dishonesty in the violation as outlined by state officials. However, to reach his unlawful conclusion the rogue arbitrator continued to attack the plaintiff for alleged untruthfulness when speaking of his taxes being private. Dave Stanton violated well established federal policy that is well dominant on its face that under IRS Code 7203 and IRS Code 6203 which makes it a criminal offense to review an individual tax return without the approval of that person. However, to institute his own brand of justice in conjunction with state officials he joined the conspiracy willingly and as such was cloaked with state authority under the color of law which clearly make David Stanton liable to the plaintiff, as he had no legal jurisdiction or authority under an invalid 2012-2015 contract that no longer held any force or effect. And as a private party his violations under the constitution are actionable under 1983 The courts have stated that private individuals may be under the color of law only where there is significant state involvement in the action. Howerton v. Gabica 708 F2d 380,382 (9th Cir. 1983). The aforementioned joint activity between David Stanton and the state officials is unquestionably significant. It was David

Stanton Signature on January 25, 2019, his final overt action that completed the desired results sought by state officials. David Stanton reversed a court judgment for the state officials, one that the Franklin County Court refused on two court reviews, to vacate or correct. David Stanton while conspiring with state officials unlawfully reversed an arbitration award for which he had, no involvement with the original award. Stanton then inserted into his bias and unlawful award language he believed that the original arbitrator E. William Lewis meant when he issued the award on November 24, 2014. David Stanton actions is a clear violation of state Prerogatives ORC 2711.10 2711,11, and 2711.13 while engaged into an entanglement with the state officials. The plaintiff ask this court to hold David Stanton liable under 1983, and that as a result of his lack of jurisdiction and due to the fact that he operated from under an expired contract 2012-2015 and that he acted outside the scope of his arbitration authority by acted as a judicial officer of the court. Dave Stanton should have no immunity because he must be treated the same as a judge who acts maliciously to harm or injure a person outside the norms and jurisdiction of a judge. The plaintiff understands and is well aware of the immunity arbitrator possess when operating under a valid contract while issuing decisions. This case is totally different. David Stanton was paid to do the state officials a favor. He did just that then tried justifying his unlawful actions by taking the employment of a 33 years employee an action he would never have taken against a

non minority. However, due to the state official disliking the plaintiff and the fop disliking the plaintiff David Stanton was in a win- win situation. He made them both happy, the state officials and the fop wit his unlawful and biased illegal arbitration award. David Stanton is liable to the plaintiff under U.S.C. 1983 while acting jointly with state official and by engaging in a continuance pattern of corruption, knowingly and willingly with state officials to violate the constitutional rights of the plaintiff. David Stanton was bought and paid for on June 25, 2017 when he submitted his contract to the Office of collective bargaining after being handpicked by his good buddy Douglas Behringer, for the sole reason to assist state officials who were upset with the court ruling which upheld the plaintiff award to return back to his employment. David Stanton position in the scheme was critical to the state officials, it was his signature that was needed to overtly carry out the act to reach the unlawful results sought by state officials. And, Davis Stanton delivered that overt result on January 25, 2019.

126 On April 3, 2018, the plaintiff sent a letter to Cathy Brockman, the director of fop. The plaintiff outlined the illegal and fraudulent actions of the fop and Douglas Behringer, and that the fraudulent arbitration award he wanted it appealed to common pleas court. However, Cathy Brockman responded to the plaintiff back to the plaintiff by stating that she met with Gwen Callender chief legal for FOP, decided together that its extremely hard to overturn an arbitrator award and that they were aware of my dislike for Douglas Behringer which Brockman outlined in

her letter to the plaintiff, and that the fop would not be appealing the award issued by David Stanton. The plaintiff expected the response he received because it would have been counterproductive to the conspiracy that the union representatives engaged into as joint activity with state actors to violate the plaintiff constitutional rights. This again was an opportunity for FOP to step away from the conspiracy and file a motion for contempt ORC 2705 a state prerogative. In, addition the fop had the law on their side by being armed with a confirmed award which clearly would have enjoined the state from the wrongful actions. The union was complicit and must be held liable under 1983 as they acted under color of law while being guided and controlled by state official throughout their wrongful action against the plaintiff.

127. As a result of the fop failure to assist the plaintiff to undo the wrong the state officials caused. The plaintiff filed with the common pleas court an action to vacate the award. The action was denied. The Plaintiff filed an action with the 10th district appeals court the action was denied as not having standings. The plaintiff filed an action with the Ohio Supreme Court. However, the Supreme Court refused Jurisdiction over the matter. The union as a result of continuing joint activity with state officials. Union membership voted the FOP out as the union on April 19, 2019. The fop as with this plaintiff failed its member for the sake of state officials.

128.           PERMANENT INJUNCTION REQUEST

The plaintiff is requesting that the court reinstate the plaintiff back to his position as enforcement agent in compliance with ORC 5502.14 that makes it clear an enforcement agent shall only lose his /her employment only upon the conviction of a felony or serious

misdemeanor. ORC section further states that the enforcement agent shall receive all backpay and benefits. The arbitration was in violation of well settled Ohio and Federal precedent under 2711 and Federal (FAA) SECTION 10 that outlines conditions where an arbitrator or an award may be set aside. The plaintiff has throughout his complaint argued fraud, bias, award procured by undo means. In addition, the second circuit have stated that a union member if shown that the arbitration was a fraud, and that the union failed to adequately represent the member interest, and that the arbitration was a sham. The member can move to have the award set aside. The plaintiff is requesting simply to be returned to work with all back pay and benefits and that the state BE ENJOINED FROM THERE UNLAWFUL ACTION.

129.                    CONCLUSION

The plaintiff is requesting the following relief from the defendants named herein. Thomas Charles 4 Million Dollars, for violations under 1983 and other sections of law. John Born 4 Million Dollars for violations under 1983 pain and suffering, emotional distress, Paul Pride 4 Million dollars, for violations under 1983 as well as other laws for pain and suffering, emotional stress, humiliation, for placing the unlawful arbitration award onto the Highway Patrol Portal for over 1800 employees to review sole to embarrass and humiliate the plaintiff. James Hogan $750.000 for his role in the conspiracy. Jake Pyles $300.000 for his role in the conspiracy to violate the rights of the plaintiff Cullen Jackson $ 300.000 for his role in the conspiracy to violate the rights of the plaintiff. Catheryn Brockman 1,000.000 for her role in the conspiracy to violate the rights of the plaintiff Gwen Callender 300.000 for her role in the conspiracy to violate the rights of the plaintiff, David Stanton 3 Million Dollars for violating the rights of

the plaintiff. Douglas Behringer 4 Million Dollars for his role in orchestrating the scheme to violate the right s of the plaintiff. ALONG WITH ANY OTHER PUNITIVE RELIEF THE COURT DEEMS PROPER.

Timothy Gales

710 Glendower Avenue

Columbus, Ohio 43207

614 376-9346

Tgales37@gmail.com


Attachments

Arbitration Award

Authorities for private parties


CERTIFICATE OF SERVICE

 I Timothy Gales certify that a true copy of this second amended complaint was sent via U.S. mail to the defendant attorneys. Josh Engle, Edward Herbert, and Timothy Miller for the following defendants Thomas Charles, John Born, Paul Pride, James Hogan, Jake Pyles, David Stanton, Douglas Behringer, Cathy Brockman, Cullen Jackson, Gwen

Callender and the Ohio Fraternal Order of Police. On or about the

_3-22-23_____ 2023

Timothy Gales

710 Glendower Avenue

Columbus, Ohio 43207