Attachment

Award

1-25-19

DAVE Stanton

# CONTRACTUAL
## LABOR ARBITRATION PROCEEDINGS

| | |
|---|---|
| **IN THE MATTER OF** ) | |
| **ARBITRATION BETWEEN** ) | |
| ) | |
| ) | |
| **STATE OF OHIO,** ) | |
| **OHIO DEPARTMENT OF PUBLIC SAFETY,** ) | |
| **OHIO STATE HIGHWAY PATROL** ) | |
| ) | **DECISION IN** |
| ) | |
| **-AND-** ) | **EMPLOYMENT** |
| ) | **TERMINATION** |
| ) | |
| **FRATERNAL ORDER OF POLICE** ) | **ENFORCEMENT AGENT,** |
| **OHIO LABOR COUNCIL, INC., UNIT - 2** ) | **TIMOTHY GALES** |

| | |
|---|---|
| **CASE NO.:** | DPS 2018-01038-02; Timothy Gales; Grievant |
| **GRIEVANCE:** | The Grievance, as set forth in Joint-Exhibit 2, challenges the termination of Grievant, Timothy Gales, as lacking "Just Cause". |
| **AWARD:** | The Grievance is Denied. |
| **HEARING:** | September 10, 2018; Columbus, Ohio |
| **ARBITRATOR:** | David W. Stanton, Esq. |

## APPEARANCES

**FOR THE EMPLOYER**
Lieutenant Jake Pyles, OSP Advocate
Cassandra Brewster, Staff Lieutenant
Cullen Jackson, OCR 2nd Chair
Jim Hogan, DSP Legal
Samantha Shepherd, OSP-Intern
Chad Miller, Staff Lieutenant OSP
Katy Robson, Analyst

**FOR THE FOP/OLC**
Douglas J. Behringer, Attorney
Renee Engelbach, Paralegal
Curtis Handley, FOP Associate
Timothy Gales, Grievant

Joe Eckstein
Charles Linek III, Captain

## ADMINISTRATION

By email correspondence dated June 19, 2018, from the State of Ohio, Office of

Collective Bargaining, the undersigned was notified of his mutual selection to serve as

impartial Arbitrator to hear and decide the Termination Grievance, DPS 2018-01038-02,

of Enforcement Agent Timothy Gales, then in dispute between these Parties. On

September 10, 2018 at the State of Ohio, Office of Collective Bargaining, Columbus,

Ohio, an Arbitration Hearing was conducted wherein each Party was afforded a fair and

adequate opportunity to present testimonial and/or documentary evidence supportive of

positions advanced; and, where the Grievant appeared and testified. The evidentiary

record of this proceeding was closed upon the Arbitrator's receipt of each Party's Post-

Hearing Brief filed in accordance with the arrangements agreed to at the conclusion of

the presentation of evidence; and, subsequently modified by agreement between the

Parties. Accordingly, this matter is now ready for final disposition herein.

## GRIEVANCE AND QUESTION TO BE RESOLVED

The following Grievance, Joint-Exhibit 2, was filed on or about March 21, 2018,

and contains the subject matter for disposition herein as follows:

**GRIEVANT:**     Timothy Gales

**STATEMENT OF GRIEVANCE:**

The State was in violation of Article 9. There were several issues that were
improperly done and contrary to law and in violation of deferral law which is a
clear violation of article 18.01 and 18.02. Secondly, the State if seeking the truth
(sic) of the grievant could and should have employed a polygraph examine to
determine the truth if that was what they were seeking from the grievant in
violation Article 18.05. 18.06 the state had no just cause in this matter because the
grievant was not employed by the State and clearly in violation of Article 18.09.
Thirdly, the State is in violation of article 19.01 for removing grievant from his

current position as Enforcement Agent. In addition, there was no progressive discipline in violation of article 19.05. The State was in violation of Articles 20.01 and 20.09.

**RESOLUTION REQUESTED:**

Return the Grievant (Tim Gales) to his current position as Enforcement Agent in the Columbus District Office and restore all Back Pay, benefits, union dues, Public retirement deposit as required by PERS.

\* \* \* \* \*

The stipulated issue(s) for disposition by the Arbitrator is/are:

Was the Grievant terminated for just cause?
If not, what shall the remedy be?

## OHIO DEPARTMENT OF PUBLIC SAFETY
## WORK RULES

The following Work Rules served as the basis of the Grievant's Termination:

DPS 501.02(D)(1)- False Statements, Truthfulness

- An Employee shall not make any false statement, verbal or written, or false claims relating to the performance of, or fitness of duty

\* \* \* \* \*

DPS 501.01(W)(1)- Compliance to Orders

- An Employee shall immediately and completely carry out the lawful orders of a supervisor, or designated officer in charge, which pertain to the discharge of the employee's duties.

## FACTUAL BACKGROUND

The operative facts which gave rise to the filing of this Grievance, challenging the March 20, 2018 Employment Termination of Enforcement Agent, Timothy Gales, are, except where otherwise indicated, essentially undisputed. The State of Ohio, Department of Public Safety, hereinafter referred to as the "Employer", under the auspices of the Ohio State Highway Patrol, operates the Ohio Investigative Unit wherein the Grievant,

Timothy Gales served as an Enforcement Agent until his Termination. The Employer is party to a Collective Bargaining Agreement, Joint Exhibit -1, with the Fraternal Order of Police, Ohio Labor Council, Inc., Unit -2, hereinafter referred to as the "Union", which oversees the application and enforcement of the terms and conditions of employment as set forth therein. That Agreement affords the Employer the contractual right to effectuate Disciplinary Action, including Termination, for "Just Cause". It further contains a negotiated Grievance Procedure for the adjustment/resolution of such disputes arising at the workplace. This Arbitration arose from a Grievance filed on March 21, 2018 by the Grievant, Timothy Gales, based on his alleged violation of Ohio Department of Public Safety Work Rules: DPS-501.02 (D) (1) "False Statements, Truthfulness"; and/or, DPS 501-02 (W) (1) "Compliance to Orders".

By way of background, Grievant was terminated from the Ohio Investigative Unit in 2013. The Termination was grieved before Arbitrator E. William Lewis and the Award, dated November 24, 2014, provided that the Grievant be reinstated with certain specifications regarding back-pay due. The Employer filed a Motion to Vacate in the Franklin County Court of Common Pleas, wherein, he Court upheld the Decision of the Arbitrator; the Employer subsequently appealed. The Decision was affirmed and Grievant was reinstated to his former position May 15, 2017. Prior to the reinstatement of Grievant, during the appeals process, Katy Robson was hired by the Department of Public Safety, Human Resources ("DPS-HR"). She believed her former Employer, Allied Universal, had hired Grievant in the past, and upon hearing "office discussion" regarding the Grievant, she reported that information to her Supervisor, Joe Eckstein.

- 3 -

Grievant returned to work on May 15, 2018. Pursuant to the Arbitration Award, the Employer sought Grievant's earnings documents through the Union. The Union gathered the requisite documents from Grievant from the time he was terminated to calculate his back-pay and the appropriate offset amount. The Union provided various Tax and other Income documents concerning the Grievant. On May 31, 2017, Grievant contacted DPS-HR about his back-pay. Mr. Eckstein requested Grievant to confirm all his earnings from 2013-2017 and provided the afore-referenced Documents for verification. Grievant confirmed the accuracy of all of his income information via Email on June 5, 2017.

At the direction of DPS Chief of Staff, Mark Gibson, Mr. Eckstein checked with the Private Investigator Security Guard Services ("PISGS"), who license and regulate private security guards in the State, to confirm whether Grievant was employed by Allied Universal as was suggested by Ms. Robson. A photo provided by Allied Universal assisted Eckstein's verification the Grievant had in fact been employed there. Staff Lieutenant Chad Miller, in turn, contacted Allied to confirm the Grievant's employment. An audit of Allied Universal employment records revealed Grievant worked at Allied Universal from September 4, 2016 to May 1, 2017, working a total of 863.5 hours during that time at a rate of $14.60 per hour, totaling $12,607.10. This total only reflects the amount made during the Audit period and did not include possible earnings between February 3 through May 1, 2017.

By letter from Ohio Department of Public Safety Director, John Born, dated March 19, 2018, the Grievant was provided notification he was terminated arising from the issues surrounding undisclosed income earned at Allied Universal. During the course

- 4 -

of the Employer's Administrative Interviews/Investigation, it was determined the Grievant failed to disclose, and was dishonest about, these earnings both to his Employer as directed by Supervision in accordance with Arbitrator Lewis' Award; and, as set forth in his 2016-2017 Federal Income Tax Return(s).

The Grievant's Termination was met with a Grievance filed through the negotiated Grievance Procedure outlined in the Collective Bargaining Agreement, culminating in this Arbitration before the Undersigned. When the Parties' efforts to resolve this matter through the course thereof proved unsuccessful, the Employment Termination of Enforcement Agent Timothy Gales was appealed to Arbitration hereunder.

## CONTENTIONS OF THE PARTIES

### EMPLOYER CONTENTIONS

The Employer argues Grievant violated Work Rule DPS 501.02(D)(1). Grievant was a sworn Ohio Investigative Unit Enforcement Agent when the statements were made. A sworn Officer cannot perform his duties if they are acting dishonestly. The Employer reasonably expects Employees to be truthful as such essential for a sworn Officer as he is often before court, drafting Affidavits, and providing crucial information to his superiors. It is clear Grievant believed he did not have to provide any further information following the previous Arbitration decision and award regarding Back-pay. Regardless, Grievant was dishonest and he made a false statement to the Employer.

When Grievant was re-instated he provided numerous documents to the Union who in turn provided them to the Employer. These documents were listed in an Email to Grievant by Mr. Eckstein. The 2016 1040 Tax Return for Grievant provided to the Union

- 5 -

to assist in calculating his back-pay, did not include any earnings from Allied Universal. No other documents submitted by Grievant disclosed the earnings from Allied Universal. Grievant worked at Allied Universal until May 1, 2017 and stated he had provided all Tax documentation when requested by Mr. Eckstein. He submitted multiple forms reflecting his earnings from 2015 and 2016; however, these documents did not include any mention of Allied Universal. Only after the Employer discovered Grievant had been previously employed by Allied did Grievant claim, he did not have to provide that documentation. Grievant misled the Employer and tried to hide the truth of his employment. Grievant had an opportunity to provide the requisite documentation when Mr. Eckstein requested he confirm that all appropriate documentation had been provided; the Grievant refused. If Grievant was acting truthfully, he would have disputed the accuracy of his back-pay as it did not include his time and earnings at Allied Universal.

During his second interview, Grievant did not produce the documents his Supervisor ordered him to bring. Employees are required to comply with Administrative Investigations. When asked if the documents provided were accurate, Grievant stated they were his Federal Tax Returns and they were accurate. Grievant refused to answer the question twice more. Grievant knew the earnings from Allied Universal were not properly reported on his Tax Returns. During his interview, Grievant eventually stated his Returns were accurate as far as he knew. Both statements were untruthful. He had only just left the employ of Allied Universal on May 1st and had earned over $12,000.00. Lieutenant Miller tried to discuss Grievant's overall earnings on his reported 1040 and Grievant refused and quit cooperating entirely. Grievant ended the interview stating everything he had said was true to the best of his knowledge. This was a false statement.

Grievant presented information tending to show the 1040 was fully accurate and reflected complete reporting. He then confirmed the authenticity of the document on two (2) separate occasions. However, Grievant testified at the Hearing the 1040 provided was in fact not accurate. He claimed he amended his 1040 in July of 2017; however, the second interview with Lieutenant Miller where he made false statements regarding the submitted 1040 was in February of 2018. Grievant was dishonest here as he has been throughout this matter. The submitted 1040 could not be accurate as it did not reflect the earnings of Allied Universal, making this a false statement by Grievant.

Section 20.10 of the CBA provides strict guidelines regarding dishonesty. If dishonesty is found by the Arbitrator, then the disciplinary action taken cannot be modified. This language has been used strictly against Employees by other Arbitrators and should be enforced herein. The Arbitrator does not have discretion to modify the discipline if dishonesty is found.

Additionally, the Employer contends the Grievant violated Work Rule DPS 501.02(W)(1) regarding "Compliance to Orders". The investigation, testimony, and evidence presented during the Hearing all show Grievant violated the above-mentioned work rule. Grievant was aware the Employer requested correct Tax documents that adequately reflected wages earned at Allied. Had Grievant complied with the request and provided the requisite documents, the Termination would have never occurred. All employees of DPS are expected to follow the instructions of Management. Grievant was insubordinate and refused to follow Mr. Eckstein's requests.

Grievant's actions show an intent not to follow orders. Mr. Eckstein's Email request was clear and direct; he was following up with Grievant to assure that everything

- 7 -

necessary has been provided. Mr. Eckstein requested Grievant review the provided documents to assure all were present. Grievant testified he read said Email and he was aware Mr. Eckstein asked him to confirm all income from 2013-2017. Grievant confirmed he did not include information from Allied Universal, and he did not question or dispute the Email from Mr. Eckstein. Based upon Grievant's testimony and the evidence presented, it is clear Grievant knew of the information that Mr. Eckstein was missing and deliberately chose not to provide the same. A short time later, Grievant made the same choice again. Grievant clearly refused to follow a written request made by his supervisor.

On February 14, 2018, Staff Lieutenant Miller emailed Harry Love, Grievant's Supervisor. The email asked Mr. Love to inform Grievant of the need for a second interview. He was asked to provide employment and income information concerning Allied Universal, as well as, any other Employer in that time frame. Mr. Love relayed that information to Grievant. Grievant replied stating he had provided all required documents and he would not provide his Tax Returns. He also stated he had submitted the requested Tax Returns to the Agency through the Attorney General. This is untrue. At this point, Grievant had submitted Tax documentation but it did not reflect his Allied Universal earnings. This information was necessary to offset his back-pay as required by the prior Arbitration Award. Grievant was also requested to provide pay stubs from Allied Universal; to which he replied, he did not have them, and the Employer had effectively received that information already. This statement is untrue as well.

He did not provide his original 2016-2017 1040 Tax Return to anyone or bring it to his interview. The only Tax records Grievant had at this point came from the Union,

not Grievant. Employer did not have any version of his earnings from Allied Universal at this time. The Employer was not able to calculate the required back-pay due to not having any employment information provided by Grievant. Grievant refused to provide the pay stubs from Allied Universal. He claims he did not have them but also offered no evidence of his attempts to get them or any evidence of his earnings with Allied Universal. Grievant, simply, did not want to cooperate. He intentionally refused to follow the directions of the Employer to provide documentation concerning his earnings between 2013-2017; his intent in relation thereto, notwithstanding.

During his interview he provided multiple reasons why he chose not to provide the requested information. He initially stated the Employer did not have the right to request information from 2017. He then stated the Employer had all the information it was entitled to have. He did not dispute the Employer had the right to his 2017 payment information until the Investigation began. The Union did not reach out to the Employer about these concerns either. Grievant chose to refuse to cooperate instead. He made baseless allegations throughout the Investigation. He implied he withheld the Allied Universal information because the Employer owed him $24,000.00. Yet, Grievant did not file a Grievance concerning this amount or have the Union speak for him regarding this. The Grievant's argument is not evidence and does not void his requirement to comply with Orders. During the second interview, Grievant gave another reason for not providing the requesting earnings information to the Employer. He acknowledged there were no specific dates in the previous Arbitration ruling; suggesting the Grievant made-up the reasons for withholding the Allied Universal information. As the Employer never received a 1040 with the Allied Universal information, they were forced to question

Grievant about the 1040 they did receive. Grievant stated the Employer was not entitled to information concerning his Tax Returns – he was wrong.

Grievant's argument the Tax Returns were private, and the Employer did not have the right to request them is incorrect. He provides no evidence of the same. Why would Grievant provide the information initially and then claim they were privileged at a later date? They are only private because they do not include his earnings from Allied Universal. He never attempted to provide that earning information to the Employer. Grievant had multiple chances to do so but refused. Grievant stated he was not going to provide the information regardless. This is a pattern of deliberate, misleading and untruthful behavior. It was these behaviors that led to his termination.

Throughout the Investigation and Hearing, Grievant continued to state he did not have to provide any earnings documents after the Arbitration Award issued in 2014. It is unclear what Grievant believes as he has provided some, but not all, of his earnings documents. Regardless, it does not absolve Grievant's duty to mitigate his back-pay by providing documentation of outside compensation. Grievant claims the Employer owed back-pay from the November 24, 2014 Award date until his reinstatement, and yet, he also claimed he had no duty to mitigate his loss and the Employer was barred from deducting outside compensation through that same period.

It is commonly accepted that outside earnings are properly deducted from back-pay. The Employer does not dispute the Grievant was entitled back-pay until his reinstatement; it was within its right to ask that the Grievant mitigate at the same time. This is done through requesting Grievant's Income documentation. The Grievant's assertion that he did not have to provide the information was incorrect. The Grievant was

incorrect to take it upon himself and refuse to provide the same. He could have grieved the request; instead, he was dishonest, refused to comply with Orders, and intentionally ignored his duty to mitigate. Grievant testified he and Union Representatives disagreed on the Arbitrator's Award. The Union advised Grievant he would not receive his back-pay without the earnings information provided. Grievant does not have to comply with the Union, but he does have to follow and comply with Orders; and, he cannot give false statements about prior Employers. If Grievant truly believed he did not have to provide this information, he had multiple avenues to resolve the situation unlike how he did.

The usual process of addressing issues an Employee has with Orders given by the Employer, is to file a Grievance. He could have told Mr. Eckstein he did not believe he was entitled to the information; and, he could have had the Union discuss the issue with the Employer. Lastly, the Grievant could have cooperated with the request and grieve the issue later. He should have supplied the information requested and then file a Grievance. It is common for Arbitrators to find "self-help" actions are not accepted and using the Grievance Procedure is the appropriate avenue to resolving an employment dispute. Grievant, as a sworn law enforcement Officer, should understand this procedure. Grievant had a duty to comply with the request of the Employer to provide the information from Allied Universal. He could have then grieved the request.

Grievant's argument represent multiple after-the-fact theories to explain his conduct. Grievant was confronted with the fact the 1040 Return he submitted to the Union was inaccurate. He concedes the same but then tries to legitimize his actions with multiple unpersuasive claims. He testified he filed an amended 1040 on July 5, 2017 that included the Allied Universal income. If accurate, the Union would have provided a copy

as evidence in the present claim. If the "amended" 1040 does exist, it only proves Grievant refused to cooperate and made inaccurate statements about his Allied earnings. He claims he found a W-2 from Allied Universal and it reminded him he worked there for approximately 6 months and received at least $12,000. More likely, Grievant learned the Employer knew about his prior employment and knew the 1040 submitted did not include those earnings. Even if his testimony is true, he still did not provide the income documentation as requested.

In Grievant's second interview, he testified the 1040 provided to the Employer was accurate. If the 1040 was accurate at that time, he would not have needed to subsequently amend it later. Grievant testified he submitted the amended 1040 in July 2017, but the second interview did not occur until February 2018. If the amended 1040 existed after July 2017 as Grievant claims, then he withheld the same from the Employer through his Termination in March 2018. Grievant told the Employer the initial 1040 provided was accurate during his second interview. If the amended 1040 exists, then it only proves and bolsters the dishonesty of Grievant.

The Employer's next argument concerns Grievant' actions in regard to the Union and its representation. The Union claimed that the Employer cut out the Union when trying to gather documents about Grievant's back pay. This is not true. The Employer emailed a representative of the Union on May 2, 2017 regarding the requested documentation. The emails directly to the Grievant were covered thoroughly in the investigation. Grievant initiated that correspondence and did not include the Union in the email initially. Mr. Eckstein simply responded to an email. Grievant excluded the Union in this case.

During Grievant's initial interview, a Union representative was not present. Employer asked if Grievant would like to postpone and the Grievant declined to reschedule and stated that he wished to continue without a Union representative present. The Employer even encouraged Grievant to contact the Union at one point. Through Mr. Eckstein's career he testified that using tax documents to figure back pay was entirely routine. He also testified that Grievant's information was not used in any different way than usual. Grievant and Union's claim that the Union was cut out by the Employer is meritless and irrelevant to the current issue. The Employer cannot be blamed for the strained relationship between Grievant and the Union.

With respect to the alleged money owed to Grievant through his back-pay award, the Grievant claimed the Employer owed him $24,000.00 and he was going to "let it go". The Union and Grievant restated this claim at the Hearing. To date, neither has taken any action regarding the allegation. If Grievant truly believes there is money owed to him, why would he not pursue it. Grievant testified he has not been in contact with anyone about the baseless claim. The only evidence offered to show money owed was offered by the Employer. It was proven that Grievant worked 863.5 hours at Allied Universal and, as such, was overpaid in back-pay by at least $12,600.00 since the Employer was unable to verify the full period of employment for Grievant at Allied Universal. This is why the Employer sought the requested income documents.

The evidence of record clearly demonstrates Grievant violated DPS Work Rules 501.02(D)(1) and Rule 501.02(W)(1). He made intentional choices through the Investigation; he refused to participate in the Investigation; he chose to make untrue statements; and, he chose to refuse to participate. The Employer requested all documents

- 13 -

from 2013-2017. The Email correspondence reflects that request; however, he chose not to provide the documentation and refused to participate or raise any concerns to the Employer or the Union. Just because an Employee believes they are right, does not mean they can choose to refuse to comply with an Order – especially in law enforcement. Grievant should have obeyed the Order and grieved the issue later. The Grievant's own Union told him to comply and he still refused. Grievant also had a chance to mitigate when he was told to provide his pay stubs from Allied Universal. Grievant replied by saying that his Tax Return information was private. He then stated the initial 1040 he provided was accurate, but required he file an amended 1040 months prior to the interview. The Grievant made multiple choices to be defiant, misleading, and dishonest.

Union and Grievant both made allegations stated as fact without any evidence backing the same. The evidence provided by the Employer contradict these claims. The Grievant and Union tried to obfuscate the truth with irrelevant side issues, but the material fact remains: Grievant was dishonest, refused to comply with Orders from his Supervisor, and misled the Employer throughout the Investigation. Once the Employer proves dishonesty, the Arbitrator does not have the authority to modify the discipline imposed. The discipline was not arbitrary, capricious, or discriminatory. Grievant was dishonest, misleading, and refused to provide requested documents to the Employer.

For these reasons, the Employer requests the Grievance be denied.

## UNION CONTENTIONS

The Union contends the Grievant did not violate DPS 501.02(D)(1) concerning the Employer's claim Grievant falsely reported his income after his reinstatement. This charge is based upon the reluctance of Grievant to provide income information from

Allied Universal. Grievant does not deny he had worked there; however, he does deny he falsely reported information to the Employer in relation thereto. He made no false statements, verbal or written, to the Employer. The Employer is pushing the narrative Grievant was dishonest, because without that accusation, the Employer has no case. Grievant had never been untruthful about what he believed the Employer needed to calculate his back-pay. He might have been incorrect as to the necessary documents, but he did not lie. Grievant believed then, and believes now, the money earned at Allied Universal was no different from any other Employee who worked a second job, and that he did not need to disclose to the Employer.

Following the Arbitration Award of 2014, Grievant was to return to work at the same position he held before discharge. Had the Employer followed that ruling, Grievant would have returned to work in November or December of 2014. Grievant believed his official reinstatement date was November 24, 2014. When the Employer requested documents for back-pay, Grievant believed the documents needed were from his termination to November 24, 2014. He did not believe any other earnings were necessary.

The Employer has been trying to terminate Grievant for many years, appealing the previous Arbitration Decision through the Ohio Court system. Following the Appeal, the Employer reinstated Grievant pursuant to the Arbitration Award. At that time, a Representative of the Union discussed the issue of calculating back-pay with Grievant. Grievant claimed the Representative insisted on providing more documents than Grievant believed necessary. Grievant followed the instructions and provided those documents. Grievant is not an Attorney or employed by the Union. He does not have the knowledge and experience of a Union Representative concerning back-pay. The Union first provided

the documentation to the Employer, not the Grievant. The Employer should have contacted the Union about any issues regarding the materials provided initially, not the Grievant. The Employer instead "cut out" the Union and approached Grievant directly. The Employer knew about Grievant's employment at Allied Universal as early as February 2, 2017. The Employer contacted the Grievant directly about his documentation in spite of, or due to, that knowledge.

The Employer claims Grievant's answers to their first inquiry were dishonest. The Employer also claims Grievant failed to notify them when he disagreed to their interpretation of the necessary documentation they requested. Grievant has insisted consistently the only earnings due were those he received prior to November 24, 2014. Grievant replied to the Employer's Email stating he attached all of the Documents he submitted to the Email the Employer sent. Mr. Eckstein admitted this was the first time he has handled back-pay after an appellate process, and he agreed the Arbitrator could only rule upon what he knew at the time of the Award. The ruling bases the reinstatement upon a November 24, 2014 date, and Grievant relied upon this date. Grievant did not affirm or deny the earnings from Allied Universal; as he did not believe it was relevant to the date of the Award.

During the Investigation, Grievant reported there was nothing requiring him to disclose where he worked during the time in question. He was not trying to hide anything, he just did not believe that was information he was required to turn over. Grievant has not changed his position regarding the same. He currently believes he does not have to provide the Employer any information of his income following the November 24, 2014 date. Testimony given by Charles Linek supports the position of the Union

concerning how this issue should have been addressed. The Employer was aware of the identity of the Union Representative. Mr. Linek agreed the Employer should have approached the Union Representative if there were any questions about Grievant's back-pay. He also stated the legal conclusions of Grievant were incorrect, not that Grievant had lied. Mr. Linek acknowledged Grievant could have been mistaken about the required documentation and the Employer could have contacted the Union for clarification. It could have gone back to the Arbitrator to seek clarification; however, the Employer did neither. The Employer's goal was to fire Grievant.

It is clear Grievant did not lie. The Hearing Officer at Step 2 of the Grievance concluded Grievant had to supply records of his earnings from the period of his discharge. That is only the opinion of the Hearing Officer and the Award does not state the same. There is no period of time set forth in the Award. As such, Grievant has a different interpretation regarding the information he was to provide the Employer.

Additionally, the Union argues Grievant did not violated DPS 501.02(W)(1). Whereas the Employer claims Grievant failed to provide verification of income when requested, the Employer should have contacted a Union Representative instead of contacting Grievant directly. Regardless, Grievant did not fail to provide verification of income. He provided multiple documents and when prompted by the Union, provided more. The Employer stated Grievant provided more documentation than necessary, such as OPERS documentation. The only documents missing were the documents Grievant felt he did not have to provide. Grievant believes he does not have to provide that documentation.

- 17 -

The Union submits Grievant was not fired for dishonesty or non-compliance of orders; rather, Grievant was fired due to a long-standing vendetta against him. This is shown by the Employer's Appeal of the 2014 Arbitration Award. This Case has nothing to do with Grievant's work performance and the Employer has never denied he is a good Enforcement Agent. Grievant's conduct does not negatively affect his ability to perform in his position nor does it negatively affect the ability of the Employer to function properly. He has not been charged with any crime that would create a conflict of interest for Grievant. He did not lie under oath. The Employer was just unhappy with the 2014 Arbitration Decision requiring his return to work with back-pay.

The Employer was aware of Grievant's income from Allied Universal before they ever contacted Grievant and yet, the Employer never directly discussed Allied with Grievant. A follow-up would have clarified the misunderstanding. The Employer was not looking for the truth; it was only interested in manufacturing dishonesty to justify Termination. The Employer admitted it readily paid money to Grievant to which it believes he is not entitled. They were aware Grievant had worked at Allied Universal before making that payment. Making a mistake does not constitute dishonesty.

The Employer hired Ms. Robson in January 2017 and she claims she hired Grievant at Allied Universal. However, it appears the Branch Manager hired Grievant. Ms. Robson testified Grievant had lied to her before - during the interview process for Allied. She testified Grievant claimed he left DPS because he did not receive a promotion. Most who apply for a new position will inflate their work history and avoid discussing prior terminations. However, Ms. Robson told Mr. Eckstein Grievant admitted he was fired from DPS during his interview at Allied Universal. Ms. Robson's testimony

is contradictory with respect to this statement. There is no evidence of dishonesty by Grievant. He did most likely misunderstand the requirements of the back-pay documentation; however, such does not equate to dishonesty. The Employer requested Grievant's Tax Documents, which the Grievant admitted needed amending. If there was purported fraud, then the IRS would investigate. There was no attempt at deception by Grievant. He simply believed the Employer was not entitled to the records past November 2014.

Employer failed to return all money due to Grievant. Grievant had to fight to receive the money due for his OPERS contributions and he has not received the interest ordered by the Court. Even if Grievant repaid the money the Employer claims he earned from Allied Universal, the Employer would still owe Grievant.

Moreover, the Union articulates the Employer failed to follow the progressive discipline policy in the CBA and terminated Grievant without just cause. Article 19.05 of the CBA requires the Employer follow the principles of progressive discipline. The Employer had several options of discipline instead of Termination. Grievant had 21 years of service with the Employer and no discipline in his Personnel File. Immediate Termination violates the progressive discipline policy. While the CBA permits the Employer the right to use more serious discipline; such only applies when the actions of Employees constitute serious misconduct. The Employer made no attempt to prove Grievant was guilty of serious misconduct justifying departure from the progressive discipline policy. The alleged conduct does not fall under serious misconduct, so the Employer is alleging Grievant was dishonest to justify his termination. The Employer has

not shown Grievant to be dishonest; it has demonstrated Grievant had a different opinion regarding necessary documentation to prove back-pay.

The Employer has the burden to substantiate the discipline in this case was justified; a burden it did not meet. The Employer was not able to prove just cause for the discipline imposed nor why the progressive discipline standard was inapplicable. Evidence supporting both is required by the CBA and is entirely lacking here. The Employer was aware it had violated the contractual requirement of progressive discipline. Just cause entitles Grievant to specific protections related to fairness in disciplinary situations. The Employer cannot discipline on a whim. The discipline carried out must be relative to the offense. The discipline here is disproportionate to the alleged offense for an Employee with over 20 years of service. The burden to establish just cause falls with the Employer and the Employer failed to meet this burden.

Contrary to the Employer's assertion, the Arbitrator has the power and duty to determine the reasonableness of the discipline imposed. Grievant was truthful and he complied with the Employer's requests to the best of his knowledge. If the Employer had any questions regarding the documents it had received to determine back-pay, the Employer could have contacted a Union Representative. If the parties were unable to clarify the appropriate documents, the matter should have gone back to the 2014 Arbitrator for clarification. Instead, the Employer terminated Grievant.

Since the Employer failed to establish just cause for any discipline in this case, the Grievance should be sustained. The Union respectfully requests the Arbitrator sustain the Grievance; order the Employer to return the Grievant to his former position; and,

make the Grievant whole including any back-pay and benefits that would be due and proper.

## DISCUSSION AND FINDINGS

The disposition of this matter hinges upon the determination of whether the Employer has established "Just Cause" as required under Article 19, titled, "Disciplinary Procedure", Section 19.01, titled, "Standard", of the Parties' Collective Bargaining Agreement for the allegations raised against Enforcement Agent, Timothy Gales concerning documentation requested by the Employer for the computation of back-pay pursuant to a previous Arbitration Decision reinstating the Grievant.

The Employer insists it obtained information wherein Grievant willfully and/or deliberately provided inaccurate or incomplete documentation related to earnings during the timeframe he was not employed with the Division subject to the back-pay computation. The Grievant, as the record demonstrates, was terminated in March 2013 and reinstated in May of 2017 following various Appeals of the Arbitration Award. During that timeframe it made numerous requests both verbally and in writing to the Grievant to provide the necessary, complete documentation for purposes of set offs based on the back-pay liability resulting from his return to work. Inasmuch as the Grievant either failed to provide accurate information and refused to do so on numerous occasions and asserted that provided was "complete and accurate", the Employer was left with but one decision -to effectuate termination.

The Union insists the Grievant has been the subject of efforts by the Employer to be removed and this time the basis for his Termination is simply unsupported by the evidentiary record. The Grievant does not deny he had worked at Allied Universal; he

does deny he failed to report that information to the Employer. He insists he made no false statements, verbal or written, and there is no evidence to suggest he was dishonest. He was never untruthful about what he believed the Employer required to calculate his back-pay. While he may have been incorrect as to what the necessary documentation consisted of, he was not untruthful. He was of the opinion the money earned at Allied Universal was no different from any other Employee who worked a second job, and such was not necessary to disclose to the Employer. At no time did he deliberately engage in false and/or misleading statements to the Employer during its inquiries to provide the documentation it was seeking.

The Union insists the Grievant is not an Attorney or an Employee of the Union and does not possess the knowledge and/or experience of Union Representatives concerning back-pay calculations. Had the Employer required additional documentation, the Employer should have contacted the Union, who represents the Grievant, about any unresolved issues regarding the documentation initially provided and whatever subsequent documentation it required. The Employer instead cut the Union out of its endeavors and dealt directly with the Grievant. The Union emphasizes that not only was the Grievant unaware of what was required with respect to the calculation of ordered back-pay and the concept of setoff in relation thereto, Mr. Eckstein testified it was his first occasion to address the calculation of back-pay.

The Union insists the Grievant was not trying to evade the request or mislead the Employer. He simply believed the monies earned at Allied Universal were nothing more than any other Employee who works a second job and therefore would not be subject to the monies owed to him by the Employer herein. He was not untruthful and did not in

any way mislead or deceive the Employer based on its request. He, in good faith, believed the information retarding Allied Universal was simply unnecessary with respect to the calculation of back-pay owed him, and ordered by the Arbitrator, as it pertained to his employment with the Ohio Investigative Unit, Columbus District.

The Parties' Collective Bargaining Agreement, under which the Arbitrator's authority is conferred, recognizes the requirement of Just Cause to effectuate disciplinary action. Based thereon, and the time-honored principles of Just Cause, the Employer is required to establish the Grievant was guilty of wrongdoing which served as the basis for the imposition of disciplinary action and the imposition thereof was commensurate with the nature of the infraction committed. In this particular matter, the Grievant has been charged with the alleged violation of two (2) Department Work Rules which served as the basis of his termination. The first is DPS 501.02(D)(1) – "False Statements, Truthfulness", wherein that mandate states: "[a]n Employee shall not make any false statement, verbal or written, or false claims relating to the performance of or fitness of duty." Additionally, he was charged with violation of DPS 501.01(W)(1) – "Compliance to Orders", which states, "[a]n Employee shall immediately and completely carry out the lawful orders of a Supervisor, or designated Officer in charge, which pertained to the discharge of the Employee's duties".

As previously indicated, the Grievant served as an Enforcement Agent with the Ohio Investigative Unit, the Columbus District, and has done so for approximately 20 years. The evidence of record demonstrates the Grievant has not experienced disciplinary action except for the 2013 Termination of employment which served as the basis for the calculation of back-pay owed him as awarded by Arbitrator Lewis in relation

thereto. He was terminated by the division in March 2013; ordered to be reinstated via that Award dated November 24, 2014; and, returned to work in May 2017. Given the delays, the Arbitration Award being rendered and being subject to Appeals, he was not returned to Employment with the Division until May 2017.

The Arbitration Award required the Grievant "…to supply records of *all* receipts for wage earnings…", as well as, "unemployment compensation if any", which is indeed consistent with the majority view with respect the mitigation of wages lost. The implicit presumption suggests such be accurate and complete. The Arbitration Award is tantamount to an Order from a Judge and mandates each Party to comply with the directives contained therein. Those amounts would indeed reduce the amount of back-pay required to be paid by the Division on behalf of the Grievant and pursuant to the Award. During the course of an email exchange with the Grievant, on or about June 2, 2017, Director of Human Resources for the Department of Public Safety, Joe Eckstein, asked him to confirm the list of employment he had for the time period in question - 2013-2017. The Grievant confirmed the list depicting his employment for the time period in question; however, he failed to disclose employment with Allied Universal. As the record demonstrates he provided security services for that organization for which he received $14.60 per hour.

The Union would have the Arbitrator conclude the Grievant simply misunderstood what was required with respect to the calculation of the back-pay ordered by Arbitrator Lewis. The Union, as the Grievant's Collective Bargaining Agent and well versed in these matters, indicated to him such, as requested, would be required in order for him to "get his money." Whatever assertions the Grievant has raised with respect to

- 24 -

possibly misunderstanding the scope and breadth of the time-frames involved for the calculation of back-pay could have been easily rectified by addressing such with his Collective Bargaining Agent; FOP Staff Representative and/or, General Counsel, Douglas J. Behringer.  However, the record demonstrates that whatever the Union obtained from the Grievant did not include the necessary information from Allied Universal.  The record demonstrates Grievant did in fact work at Allied Universal from September 24, 2016 through May 1, 2017.  He earned $14.60 per hour.  He failed to provide that information and as the record demonstrates, he failed to include these earnings on his 1040 Federal Tax Returns. The record demonstrates he had to amend those Returns.

From the outset, it must be recognized the Grievant's obligation as a sworn Ohio Investigative Unit, Enforcement Agent, requires the complete and forthcoming truthfulness of any Officer in his capacity.  The Employer rightfully can expect sworn Officers to tell the truth and act in a forthcoming manner which bolsters one's credibility as they are often times required to testify in Court wherein, they must swear to the accuracy of Affidavits and relay crucial operational information.  While indeed the Grievant provided numerous documentation to the FOP, which in turn provided such to the Employer to calculate back-pay, the Grievant failed to provide an exclusive list of that needed to calculate his *complete* earnings to offset his back-pay. The record is void of any evidence suggesting he worked at Allied as "a second job" as he asserts as the basis for not including such to the Employer. The Grievant's willful and deliberate omissions, and refused production, of ordered Documentation – both by his Superiors and Arbitrator Lewis – coupled with manufactured excuses for non-compliance, do absolutely

nothing to mitigate or temper his conduct or his assertions he "misunderstood" and/or "had a different interpretation" regarding his obligations under the Award. He failed to heed the representational advice of his Collective Bargaining Agent for which he has no one to blame but himself.

Neither his 2016 1040 Federal Tax Return, or any of the documentation provided by him through the FOP, disclosed the earnings from Allied Universal. It is simply implausible to conclude the Grievant failed to recall that timeframe, those earnings, and/or his employment with Allied Universal and was only reminded of same when the W-2 from that organization fell from the top of his refrigerator. Throughout the interview process concerning these matters, the Grievant insisted his Tax records were private which is evident in his statements taken from the interview wherein he indicated, "...whatever I gave you is accurate as far as I know and whatever is on my 1040 is between me and the lamp post". It is simply implausible to conclude the Grievant, as he asserts, was unaware of, or could not recall, his earnings at Allied Universal. In his second interview with Staff Lieutenant Miller in February 2018, he indicated he amended his 1040 to include those earnings thereby rendering impossible the accuracy of the original 2016 1040 Federal Tax Return the Grievant previously insisted was accurate and complete. Such did not include the Allied Universal earnings.

Additionally, with respect to the Grievant's non-compliance to orders to provide the necessary documentation to compute the back-pay owed him; the inaccurate Federal Tax Return, and the amended Tax Return for the same year(s) in question, not to mention the assertions made by him such was "all he had", the email from Mr. Eckstein requested him to confirm *all* income for the timeframe in question. Based on this evidentiary

- 26 -

record, the Grievant did not. Indeed, it must be reiterated the evidence of record simply does not lend to the conclusion he was unaware of, or inadvertently omitted, the earnings at Allied Universal on his Tax Return(s). His conduct unfortunately suggests his actions were calculated and deliberate.

As previously indicated, the calculation of back-pay is to be demonstrated and supported by the individual affected, i.e., the reinstated Employee who must take affirmative steps to provide any and all documentation, as ordered, to validate and corroborate income earned at a time when Employment was not continuous with his former Employer. In this situation, he was terminated, Arbitrator Lewis ruled he be reinstated. The Employer sought to vacate the Award that was denied by the Court of Common Pleas. The Employer chose to appeal that decision to the Court of Appeals which upheld the Arbitrator's Award. During this process, **from the date of his termination until the date of his reinstatement**, he had a time period of approximately 4 years, i.e., approximately 2013-2017, which would be subject to back-pay calculations and offsets for which he was ordered to substantiate - he did not and what he provided did not reflect "...all receipts for wage earnings..." as ordered by Arbitrator Lewis and his Employer. What he asserted was "accurate" simply were not and prove to be the basis for his demise.

It is the Grievant's, the reinstated Employee's, "ordered" and affirmative obligation to provide any and all documentation necessary to assist the Employer with calculation of back-pay and, more importantly, it is the Grievant, the reinstated Employee's affirmative obligation to mitigate his loss. While the Grievant asserts the Allied Universal income was "secondary income" not subject to the calculation of back-

pay by his primary Employer, that income existed at the time when the Grievant was terminated from his employment. Again, there is no evidence the Grievant worked at Allied prior to his Termination to corroborate his claim such was secondary employment.

His misunderstanding, if you will, with respect to the timeframe being limited from the date of Termination until the date of the Arbitration Award, is misplaced. The affected, aggrieved and reinstated Employee continues to be afforded back-pay considerations until such time he is returned to work; whenever that may be. To state another way, the period of the time the Grievant was terminated until such time he was returned to work, is the timeframe in which the obligation, the affirmative obligation to provide whatever documentation to substantiate earnings, whether via another Employer and/or Unemployment Compensation, must be established and provided; otherwise, the Grievant forfeits the opportunity to receive those earnings that are not substantiated. He would be in violation of the "Order" issued by the Arbitrator, i.e., the "Judge" in the employment realm.

Based on the totality of this evidence as presented, the actions of the Grievant run inconsistent with an individual who is committed to truthfulness and compliance to direct orders. The Grievant herein is a victim of his own demise. He had every opportunity to comply with the Employer's requests and for whatever reason chose to charter his own path inconsistent with that recommended by his Collective Bargaining Agent; and, as such, he can only blame himself for the circumstances that currently exist. This evidentiary record establishes for whatever reasons the Grievant was untruthful regarding his employment/income record-keeping and was non-compliant with the directives of the Employer, via the Arbitration Award, to provide such for proper back-pay

compensation/calculation which are routinely subject to setoffs. Accordingly, the record supports the Grievant's removal - Termination of Employment - and the actions of the Employer herein have found to have been for Just Cause as required in the Collective Bargaining Agreement. As such, the Grievance must be, and therefore is, denied.


### AWARD

The Grievance is Denied.


*David W. Stanton*

David W. Stanton, Esquire
NAA Arbitrator

January 25, 2019
Cincinnati, Ohio

Attachment

Authorities

Private citizen

v

# TABLE OF AUTHORITIES

## CASES

*AT&T Techs., Inc. v. Commc'ns Workers,*
 475 U.S. 643 (1986)......................................

*Arrowood Indem. Co. v. Equitas Ins. Ltd.,*
 No. 13cv7680 (DLC), 2015 WL 4597543
 (S.D.N.Y. July 30, 2015) ....................

*Citigroup, Inc. v. Abu Dhabi Inv. Auth.,*
 776 F.3d 126 (2d Cir. 2015) ....................

*Corey v. N.Y. Stock Exch.,* 691 F.2d 1205
 (6th Cir. 1982) ............ ..............................

*Credit Suisse AG v. Graham,* __ F. Supp. 3d __,
 No. 21-cv-951 (LJL), 2021 WL 1315812
 (S.D.N.Y. 2021).............. .......... .....................

*Decker v. Merrill Lynch, Pierce, Fenner & Smith,
 Inc.,* 205 F.3d 906 (6th Cir. 2000)......16, 18, 21,

*First Options of Chicago, Inc. v. Kaplan,* 514 U.S.
 938 (1995)...... .......... ............ .... ... ...

*Hall St. Assocs., L.L.C. v. Mattel, Inc.,*
 552 U.S. 576 (2008)............ . ..... ...

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
 139 S. Ct. 524 (2019) ....... ... ............ .. ..

*John Hancock Mut. Life Ins. Co. v. Olick,*
 151 F.3d 132 (3d Cir. 1998) ... ...... ... ..

*Maryland v. Baltimore Radio Show,* 338 U.S. 912
 (1950)..... ......... ........ .......... ...... ....

*Prudential Sec. Inc. v. Hornsby,* 865 F. Supp. 447
 (N.D. Ill. 1994) ......... .................... ....................

vi

STATUTES

9 U.S.C. § 9...................................................................

9 U.S.C. § 10.................................................................

9 U.S.C. § 11.................................................................

9 U.S.C. § 12.................................................................

9 U.S.C. § 13.............................................................. 5