to past the test, and as a result of passing the exam a second time. the plaintiff earned the right to attend the next step in the process called the (ASSESSMENT CENTER). To the disappointment of Thomas P. Charles who was adamant the plaintiff would not return to supervision with DPS.

56. August 2012, Thomas Charles called all agents around the state to a staff meeting at DPS. Thomas Charles talked about his time with Inspector General Office and how complaints came to him all the time for investigations. Thomas Charles then told agents not to file any complaints outside the agency. Thomas Charles advised agents that if a complaint was filed, he would find out and it may not be good for the agent who had filed the complaint. Thomas Charles, left the agents feeling intimidated at the conclusion of the staff meeting which was to bring attention to all agents about complaints be filed anonymously against his department.

57. September 7, 2012, the plaintiff attended a promotional assessment center at the Ohio Department of Public Safety. The Assessment Center was put on by the Ohio Chief of Police Association. Agents who were attending the Assessment were told by a member of the Ohio police of Chief association that, he had heard the Assessment Center put on by the agency in 2010, a few agents had fallen through the cracks. He assured agents in attendance that would not occur this time around.

58.At the conclusion of the assessment center, the plaintiff (Timothy Gales) was asked to stay back by Deputy Director, Richard Cologie. The Plaintiff was advised that he was ordered to return all of his agency issued equipment to include car, badge, and gun, per Director Thomas

Charles placing the plaintiff on administrative leave. Richard Cologie transported the plaintiff home, without informing the plaintiff the nature of the investigation.

59. October 2012, Thomas Charles called a meeting at the state highway patrol academy with all agents from around the state. At the meeting agents reported to this plaintiff the narrative of Thomas Charles. Thomas Charles pointed out to the agents that the plaintiff had been placed on administrative leave and was under a criminal investigation. Thomas Charles, pointed at the Columbus District where the plaintiff was employed. Was the district office causing the most problems with complaints with EEOC.

60. Thomas Charles assured the agents at the meeting that the plaintiff (Timothy Gales) wouldn't survive the investigation conducted by his good buddies at the Ohio State Patrol. And will never be an enforcement agent ever again. This was stated by Thomas Charles and Paul Pride who went on to say that the plaintiff was a cancer to the agency and that the patrol knew how to get rid of cancer employees.

61. Thomas Charles approached Mike Smith, an agent assigned to the Columbus District same as the plaintiff assignment. Thomas Charles asked Agent Smith: How does it feel now that I have gotten rid of your problem at the district office. (Meaning the plaintiff). Mike Smith, responded by saying well! you need to do more of it.

62. February 3, 2013, Thomas P. Charles through the agency human resource department required the plaintiff to report to the DPS Human Resource Department. Upon arrival, the plaintiff was met by a male associate. The plaintiff was advised that he had been indicted by the Franklin County Grand Jury as a result of an investigation spearheaded

OSP superintendent John Born. However, the associate refused to tell the plaintiff the nature of the indictment. He simply stated we are taking you off paid administrative leave and placing you on unpaid leave.

63. March, 20, 2013, Thomas Charles, Director of Public Safety, terminated the Plaintiff from his employment with the Ohio Investigative Unit. based on a trumped up felony 5 theft indictment presented by a rogue and dishonest trooper, based on an alleged unlawful vehicle transfer to a private associate, and the transfer was not on state property. It was on private property. The investigation conducted by a trooper at the Ohio State Patrol, who had been given her marching orders by John Born to come up with any criminal violation against the plaintiff to support a termination for Thomas P. Charles.

64. April 2013, the plaintiff wrote a letter to then Governor John Kasich. In the letter, the plaintiff outlined how Thomas P. Charles came in as director and immediately began attacking black employees in the investigative unit, either firing them, or forcing the black employees to retire or resign. The plaintiff also complained that Thomas Charles had removed blacks from more desirable positions in (OIU) and placed the black agents and black supervisors in less desirable positions. The plaintiff accused Thomas Charles of blatant racism toward black employees. Early June 2014, Thomas P. Charles was asked to resign as director of public safety. A former OSP Lt. Colonel, who worked directly with Thomas Charles, stated to others, that He would never mistreat anyone and lose his job like Thomas Charles just had done to an agent. I believe, that the Lt.

65. During the time period of April 2013 until February 2014 the plaintiff was fighting criminal charges in both Common Pleas Court and Municipal Court as a result of John Born and Thomas Charles, allowing a OSP trooper to misrepresent facts in order to bring the criminal charges against the plaintiff. Then June 2014, Thomas P. Charles was asked to resign his position as Director of Ohio Department of Public Safety.

66. It was well known that the plaintiff was behind the letter to Gov. Kasich whereas the plaintiff was told that Thomas Charles would retaliate for filing the complaint which required him to resign. "THE PLAINTIFF BECAME A WANTED MAN BY THE DEFENDANTS Charles and, Born." for fighting against racism in the agency which cost Thomas Charles his position as director for DPS.

36. However, Thomas Charles recommended to Gov. Kasich that John Born should replace him as Director of Public Safety. The Governor then appoints John Born Director June 2014. While Thomas Charles continued to be seen at DPS and the Ohio State Highway Patrol for next 4 years, and, in the company of John Born and Paul Pride. Thomas Charles was sure with the selection of John Born his desire to discriminate and caused the plaintiff harm would indeed be carried out by John Born.

68. February 6, 2014, the plaintiff (Timothy Gales) was brought to trial in the Franklin County Common Pleas Court, on charges of theft of the fifth degree. The plaintiff reached out to the fraternal order of police for help with legal representation but was denied by Paul Cox and, Douglas Behringer each who were hoping for a conviction to forgo an arbitration the plaintiff was found not guilty within 45 minutes of jury deliberations and released from the court jurisdiction.

69. However, John Born, Paul Pride, and Thomas Charles, who was no longer director, made the decision not to allow the trooper who conducted the unlawful investigation, to honor her subpoena to testify in the case she unlawfully investigated. The defendants identified above knew that the trooper had provide false information to grand jury and could now get exposed for perjury and, causing embarrassment to the department of public safety, and the state highway patrol.

70. On February 8, 2014, the jury after hearing 3 days of testimony returned a not guilty of for plaintiff. This was to the dismay of all defendants named herein, they truly were expecting a conviction on trumped up highway patrol false charges. The plaintiff was released from the court and the indictment.

71. On or about March 13, 2014, the plaintiff reported to the Franklin County Municipal Court, to fight additional charges the Ohio State Patrol falsely filed charges against the Plaintiff, alleging unauthorized sale of a motor vehicle. The motor vehicle charge was dismissed to the dismay of the defendants named above.

72. April 2014 I was contacted by the Fraternal Order of Police representative Douglas Behringer (Attorney). Douglas Behringer requested to meet with the plaintiff at First Watch, a breakfast restaurant on High Street. At this point "THE PLAINTIFF" had never met Douglas Behringer.

73. The plaintiff, upon arrival to First Watch Restaurant, met with Representative Behringer seated at a table. The first remarks out of his mouth, were, "so you are the infamous "Tim Gales", I heard so much about. Douglas Behringer, further stated he was told I called Thomas

Charles, the director of public safety a racist. The plaintiff confirmed that he did indeed call Thomas Charles a racist and stands by his statement.

74. Douglas Behringer response to the plaintiff confirmation of the statement was "that", he heard the plaintiff was a black racist. D. Behringer, then went to say, that he doesn't like a black racist. As a result of the insulting remarks made by Douglas Behringer, the "Plaintiff", became confused as to why those unprovoked remarks would come from an attorney, and, union representative. Then to present false and unfounded comments to a black law enforcement member in such a disrespectful tone and manner was unjustified.

75. During the meeting with Douglas Behringer, the Plaintiff was of the belief that meeting representative, that he was there to assist with the plaintiff termination grievance. Not to brow beat the plaintiff for his protected comments about Thomas P. Charles. However, Douglas Behringer let it be known, he was not satisfied that the "Plaintiff", had called the director, Thomas Charles a racist. He then said be careful of your comments of others, you may not enjoy the protection you seek from the union. Douglas Behringer action towards the plaintiff were very hostile from the first meeting.

76. August 2014, the plaintiff began preparing for the September 10, 2014 arbitration. The preparation was to meet with FOP representative Douglas Behringer at 222 Town Street, and Paul Cox to lay out strategies for the Plaintiff arbitration. Douglas Behringer continued giving the plaintiff hard stares and, reminded the plaintiff that he was wrong to called Charles a racist Behringer then stated he had read the letter I sent to Gov. Kasich

77. On September 10, 2014, the Plaintiff along with Fraternal Order of Police chief legal counsel, Paul Cox attended the arbitration with Arbitrator E. William Lewis presiding over the meeting. The case was presented by the state of Ohio Office of Collective Bargaining located at 1602 West Broad Street Columbus Ohio. Fraternal order of police, Ohio Labor Counsel Inc, v. Ohio Office of Collective Bargaining. James Hogan (Attorney) sitting in for the office of collective bargaining as an observer.

78. On November 24, 2014, Arbitrator E. William Lewis issued his award to the parties, to include the fraternal order of police and the state of Ohio Office of Collective Bargaining. The award issued sustained the Plaintiff Grievance and by doing so, reduced the Plaintiff termination to a 30 days suspension. The agency director John Born was ordered to return the Plaintiff back to his normal duties as an enforcement agent. The award did not sit well with John Born, Paul Pride. They would not let their Mentor Thomas Charles eat his words of not allowing the Plaintiff to return back to his employment after telling all enforcement agents the plaintiff would never return.

79. On February 15, 2015, John Born and Paul Pride, through the office of collective bargaining, requested the that the plaintiff arbitration award be vacated. It should be noted that at no time in the history of the Ohio State Patrol have any of it superintendents and or, director of public safety, have ever appealed an arbitration award of a grievant. However, the dislike and unlawful behavior of the defendants Thomas Charles, John Born, and, Paul Pride would not allow an arbitrator to reverse the results they sought for the plaintiff. It is that the plaintiff had personally attacked Thomas P. Charles in a letter to the gov. and had filed EEOC complaints and lawsuits against him, that retaliation was

imminent for the plaintiff. The actions of the patrol and Charles, Born, Pride, and, James Hogan was totally discriminatory towards the plaintiff. An action no other employee has ever endured at the hands of Thomas Charles, John Born, Paul Pride and the Union.

80. On May 19, 2016, Honorable Common Pleas Judge, Kimberly Cocroft returned her decision to uphold the award in its entirety. judge Cocroft in her decision ordered the defendant (State of Ohio) to reinstate the plaintiff and pay to him interest on all money due to him under orc 1303.03

81. On or about June 15, 2015 at the direction of John Born and Paul Pride, and through the office of collective bargaining, the state officials filed an appeal with the tenth district court of appeals. to simply further harass, intimidate, and retaliate against the plaintiff and to cause further financial harm.

 SPECIAL NOTE:    It should be noted that during the appeals period in franklin county. The Plaintiff filed a federal lawsuit in the Federal Court Southern District, against Charles, Born, and, Pride. In addition, the same year, the plaintiff filed a lawsuit against Charles, Pride and Born in the Ohio Court of Claims. The lawsuit filed by the plaintiff against the three named above upset them and the defendants three set out to retaliate because they were in high position to do so at the government agency (Ohio Department of Public Safety) and (Ohio State Highway Patrol).

82. On April 14, 2017, the Ohio Court of Appeals 10th District upheld Judge Cocroft May 19, 2016 decision to the dismay of the defendants named herein, to Include the FOP. Douglas Behringer, advised the plaintiff that he should consider retirement because the defendants

named herein at the plaintiff place of employment would prepare to fire the plaintiff a second time and that he may not be able to get the plaintiff job back if that occurs.

83. On May 15, 2017 the plaintiff was returned to his position as an enforcement agent. The Plaintiff was contacted by Sgt. Johnson who requested that the plaintiff submit to a polygraph and a background check upon his return. The plaintiff refused the request and was told by Sgt. Johnson that a determination will have to be made human resources department based on the plaintiff refusal to submit to the background check.

84. On or about May 30, 2017, the plaintiff while at the Ohio State Patrol Academy receiving updates for law enforcement officers, was approached by internal affairs Lt. Bush and another unidentified agency employee. Lt. Bush began asking the plaintiff several question in regards to his time away from the agency, to include employment. The plaintiff advised Lt. Bush, that, any questioning regarding the plaintiff time away from the agency wouldn't be provided a response, because, ODPS had all information they were looking for and needed, as it related to the Plaintiff only employment.

85. The Plaintiff explained, this information provided, includes the agency placing the plaintiff former employer (Allied Universal under a false investigation, during the month of February 2017, for which ODPS director (John Born) demanded the information be returned to him by March of 2017, two months prior to the return back to work by the plaintiff. Upon receiving the requested information from Allied Universal. The agency audit identified my name, amount of pay, and hours the plaintiff had worked and provided a spread sheet that

outlined the plaintiff activity at Allied Universal.

86.    On or about June 24, 2017, Joe Extstein, Human Resource Director, came to the plaintiff office with other personnel to include Katie Robson, the plaintiff former human resource officer employed with Allied Security. The purpose of the visit was for Ms. Robeson to confirm the identity of the plaintiff who had worked for Allied Universal during the time identified on the spread sheet supplied by Allied Universal 2016-2017 for the plaintiff. This act of the actors, was simply pretextual to, began an unlawful discrimination and, harassment, retaliation investigation against the plaintiff for his constitutional protected rights to equal treatment under the 14th Amendment

87. on or about August 17, 2017, the plaintiff was at an assignment at the Ohio State Fairgrounds and was standing on the steps of the Ohio State Patrol Academy, When Thomas P. Charles approached the Plaintiff appearing upset. Thomas Charles, made the following statement to the plaintiff "Quote", I SEE YOU DONE MADE IT BACK TO WORK!    The Plaintiff responded back by saying with a smile "YES I HAVE", Thomas Charles final reply to the Plaintiff, " WELL LETS SEE HOW LONG THAT GOING TO LAST THIS TIME "Enquote"

Thomas Charles, then entered into the OSP Academy, while the plaintiff observed him walk into the cafeteria and into a conference room inside the cafeteria and meet with director John Born, superintendent, Paul Pride, Major Richard Frambro and, Lt Colonel, Mike Black. The door was then shut to the conference room while the they were meeting.

88. On January 18, 2018, the plaintiff received notice from the Ohio Highway Patrol which is under the supervision of Paul Pride, the man the plaintiff sued in state and federal court. The, letter identified the

plaintiff as a subject of the investigation for not complying with an arbitrator award, for which the Ohio State Highway patrol have no authority investigate, modify, or enforce.

89. On or about February 22, 2018, the Plaintiff was called in as a subject for the impending investigation and was requested to turn over his original 2016 and 2017 1040 tax returns to the Ohio State Patrol Lt. Miller Investigator who had no authority under the federal tax code to request from the plaintiff. The plaintiff refused in a email to relinquish tax documents to the Ohio State Patrol. (See exhibit A-2- Jan 2018 email February 2018 email).

90. On or about March 7, 2018, the plaintiff was contacted by Harold Kolsky to go meet with OSP Captain Gary Allen. Upon arrival at Captain Gary Allen Office. The Plaintiff was instructed to sit down. Gary Allen told the Plaintiff that prior to the meeting with, he was instructed to go out to Thomas P. Charles house, located in Buckeye Lake, Ohio. Captain Gary Allen stated his purpose was to let Thomas P. Charles know, that that the plaintiff had been an exemplary employee upon his return back to duty. However, OSP Captain Gary Allen said that Thomas Charles didn't care about how exemplary that plaintiff had been. So let me read to you the requested discipline being proposed (Termination). The act above clearly demonstrates Thomas P. Charles involvement to use his influence with John Born and Paul Pride to discriminate under the color of law and to harass and retaliate against the Plaintiff for his protected activity, which continued up to the termination of the plaintiff with joint activity of the fraternal order of police.

81.    On or about March 13, 2018, the Plaintiff was required to attend a pre- disciplinary hearing with patrol. The contract allows the affected

employee to choose who he/she want to represent them at the hearing. However, when the Plaintiff reported to hearing Douglas Behringer was there without being invited by the plaintiff. The Plaintiff asked Douglas Behringer who called him to attend and why did he show up uninvited. Douglas Behringer response to the plaintiff was that, the state officials OSP had contacted him out of fear the plaintiff was bringing a private attorney, that the state officials didn't want that to occur, namely James Hogan, John Born, and Paul Pride . Mr. Behringer further told this Plaintiff that it was not his idea to attend, because, had the decision been left up to him, he wouldn't have been there to represent the Plaintiff. At the conclusion Pre- D hearing. D. Behringer departed by saying with a smile. They are getting ready to fire your "ass Gales". You should have taken the retirement offer when we offered it to you. At the pre- disciplinary hearing Douglas Behringer failed to properly represent the plaintiff whereas, he clearly on this date should have filed an emergency injunction with the Franklin County Court to enjoin the state from the wrongful action. However, Douglas Behringer intension were to conspire and discriminate against the plaintiff in joint activity with state officials which is demonstrated here to, violate the rights of the plaintiff while he engaged into a meeting with state official with whom John Born, and Paul Pride oversee on a daily basis to carry out the unlawful missions of discrimination, harassment and retaliation because they didn't agree with the arbitration award issued the plaintiff.

83. On March 13, 2018, the Plaintiff received from non- other than Paul Pride, the superintendent of the Ohio State Highway Patrol for whom the Plaintiff had filed lawsuits in Federal and State Court as well as an EEOC complaint. In the letter to the plaintiff Paul Pride stated he was

recommending the plaintiff for termination, violating several policies of the Ohio State Highway Patrol. The recommendation was made to his good friend, director, and former superintendent John Born. At this point the Plaintiff will be unable to escape the wrath of unlawful retaliation and harassment he will receive. (See exhibit A-3- letter dated March 2018 from P. Pride). Paul Pride by Ohio laws doesn't possess the powers to request the removal of an enforcement agent as defined under 5502.14, nor can he recommend the dismissal as outlined in 5502.14 that makes the position of an enforcement agent clear as to maintaining the position unless that agent has been convicted of a felony or pleads to a serious misdemeanor. The section code 5502.14 is very clear and not misleading as to its meaning. An enforcement agent must be convicted of a felony to lose his position. Paul Pride violated 5502.14 and 5503.01 whereas he had no standing by legal law to request the plaintiff removal. The plaintiff due process rights were violated by Pride.

84. On March 20, 2018, the Plaintiff received from non- other than Director John Born, with whom the Plaintiff sued personally in state and federal court. The letter from Born stated that the Plaintiff had been terminated as an enforcement agent for alledgely not providing income as required by an arbitration award, and complying with a supervisor order to do so. The Plaintiff contacted Douglas Behringer, to advise him of the outcome, and the plaintiff need to file a grievance within 20 days. Upon arrival at the FOP, the Plaintiff was met by Douglas Behringer Para Legal Renee Englebach. She attempted to give the Plaintiff an outdated paper grievance form that at the time of dispute had been replaced with online grievance filing "only", the paper copy given was obsolete and, meant to deprive the plaintiff of his rights

to file a grievance. When the Plaintiff requested that the grievance be filed by the fop as a result of the Plaintiff access being taken away by the state of Ohio officials, I was only able to file by using another member account without the knowledge of FOP. They refused to help.

85. Douglas Behringer refused to file the grievance. Therefore, the Plaintiff reached out to an active agent, namely, Curtis Hundley, who allowed the Plaintiff to submit the timely grievance for which Douglas Behringer and the FOP was trying to prevent from occurring.

86. June 12, 2018, the Plaintiff received a call from Curtis Hundley, who had just been contacted by FOP representative Douglas Behringer an attorney with the fraternal order of police. Agent Hundley, advised the Plaintiff that Douglas Behringer told him that John Born and the state had allowed him to select the arbitrator for the Plaintiff case. Douglas Behringer, further elaborated that, he had selected his good buddy and a friend of the fop. and if the Plaintiff said anything about him now negatively or the union, his arbitrator buddy will not take kindly to it and will take care of the Plaintiff for bad mouthing him and the union.

87. On or about August 25, 2018, the plaintiff met with Douglas Behringer, at the fop Columbus, Ohio office. The Plaintiff questioned Douglas Behringer in reference to the statement "MY GOOD BUDDY WILL TAKE CARE OF THE PLAINTIFF should he say something negative about him or the union. Douglas Behringer, became very sincere and sure to his response, allegedly to Curtis Hundley. Behringer stated that the Plaintiff had made unsettled comments, against him in the Plaintiff administrative investigation with the Ohio State Patrol, and if that should that occur again, he now has his good friend the arbitrator who won't take kindly to the Plaintiff disrespecting his friend. Behringer

stated, Trust me "Gales", this arbitrator isn't the one to play with.

88. While the Plaintiff was at this preparation hearing with fop representative Behringer, the Plaintiff requested Behringer to appoint the original arbitrator E. William Lewis and to not appoint his buddy David Stanton, Behringer was advised by state officials not to appoint Lewis, because of his award issued the November 24, 2014 award to return the plaintiff back to his position as an enforcement agent. However, Douglas Behringer claim that E. William Lewis no longer does arbitrations to include question of corrections to awards he made. This statement by Behringer was simply a big lie. Plaintiff records from the office of collective bargaining maintained E. William Lewis as an arbitrator available for work. Douglas Behringer stated that the issues are new and not related to the old award which clearly again was another lie. The plaintiff and fop steward Curtis Hundley disagreed with him then the Plaintiff told Behringer the arbitration is a set up (Fraud) and he should be removed because it's obvious he can't be fair to the Plaintiff to do the right thing. On the day for preparation, the Plaintiff, Douglas Behringer, or the FOP meeting accomplished nothing. The wheels are now in motion for the FOP to violate the contract and article 9 non discrimination clause, solely to conspire with the State (Ohio) and its actors, and, defendants named herein to harm, retaliate, discriminate, and violate the Plaintiff and 14th, rights, as well as, Ohio Article 1 section 16 Due Process, and, ORC 2711.01. 2711.16, 5502. 14, 2913.02, (FRAUD) Federal Arbitration Act (FAA), and, unlawful termination, based on the defendant protected class, male black

89. September 10, 2018 the defendants named herein conducted an unlawful and retaliatory "FAKE", ARBITRATION which clearly was a SHAM. However, in an attempt to mask their wrong doings, the

defendants used the identical date of arbitration as the 2014 arbitration date to confuse readers of the award. Clearly this unlawful act was committed so that the defendants state officials named herein could get a second bite at the pie with a totally different result. The arbitration was a "SHAM", and fraudulent and carried out by all actors named herein.

## CLAIMS ASSERTED BY THE PLAINTIFF

90. Now comes Plaintiff Timothy Gales and for his several causes of action against the defendants states as follows, Deprivation of Rights to Equal Treatment, Fourth Amendment violations, 14th Amendment violations U.S.C. 42 1983 Violations Retaliation, Due Process, Equal Treatment and Protection, and, the Federal Arbitration Act (FAA) Unlawful Termination Conspiracy

## JURISDICTION

91. This is an action for violations of Plaintiff Timothy Gales right to Equal Treatment and Due Process, and the plaintiff Title VII, and a violation of the Federal Arbitration Act (FAA) which defendant can be held liable under U.S.C. 1983, WHILE ACTING IN JOINT ACTIVITY WITH NON STATE ACTORS. in that the Plaintiff suffered an adverse employment action after engaging     Protected activity, the right to file complaints with EEOC, the Governor Office, and lawsuits against state officials namely, Thomas Charles, John Born, and Paul Pride named herein for racial based harassment and retaliation and hostile work environment for having engaged in activity protected ACTIVITIES under the state anti- discrimination laws under ORC 4122 and the federal Civil

Rights Act The 1871 ku klux Klan Act . The Plaintiff further states that this court has jurisdiction under the Federal Arbitration Act (FAA) to vacate an arbitration award procure by fraud 10 and 11 of the FAA. The U.S. Supreme Court in Alexander v. Garner Denver Co. held that Congress has deemed some employees interest so critical hat they requires separate statutes for their protection as a corollary to their favored statute. Courts will protect the rights of the member without requiring exhaustion of the contractual procedures. Also in Alexander v. Garner Denver Co. The court also noted that the general rule of finality a "binding arbitration award will not bara victim of employment discrimination from obtaining judicial redress. See Mastro Plastic Corp v. NRLB 35 U.S.270 (1956)

### (1). PLAINTIFF FIRST CLAIM: FEDERAL ARBITRATION ACT

92.The arbitration September 10, 2018 itself appears to be concern of the honorable judge Michael Watson who believed the statutory time limits to challenge an arbitration award under the FAA have passed the 90 day requirement to challenge an award under section 10 of the FAA, which mirrors the Ohio Revised Code 2711. 13, However, the plaintiff provides evidence to the court that. On January 25, 2019 the plaintiff received an award which the plaintiff deemed fraudulent from the outset, and an award that was issued in violation of the plaintiff contract with the union under ORC 4117, and, ORC 2711 as well as article 20.08 violation of the contract agreement between the FOP and, the Office of Collective Bargaining. The Plaintiff on April 3, 2019 submitted a 48 pages request to Cathy Brockman, director of the Fraternal Order of Police to vacate the fake arbitration award because the award was procured by fraud and corruption and, racism on the part of the state and fop, and, further that a second award based on

the original award was unlawful See Ohio Office of Collective Bargaining
v. OCSEA. On or about April 19, 2019 the Cathy Brockman, director of
the FOP submitted a letter to the plaintiff denying his request to appeal
the fraudulent award. But why would she appeal, while allowing the
fop representative to intentionally discriminated against the plaintiff
while violating the plaintiff contract under article 9 non discrimination,
when it was her representative Douglas Behringer who hates the
plaintiff, for asserting his protected rights against Thomas Charles. Then
the FOP agreed with the state officials, on June 25 2017, one month
after the plaintIff returned to his position at DPS, conspired and agreed
to add a seventh arbitrator to the permanent list of arbitrator in the
midst of the remaining12 months to the agreement. When the
agreement between FOP and OCB under article 20.08 of the contract
calls for six permanent arbitrators who were already selected, prior to
allowing David Stanton to became the seventh permanent arbitrator in
violation of the contract. This breach of selecting seven arbitrator has
never occurred in the 35 years history of the collective bargaining
agreements. The parties have always selected from the six permanent
arbitrators agreed upon at the time at the signing of the contract. Now
both the state OCD and FOP are seemingly engaged in arbitrator
shopping to undo an arbitrator awards that neither party to the
agreement were happy with. Therefore the plaintiff have been
discriminated against by the fop for his protected activity while under
color of state law working in conjunction with state officials this
unlawful act was committed to discriminate against the plaintiff while
also treating the plaintiff differently than any other Ohio Investigative
Unit employee. The plaintiff have suffered discrimination at the hands
of the employer and his exclusive union fop who continued failure to

represent fairly the plaintiff is due solely to the plaintiff race and age.

93.However, to carry out the scheme to discriminate and violate the plaintiff rights to equal treatment and his contract due process rights. The state and FOP allowed David Stanton to become the seventh arbitrator where he completed his application to the Office of Collective Bargaining one month after the plaintiff returned back to work on May 15, 2017. David Stanton signed application reflects his tenure date to arbitrate was June 25, 2017. The court should view this as highly suspicious. Article 28.08 of the collective bargaining agreement clearly states that there will be a total of six permanent arbitrators for the duration of the agreement. David Staton selection was solely to undo and then redo an arbitration for which he had no involvement or jurisdiction. His selection was solely to assist the state officials along with FOP who were unhappy with the results that favored the plaintiff by the Franklin County Common Pleas Court, 15 MS-0119.

94. The plaintiff, did indeed file in a timely manner in state court an application on April 24, 2019 to vacate the award based on fraud and, that the fop commenced the arbitration in violation of the law ORC 51117 by allowing non-parties to bring a third party also a non party dispute (Allied Universal Security) to arbitration during a time the plaintiff was not employed with the agency. The plaintiff further asserted in his application to vacate under 2711.13, that the arbitrator issued an award to the Ohio State Highway Patrol on January 25, 2019, The Ohio State Highway Patrol are not parties to a collective bargaining agreement with FOP. Article one (1) of the agreement states: This agreement is entered into by and between the state of Ohio Office of Collective Bargaining, hereinafter referred to as "State" "Employer" and

the Fraternal Order of Police. Ohio Labor Counsel Inc. hereinafter to Labor "Counsel" or "FOP" There is no language designation in the agreement that made the state patrol a party to the agreement between the for and the office of collective bargaining.

95. However, the Franklin County Court dismissed the complaint for plaintiff lack of standing as a party to a collective bargaining agreement. The court refused to look into the alleged fraud violation as was outlined in the plaintiff complaint to vacate. The FAA has limited ground for which to vacate an award. WHEREAS it states any party to the award may file application in the district court for vacating based on fraud, arbitrator exceeded his authority, or the award was not derived from the contract and was biased. Therefore, the plaintiff upon receiving the final decision from the lower court. The plaintiff initiated the next step in the franklin county 10th district appeals court September of 2019 to have the award vacated (Case No. AP-19-0720). However, the 10th district affirmed the lower court decision based on standing by citing Leon v. City of Boardman, where a police officer was terminated however through arbitration gained his employment back, with the exception of backpay. The officer filed on his own behalf to vacate the award, The Ohio Supreme stated the union must prosecute the plaintiff grievance not the member. However, this case before the court is very different. In the Leon court, the plaintiff never asserted fraud, or corruption. The 10th district refused to review the fraud/ corruption even though plaintiff provided the authorities for which would allow for the court review. The plaintiff identified in his complaint: Second Circuit (ABM Industries Group LLC v. International Unions of Operating Engineers Local 30, 30A 30B, AFL CIO) Where the Second Circuit stated on June 25, 2020, Page 11 para 2 that Precedent

makes clear that employees are bound by the arbitration decisions and settlements. (see below ruling) Therefore the Plaintiff filed a request to the Ohio Supreme Court )Case No. 21-0331), to review the actions of FOP and the Highway Patrol. However, the Ohio Supreme Court declined jurisdiction. Therefor this court has jurisdiction to set aside the fraudulent award procure by fraud corruption and bias on the part of the arbitrator. The Plaintiff exhausted all administrative union and, state remedies to correct the collateral attack on the valid and enforceable award issued by E. William Lewis. The plaintiff Right s to equal treatment was denied by the state courts who simply refused to challenge the wrong and unlawful act of the state. And, the failure of the fraternal order of police to fairly represent the plaintiff in the unlawful act by the state joined in by the FOP. Here, the United States Court of Appeals for the Second Circuit stated the following

96.    In ABM Industries Group, LLC, v. International Union of Operating Engineers local 30 30A 30 B AFL CIO with whom the union filed a grievance for, John Phillip and Eugene Clerkins. The dispute was over termination pay for which the union believed was owed to the Clerkins and Phillip. The Second district stated in reversing the district court ruling that had been submitted on November 18, 2018 by the district court. The second circuit in reversing the ruling stated as follows: That Arbitration is a creature of contract, see Stark v. Square Trade Inc 913 F3d 279,288 (2d 2019) A party cannot be required to submit to arbitration any dispute which he has not agreed to submit United Steelworkers, of ASM. V. Warrior & Gulf Navigation Co., U.S. 574,582, (1960)The Second Circuit stated that in the context of labor law a Union is the exclusive representative or agent of employees in the bargaining unit. See U.S.C. 159 (a) The National Labor Act (NLRA). The

federal labor law confirms that when a union prosecute employees grievances against the employer it represents those employees and those employees are therefore bound by the arbitral award See U.S.C. 158 d The court stated that this basic truth has long been reflected in precedent. See Humphrey v. Moore, 375, U.S. 335, 342, (1964 the union is exclusive bargaining agent in the negotiation and administration of collective bargaining contract. To answer the question presented by honorable judge Michael Watson, when he questioned the decision of the plaintiff to attend an arbitration he believed was fraudulent. The plaintiff states to the court that on several occasion he told Douglas Behringer that the arbitration was a fraud and that his good buddy David Stanton has no business reviewing another arbitrator decision. The plaintiff further requested the original arbitrator to review his meaning as to offset in his 2014 award as required by article 20.08 award clarification. However, Douglas Behringer adamantly refused to consider E. William Lewis, the original arbitrator to review his own award even though the FOP clearly could have requested E. William Lewis. This is not what state officials wanted, the FOP refusal to request the original arbitrator was clear violation of Article 9 (Non Discrimination) and, article 20.08 that requires the original arbitrator to review his/her awards previously issued to the parties for corrections. and as result Douglas Behringer left the plaintiff without a witness at the hearing to corroborate the 2014 arbitration award or the meaning of offset begin date and end date. The Plaintiff further requested that E. William Lewis be called as a witness as to what he meant in his award in terms of offset back to the state, again the plaintiff was instructed by FOP, representative Douglas Behringer, that the union would not be calling E. William Lewis as a witness

because E. William Lewis no longer does arbitration. This act alone deprived the plaintiff of fair representation. The FOP assured state officials there would be no witnesses to assist the plaintiff with his grievance to return back due to fraud. Therefore, the plaintiff advised Douglas Behringer he had no plans to show up to the arbitration that was being staged by the union and the state. Then on or about August 20, 2018. The plaintiff received from OSP Jacob Pyles by certified mail a subpoena from non- other than David Stanton, requested by OSP Lt. Jacob Pyles commanding the plaintiff to appear. The plaintiff understands the importance of a subpoena and, that failure to honor can result in contempt and jail, this is the only reason the plaintiff attended the fraudulent arbitration on September 10, 2018. Regardless the union would have acted on the arbitration themselves even without the participation of the plaintiff which would have provided to the arbitrator a valid reason to take the plaintiff job. Even without having the authority or jurisdiction to do so... This rogue arbitrator would have certainly petitioned the court to find the plaintiff in contempt of his order to satisfy the FOP and, the state who were joined by the hips in this discriminatory act against the plaintiff. Finally, the U.S. Second Circuit concluded in ABM court. by stating Precedents makes clear, that employees are bound by arbitration decisions and settlements of grievances by union representatives. Settlements of grievances by the union and it employees is binding upon the individual employee. "ABSENT" EVIDENCE OF THAT THE UNION ACTED IN BAD FAITH Carrying out it duties of full and fair representation See Suissa v. Am Exp. Lines, Inc, 507, F 2d 1343, 1347, (2nd Cir 1974) in addition, the courts have said employees may not attack a final decision except on the grounds of FRAUD, DECEIT, or breach of duty of fair representation Or, unless the

arbitration was a sham, substantially inadequate or substantially unavailable See Margetta v. Pam Pam Corp 501 F2d, 179,180, (9t5h Cir 1974). The Plaintiff have argued this very issue in each of his filings in state courts. Now this district court under code 9 U.S. 16 have the right to vacate the 1-25-19 award procured by fraud, for which the plaintiff have been arguing since the award issued on 1-25-219 was clear due to fraud, and corruption, and a collateral attack on the original award issued 11-24-2014. Only to go unchallenged by FOP while in joint activity with state officials, and that by re-arbitrating the award for a second arbitration was a collateral attack on the first award issued on November 24, 2014 No other union member or employee of the Ohio Investigative Unit has been subjected to this level of discriminatory mistreatment by the union (FOP) who has acted jointly with state officials to violate the plaintiff rights to equal treatment under the Constitution of the United States Civil rights under the Civil Rights Act of 1871 42 U.S.C.1983 Violated by the union citing- Sutton 192 F3d at 835. The plaintiff cites that NLRB section 301 (a) authorizes individual action whereas the Supreme Court in citing Smith v. Evening News Association, ruled that an employee as well as the union could enforce a collective bargaining agreement the court said that the denial of judicial hearing on such actions would have disruptive influence on the effective enforcement of the collective bargaining agreement. The Court stated that the Smith decision resurrected the employee justiciable challenge only if he further alleges dishonest union representation. The court further stated that if a collective bargaining agreement provides for grievance procedures the employee must first exhaust this mechanism as a pre condition to judicial access. The plaintiff asserts that he has exhausted all contract and administrative

remedies, and have continued to allege fraud, corruption, and unfair representation by the union. Therefore. This court have full authority to vacate the award under FAA section 10 Fraud, and that the award was a collateral attack on the original award. In addition the state of Ohio relinquished jurisdiction on March 21, 2021 when the Ohio Supreme Court declined jurisdiction.

95. At all times relevant hereto Plaintiff, Timothy Gales resided at the above address, and in the jurisdiction of this U.S. District Court, Ohio, and was at all times relevant a state of Ohio employee in good standings, from August 19, 1985 until the unlawful termination on, March 20, 2013   by, Thomas Charles, former director, and then again on March 219, 2018, by Thomas Charles successor, John Born, with the full help of the Ohio Fraternal Order of Police Ohio Labor counsel Inc., and the Office of Collective Bargaining to treat the plaintiff differently, than all other employees assigned to the Ohio Investigative Unit.. The plaintiff was at all times a highly recognized by the FBI ,the U.S. Secret Service, and was a sworn special deputy U.S. Marshall as an undercover agent who at all times maintain honesty, integrity, and the highest level of ethics while under the color of the badge. The plaintiff at the time during his employment had no discipline on his record. However, it should be noted that each time a former trooper became director, such as Thomas P. Charles and John Born. The plaintiff was singled out for his race and fired for no true or apparent reasons other than discrimination for invoking his rights to equal treatment.

96. The union was fully aware of the behavior of the Highway Patrol and was adamant in assisting state official in joint activity to violate the plaintiff constitutional 1871 Klu Klux Klan Act, and 14th Amendment rights to equal treatment of the laws. However, the FOP

representatives named herein were totally complicit in the acts with state officials to deprive the plaintiff of his equal protection rights and the union officials further violated the plaintiff article 9 section of the collective bargaining agreement that violates the 1871 Klu Klux Klan Act by treating the plaintiff differently based on his protected status under the law a black male, that prohibits discrimination by the union against members by treating him/her differently than other members. This joint activity and continued conspiracy by state officials and non-state actors violated the plaintiff Equal protection afforded all U.S. citizens under the U.S. 14th Amendment of the Constitution.

97. The FOP refused to enjoin the state from the wrongful actions for which the FOP conspired with state official in joint activity to injure the plaintiff employment and to cause serious emotional trauma, by violating ORC 2711.10 2711.11.2711.13, and, orc 4117 (SERB) The fake and fraudulent arbitration administered by joint activity between, the FOP, State officials, and a rogue arbitrator were DISCRIMINATORY against the plaintiff bargaining rights under 4117 and the    arbitration award issued under the 2012-2015 contract agreement where article 20.08 is clear: It states: Decision of the arbitrator between the Office of Collective Bargaining and the Fraternal Order of Police, Ohio Labor Counsel, states the following, under 20.08 section (4) The arbitrator shall render his/her decision no later than 45 days after the conclusion of the hearing unless the parties agree otherwise. The arbitrator shall submit an account for the fees and expenses of arbitration. The arbitrator decision shall be submitted in writing and shall set forth the findings and conclusions with respect to the issue submitted to arbitration. The section further states that the arbitrator decision shall be binding upon the employer, FOP, Ohio Labor Counsel and the

employees involved provided such decision conforms with Law of Ohio and, do not exceed the jurisdiction or authority of the arbitrator as set forth in the article. Parties may on case by case basis request an arbitrator retain jurisdiction of the specific case. In that the parties are using a permanent arbitrator, questions of clarification of awards will normally be submitted to that arbitrator. The FOP allowed the states to commit a collateral attack on the original award by allowing the state highway patrol to conduct an investigation solely to add new language into the dispute which will the allow the arbitrator to unlawfully make a decision with the new language added this is well known by the Douglas Behringer chief negotiator for FOP that a single submission is a nullity to a second award Fraternal Order of Police v. City of Athens 4th district appeals court. Also see the Office of collective Bargaining v. Ohio Civil Service Association No. 18AP-478 10TH DISTRICT Franklin County) where the 10th district stated that they agree with the trial court. By stating in the aforementioned appeal that, The doctrine of Functus Officio is defined as having fulfilled the function discharged the or accomplished the purpose and therefore no further force or authority. See Sterling China Co. v. Glass Molder, Pottery, and Plastic Allied Worker Local, No. 24, 357,F3d 546,553,((6th Cir 204). The courts stated that the doctrine has specifically been applied to the breadth of an arbitrators authority whereas in most cases arbitrators appointments continue until they have heard the case, made a final award, and disclosed it to the parties. At this time their task is performed, their duties under the arbitration agreement are discharged and the arbitral authority is at it end. The court further cites that the policy which lies behind this is the unwillingness to permit one who is not a judicial officer and who acts informally and sporadically, to re-

examine a final decision which has already been rendered, because of the potential evil of outside communication and unilateral influence which might affect a new conclusion See McClatchy Newspaper v. Central Valley Typographical Union No. 46 686 F2d 731, 734, (9th Cir 1982) Miller v. Gunkle 96 Ohio St.3d 359 2002-Ohio 4932 The Ohio Supreme Court adopted the similar approach under Ohio Revised Code 2711, one of the question to the Miller Court to consider does an arbitrator panel had authority to review their first award. The Miller Court Answered: It is clear that it does not in so holding the Supreme court of Ohio Stated that. RC.2711 does not confer authority on an arbitration panel to reconsider it award. Instead, R.C. Chapter 2711 confers jurisdiction only on trial courts pursuant to 2711.10 and 2711.11 to, vacate, modify, or correct arbitration awards. Furthermore, the courts stated that when the submitted issues are decided the arbitrator powers expire, Thus, a second award on a single submission is a nullity See Lockhart v. AM, Res, Ins, Co. (1981 Ohio) 2 Ohio APP 3D 99,102,2 Ohio B Rep 112, 440, N.E. 2d 1210 citing Baynes v. Morris (1863) 17 L ED 495,68, U.S. 97,99, Lockhart Bldg of Palm Beach Inc v. W. Union Tel. Co. (C.A.5, 1941) WHICH HELD ARBITRATORS ARE APPONITEES with but a single duty and*** performance of that duty terminates their authority. When the arbitration board renders its final award, it powers under the submission is are terminated Its authority is not a continuing one and after the decision is announce it is powerless to modify, or revoke it or to make a new award upon the same issues. The plaintiff brings to the court attention that this fraudulent award was simply a collateral attack on the original award. The Supreme Court have stated that an arbitration award shall not foreclose on the constitutional rights of a member when allegation such as