discrimination is alleged as it does here. In, addition the plaintiff ask this court to set aside the fraudulent award as a collateral attack on the original awards this discriminatory acts against the plaintiff was the direct result of Cathy Brockman, Gwen Callender, Douglas Behringer abusing their position with the Fraternal Order of Police while acting Jointly under the 1871 Klu Klux Klan Act, solely to violate the federal arbitration act to claw back on the original award and jointly assist to state officials to discriminate and treat the plaintiff differently than other enforcement agents and, members of the Fraternal Order of Police.

98. Defendant Thomas P. Charles was at all times relevant an appointed state of Ohio employee, residing in the jurisdiction of this U.S. Federal Southern District Court Ohio. He worked under former Governor John Kasich, and Ted Strickland, holding high ranking positions, as Ohio Inspector General, and, Director of Ohio Department of Public Safety, and other appointed to other state positions namely, the Ohio State Fair Commission until 2018. Thomas Charles. Thomas Charles maintained a high level of influence over John Born, and Paul pride whom both owed their loyalty to him. Thomas Charles while director of the department of public safety treated all minorities differently than non minorities to include the plaintiff. Thoams Charles developed unlawful policies solely to discriminate against minorities by first placing enforcement agent under the control of the Highway Patrol, where he would be able to continue his discriminatory attacks even while away from the agency. Thomas Charles cooked up a fraudlent scheme in 2013 by using the highway patrol to present false evidence to the Franklin County Grand Jury in an attempt to intimidate, harass, and unlawfully take the 29 year career as a state employee from the

plaintiff through perjured testimony by a trooper under then superintendent John Born Command. Thomas Charles and the Highway Patrol, with whom Charles rely upon to carry out his assaults on those he don't like or agree with. Thomas Charles, and John Born, that his troopers were adamant that they would carry out the unlawful acts to meet his wishes to discriminate, harass, and treat the plaintiff differently than any other enforcement agent assigned to the Ohio Investigative Unit. Thomas Charles was adamant he would the plaintiff pry the plaintiff employment from him. Upon Thomas Charles departure from the agency he entrusted his concern to and condition, to John Born whom he recommended to become director of public Safety and, to carry out the employment hit on the plaintiff. Thomas Charles discriminatory acts under the 1871 ku klux klan act (1983) acting in a continuance conspiracy with non state actors and state officials by violating the plaintiff contract with FOP while engaged into joint activity. Thomas Charles influence never departed the agency, even though he was no longer the director of public safety. He now has John Born, his trusted buddy who will at any cost carry out the discrimination and, retaliatory acts for the man who hoisted him to the top of the State Highway Patrol as, (Superintendent) then, Thomas Charles supported John Born appointment to the director of the public safety. John Born was given his marching orders from Charles to uphold his termination at all cost that he unlawfully issued to the plaintiff March of 2013. This continuing act of retaliation for discriminatory reasons against the plaintiff is a violation of U.S.C. 1983, KLU KLU KLAN ACT, and the plaintiff 14th Amendment to Equal Protection under the laws. While director of Public Safety, Thomas Charles had a duty to protect the plaintiff from the unjustified policies, harassment, unequal

treatment, and downright openly discrimination. However, as director Thomas Charles abused his position as director and joined non state actor to conspire with him the conspiracy met it overt goal on January 25, 2019.

99. Defendant John Born was at all time relevant a state of Ohio employee, with the Ohio State Patrol from 1990 until his appointment by Thomas Charles to the position of Superintendent of the Ohio State Patrol, 2011. Also, at the request of Thomas Charles on June of 2014 John Kasich appointed John Born director of Public Safety after the departure of Thomas Charles. John Born maintained the position of Director until February 2019. John Born, while superintendent of the Ohio State Patrol abused his position as superintendent by authorizing troopers to conduct investigations on the plaintiff for an alleged sale of a motor vehicle to family and friends. Under Ohio law the Ohio State Highway Patrol is a limited law enforcement agency within the state of Ohio. Its primary functions under ORC 5503.10 IS TO CONDUCT INVESTIGATIONS ON STATE HIGHWAYS ENFORCE TRAFFIC LAWS ON STATE HIGHWAYS AND ROADS AND TO CONDUCTINVESTIGATIONS ON STATE PROPERTY. Nothing in the Ohio Revised Code 5503.01 allow a trooper or the superintendent of the Ohio State Highway Patrol to conduct private property investigations. However, John Born to carry out the wishes of Thomas P. Charles unlawfully authorized the investigation on the plaintiff. As a result of the unlawful investigation a trooper with the approval OF Thomas Charles and John Born presented false testimony at the Franklin County Grand Jury and had the plaintiff indicted on a Felony theft charge of the 5th degree. The trooper withheld from the grand jury pertinent information which clearly would have meant a different result had the grand jury been given the proper

information. The trooper withheld the alleged victim $ 2.700 fifth third money order and intentionally [placed it into OSP evidence. Then testified at grand jury that the plaintiff had stolen the 2700.00 after the plaintiff alerted the prosecution to the untruthfulness of the trooper John Born and Thomas Charles refused to allow her to come to the trial and testify. They each knew she had perjured herself at grand jury and had caught by the plaintiff. The Jury returned an acquittal within 30 minutes. This didn't set well with Charles, Born, and Paul Pride after two enforcement agents testified on the plaintiff behalf. The two agents became instant targets and placed under investigation for honoring their subpoena. On November 24, 2014, the plaintiff received an arbitration award. The award ordered the agency to return the plaintiff back to his enforcement position and to be given full benefits and backpay less a 30 day suspension. The plaintiff was to provide all receipts of earning from March 2013 until the award was issued on November 24, 2014. However, On or about February 20, 2015 through the Ohio Attorney General Office, the FOP was notified via email that the department of public safety was not keen on taking Mr. Gales back as an enforcement agent and at the request of the agency which would have been John Born, Paul Pride through the influence of Thomas Charles Submitted the application to the Franklin County Common Pleas Court. Identifying the Ohio Office of Collective Bargaining as the statutory agent for state agencies enforcing contracts. However, on May 19, 2016, The Franklin County Court of Common Pleas rejected the state (OCB) application to vacate and upheld the arbitrator award in the plaintiff favor. John Born would be unfazed by the decision, by appealing the lower court decision to the 10th district court of appeals for review. The plaintiff would like to bring to the attention of the court

that the collective bargaining had been in place for almost 34 years. And at no time in the history of the department of public safety had a director ever appealed the award of a terminated employee whether Ohio Investigative Unit, the Ohio State Patrol, BMV, or, any other division within the agency. The plaintiff was singled out for discriminatory reason by John Born in violation the 1871 klu klux klan act 1983, and for the violations of the plaintiff right to equal treatment. John Born on February 2, 2017, initiated a complaint on the plaintiff employer while the plaintiff was not employed by the agency. The employer Allied Universal Security was placed under investigation unlawfully to obtain information on the plaintiff to be used upon his return to the agency. The unlawful acts began with the Ohio State Highway Patrol visiting the plaintiff place of employment prior to his return to agency on May 15 2017. As stated the Ohio State Highway Patrol is a limited law enforcement agency under 5503.01. troopers do not have authority to investigate regulatory under the law for private security companies. The director continues to authorized these unlawful investigations against the plaintiff by using the patrol; to intimidate and, harass the plaintiff employer with the hopes of termination. This unlawful act by John Born illustrates what degree of discriminatory acts he would commit simply to mistreat the plaintiff differently than any other enforcement agent within the Ohio Investigative Unit. Not only are these acts discriminatory but also a breach of plaintiff contract between the office of collective bargaining and fop. John Born, continued to act outside his official duties to further violate the Federal Arbitration Act by, again authorizing the state patrol trooper to violate the arbitration act by, investigating the plaintiff November 24, 2014 arbitration award. The Ohio Department of

Public Safety, or the Ohio State Patrol have a policy that a trooper or any employee may used to violate FAA section 10 section 11 or ORC 2711. A TROOPER HAVE NO JURISDICTION to investigate, modify, or correct, an arbitration award. However, John Born being hellbent not be swayed by court decisions continued in his conspiracy with state officials and non state actors namely Douglas Behringer, Cathy Brockman, Gwen Callender to discriminate against the plaintiff and treat the plaintiff differently than any other employee assigned in the Ohio Investigative Unit who hold or have held a similar or same position. As result of allowing the Patrol who is under his direct command to violate the FAA and ORC 2711. This act allowed him to abuse his position as director of public safety and to engage into joint activity with non state actor solely to retaliate and, discriminate against the plaintiff and in violation of the U.S.C. 1983 KLU KLUX KLAN ACT and, the plaintiff rights to Equal Treatment. On March 19 and without justification, John Born violated the plaintiff contract and the plaintiff award by granting the patrol investigation to collateral attack the plaintiff original award for which he did not agree with, and would not let Thomas Charles down his act by John Born was committed under the color of law while engaged into joint activity with non state actor enforcing prerogatives state statutes named herein. As result of John Born discriminatory actions against the plaintiff he liable to the plaintiff for equitable relief this court deems appropriate and fair.

100. Defendant Paul Pride was at all times relevant was a state of Ohio employee, with the Ohio Highway Patrol from 1989 until his appointment by Director John Born, to the position of Superintendent of the Ohio State Patrol June 2014. P. Pride maintained the position of superintendent until his retirement March 2019. And a relevant factor

in collaborating with other state officials and, non- state actors to assist in carrying out the pre- planned scheme to undo the arbitration award issued November 24, 2014 and to continue his discriminatory actions towards the plaintiff while violating the KLU KLUX KLAN ACT of 1871. Paul Pride during his time as superintendent of the Ohio State Highway Patrol had a message sent to the plaintiff while the plaintiff was no longer employed. Paul Pride stated in a meeting after calling all agents to Columbus statewide. Paul Pride singled out the plaintiff by name and stated that at the highway patrol 'Quote we know how to get rid of cancer…. We cut out and trust me it will never return we at the patrol have our way of getting what we want, and it doesn't cost the patrol a dime. As stated and reiterated here, Paul Pride with the approval of Director John Born authorized Pride to unlawfully use the patrol to conduct an investigation on the plaintiff under the Ohio Revised Code 2711 and the FAA. The patrol have no jurisdiction to conduct an investigation nor are there any policies that would allow the patrol to investigate an arbitrator award as they have done here. Citing E. William Lewis Award dated November 24, 2014. Paul Pride while engaged in joint activity and in violation of title VII and the Klu Klux Klan Act of 1871 intentionally with malice and hatred for the plaintiff, discriminated against the plaintiff and treated the plaintiff differently that any other non minority plaintiff assigned in the Ohio Investigative Unit solely to deprive the plaintiff of his 33 years of state service for which no other employee have ever faced. Paul Pride without legal authority under 5503.01 gave the plaintiff a memorandum on or about March 13, 2018 and requested the plaintiff termination for which he had no authority to request. ORC 5502.14 makes it clear the director of public safety must terminate any enforcement agent who had

convicted of a felony or have pled to a negotiated plea as a result of the felony. Here, the plaintiff had no discipline on his record, had committed no criminal charge, but yet Paul Pride recommend termination of a 33 years employee. In addition, Paul Pride abused his position as superintendent by further authorizing his trooper to request the plaintiff original 2016 2017 taxes in violation of IRS Code 7213. The patrol had no authority under the tax code to investigate or request that a person provide to them their private taxes. When the patrol requested the plaintiff taxes the plaintiff refused to provide his personal taxes and cited his rights to privacy. However, Paul Pride, with the approval of John Born would then use the plaintiff failure to give up his taxes to the patrol as an act of dishonesty, and then inserted that information whereas the arbitrator could use to determine dishonesty to uphold the plaintiff discriminatory termination. The unlawful and discriminatory acts violated the plaintiff contracts article 9 non 20.08 award binding on all parties discrimination as well as the plaintiff title vii Paul Pride committed the act while engaged into joint activity with non state actor namely Douglas Behringer Cathy Brockman,, Gwen Callender to discriminate against the plaintiff under title VII, and, further to treat the plaintiff differently as other non minority employees of the Ohio Investigative Unit. Paul Pride committed the unlawful discriminatory acts by engaging into a joint continuing conspiracy with non state actors until the final overt act reached it goal on January 25, 2019 illegal removal of the plaintiff from his 33 years of state employment. An act that Paul pride hasn't done to any other employee. The unlawful discriminatory act was to please Thomas P.

101. Defendant James Hogan was at all times relevant a state of Ohio employee, appointed by the Ohio Attorney General office as a labor

attorney James Hogan, transferred to the Office of Collective Bargaining and finally was appointed as an attorney by John Born, Director for the Ohio Department of Public Safety where he continues to be employed as of August 2022. James Hogan an ion house attorney appointed by Thomas Charles and held over by John Born abused his position as an attorney by acting outside the scope of his employment to violate the FAA, Section 10 and section 11. The plaintiff was issued a valid arbitrator award on November 24, 2914 by E. William Lewis. However, James Hogan was instrumental the continued conspiracy by having meetings with Dave Stanton, Douglas Behringer, Gwen Callender and Cathy Brockman. The meetings held were to ensure that that the arbitrator understood why he was selected to oversee a second arbitration. Clearly there were six arbitrators on the permanent list as required by the contract. The only for seeable reason to select Dave Stanton was that he would engage into illegal joint activity to assist his good friends at the fop to use an arbitration award that was issued out of a contract that expired July 1, 2015. Stanton was the guy to complete the last overt act and finally provide the results Thomas P. Charles, John Born, Paul Pride requested. James Hogan interfered with the contract of the plaintiff when he attended the arbitration and demanded from David Stanton the termination of the plaintiff. The plaintiff states that James Hogan while engaged in a meeting on September 10, 2018 with Douglas Behringer and Jacob Pyles at the conclusion of the fake arbitration, came to the plaintiff on behalf of James Hogan and again offered the plaintiff an opportunity to retire after it was stated by James Hogan that John Born and Paul Pride would not accept the plaintiff back as an enforcement agent and that should the plaintiff refuse to retire, he is to be terminated. The state officials and non-state

actors met and engaged into joint activity with James Hogan solely to discriminate against the plaintiff by use of an arbitration award which clearly is a violation of the Klu Klux Klan Act of 1871, and a clear violation of the plaintiff contract under article 9 (non discrimination) and, article 20.08 where final arbitration awards are binding on all parties to include the employer (OCB) THE Union (FOP) and, all involved union members in this case the plaintiff. However, James Hogan instigated with non state actors named herein to commit a collateral attack on the plaintiff original award and by doing so the plaintiff lost his 33 years of employment an at that had not occurred with any other non minority enforcement agent. The plaintiff was singled out by James Hogan who had no legal authority to engage into unlawful contract interference as it relates to the agreement between the fop and OCB. James Hogan, allowed troopers from the Ohio State Patrol to interfere with the collective bargaining agreement between the FOP and, OCB by providing legal advice under ORC 4117 for which the Ohio Attorney General did not authorized him to provide. Whereas the Ohio Attorney General has exclusive jurisdiction when providing legal advice to state agencies. James Hogan, is not an employee of the Ohio Attorney General and therefore didn't have the jurisdiction to be at the plaintiff arbitration and/or provide direction to the FOP and the arbitrator as to the only outcome that John Born, Thomas Charles, Paul Pride would accept. That was to collateral attack the original award, the use non state actor namely the FOP, Douglas Behringer, Cathy Brockman, and Gwen Callender to block the plaintiff due process and prevent any challenge to the fake arbitration award issued on January 25, 2019. As a result of James Hogan Illegal actions he engaged into joint activity with non state actors to discriminate against the plaintiff in violation of the

klu klux klan act of 1871 title VII, and violations of the plaintiff 14th Amendment Equal protection. James Hogan have not committed the unlawful discriminatory acts against no other non minority enforcement agent. He committed the act in joint activity with other state officials and non state actor under the color of state law and is liable to the plaintiff for whatever equity relief the court deems appropriate with punitive damages.

102. Defendant Ohio Fraternal Order of Police, Ohio Labor Counsel LLC located at 222 Town Street, Columbus, Ohio, Franklin County, is a duly licensed and recognized labor organization for statewide law enforcement union members. And, organized under the laws of the state of Ohio to act as sole representative for its members.

Under the law 4117 Unions have a duty to represent their members in a manner that is not arbitrary, discriminatory, or in bad faith. This duty can arise in many circumstances, but one primary area is the processing of an employee member grievance against the employer. The plaintiff points out that based on the union hostility towards the plaintiff the union FOP, and its representative namely Douglas Behringer, Cathy Brockman, and Gwen Callender, failed to properly and, fully represent the plaintiff when the union allowed the state to violate the original arbitration award without a challenge in court to enjoin the unlawful action. As a result, the union violated the contract article "9 Non Discrimination", and article 20.08 which states the arbitrator decisions arbitrator decisions are binding on all parties to include the employer (OCB) the union (FOP) and all affected union members in the case for the court the plaintiff is the member binding to the November 24,2014 award by which the union FOP allowed state troopers, (OCB), OSP, and, DPS to violate a confirmed arbitration award confirmed by Franklin

County Court. To go unchallenged and to discriminate against the plaintiff. As, result the FOP engaged into joint activity to violate the civil rights of the plaintiff and article 9 of the agreement (Non Discrimination) and by doing so was a violation of the 1871 KLU KLUX KLAN ACT, 42 U.S.C. 1983, and a violation the plaintiff contract with FOP, and, a violation of the plaintiff rights to equal protection when the union engaged into joint activity with state officials to deprive the plaintiff of his property and by unlawfully engaging the plaintiff in a second arbitration for discriminatory reason whereas court throughout the country has stated second awards are a collateral attack on the original award. The union FOP was fully aware of this disapproval of Thomas Charles, John Born, Paul Pride and, James Hogan, as a result of losing the original award on November 24, 2014. The FOP allowed the state to violate contract by using state troopers to investigate an arbitration award issued by E. William Lewis on November 24, 2014 to the plaintiff, clear violation under ORC 2711. The union further allowed the employer to violate a confirmed arbitrator award in favor of the plaintiff without enjoining the state from committing the unlawful actions. Instead the union joined the scheme with state officials solely to discriminate against the plaintiff based on his protected status: black male and, further to allow the state to claw back the first award that they lost and did not agree with, which was obvious when they submitted a request to franklin county court to vacate but the request was rejected. In violation of U.S.C 42 1983 CIVIL RIGHTS VIOLATION for which the courts have stated an arbitration award does not foreclose a members right to relief under federal law.

103. Defendant Department of Administrative Services, Office of Collective Bargaining located in Franklin County, Ohio and is a duly

state of Ohio agency organized under Ohio Revised Code 4117, and for the sake of contract negotiations and enforcement. (OCB), in each contract agreement between fop and the state, OCB by statute 4117 is known as the employer and sole statutory representative of all state agencies bargaining units, to include wages, working conditions discipline, and enforcement of and signing state employee's bargaining agreements to include the Ohio Fraternal Order of Police, Ohio Labor Counsel Inc. The state patrol is not a party to a collective bargaining agreement between the fop and the state and therefore OCB SHOULD NOT HAVE ALLOWED THE PATROL TO PARTICIPATE IN A DISPUTE WITH THE FRATERNAL ORDER OF POLICE A CLEAR VIOLATION UNDER ORC 4117, and a breach of the plaintiff contract rights due to racism and discrimination towards the plaintiff

104. Defendant Douglas Behringer was at all times relevant an attorney employed with the Ohio Fraternal Order of Police, Ohio Labor Counsel, Inc located in Columbus, Ohio, Franklin County, and employed as a union representative for bargaining unit members. Douglas Behringer has high degree of hostility towards the plaintiff He failed to fully represent the plaintiff instead used his influence with state official by authorizing a 7th arbitrator to be assigned to the permanent arbitration board when the contract under 20.08 calls for 6 permanent arbitrator who were ready and available if needed to include E. William Lewis the original arbitrator. Douglas Behringer acted in joint activity with state officials by turning on his responsibilities as a union representative buy enforcing the rights of the plaintiff. Douglas Behringer to gain favoritism from state official and to join the scheme to discriminate against the plaintiff and to deny the plaintiff full union representation. Did on or about June 26, 2017 removed the plaintiff without the

plaintiff knowledge as a member of the FOP, solely to discriminate and treat the plaintiff differently by knowing that state official were gearing up to unlawfully fire the plaintiff.

105. Defendant Cathy Brockman was at all times relevant, Director of the Ohio Fraternal Order of Police, Ohio Labor Counsel Inc, located 222 Town Street, Columbus, Franklin County, Ohio. Cathy Brockman overseen the functions of the Fraternal Order of Police and all of it employees.

106. Defendant Gwen Callender was at all times relevant Chief Legal Counsel for the Ohio Fraternal Order of Police. Ohio Labor Counsel Inc located 222 Town Street, Columbus, Franklin County, Ohio. She overseen, attorneys and make arbitration assignments and decisions for the fraternal order of police. She is the defendant Douglas Behringer direct supervisor.

107. Defendant Cullen Jackson was relevant at all times an employee (Attorney) for the Office of Collective Bargaining, located at 1602 West Broad Street, Columbus, Franklin County, Ohio. Cullen Jackson duties were to handles disputes for state agencies when dispute occur through the filing of employee's grievance. However, Cullen Jackson stood silent and a failed his duties while engaged into joint activity with non state actors.

108. Defendant Jacob Pyles was relevant at all times a State of Ohio employee in the position of trooper for the Ohio State Highway Patrol, located at 1970 West Broad street Columbus Ohio 43223. She provides to state agencies overviews of the collective bargaining agreements and the enforcement of same. She makes decisions to appeal arbitration award that were not favorable to the state of Ohio.

109. Plaintiff bring these claims pursuant to 28 U.S C. & 1331, 28 U.S.C. 1343, 42 U.S.C. & 1983 for the his Fourteenth Amendment of the United States Constitution.

110. Venue is proper for all Timothy Gales claims pursuant to 28 U.S.C. & 1391 (b) as all of the parties resides in Southern District Court of Ohio,, and all of the events giving rise to Timothy Gales claims occurred in this judicial district.

111. Plaintiff Timothy Gales raises a Federal Constitutional question over which this court has original jurisdiction. Plaintiff Gales' claims presents federal questions over which this court has jurisdiction pursuant to, 28 U.S.C.1331, 28 U.S.C. 1343, 42 U.S.C. 1983.

112. The defendants named herein were at all times acting under color of state law within the meaning of the Civil Rights Act of 1871 as Amended 42 U.S.C. 1983 ("1983").

113. Defendants at all times relevant hereto, were acting in concert with one another in relation to Gales employment matters.

114. This court has jurisdiction by reason 42 U.S.C. &2000, et, (Titled VII"); and pursuant to the federal Civil Rights Act of 1871, as amended 42 U.S.C. 1983 ("1983").

This court has pendent, supplemental and/or ancillatory jurisdiction over Gales Ohio statutory claims by virtue of 28 U.S.C. &1367.

COUNT 2 (Constitutional Violations) U.SC. 1983 1871 Actions)

115. The U.S.C. 1983 Act was derived from the Civil Rights Act of 1871, 42, U.S.C. 1983. (The Act) imposes civil liability including equitable remedies on one who, under color of any state statute, ordinance, regulation, custom, or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights privileges, or immunities secured by the constitution shall be liable to for redress to the injured person. The U.S.C. Includes act committed by private citizens who conspire and was in direct control of state officials engaged into joint activity. In., addition, the state officials named herein further put together a group of non- state officials to conspire with them until the results Thomas P. Charles sought against the plaintiff was carried out to its fullest. No actor named herein ever left the conspiracy or notified anyone that they no longer wanted to be a part of the conspiracy. Each were willing participants.

116. While the courts have stated. Generally not applicable to private parties to act under the color of law... does not require that accused be an officer of the state: the court stated that it is enough that he is a willing participant in joint activity with the state or its agents (see) Dennis v. Sparks, 449,U.S. 24, 29, (1980).The court pointed out that actions taken by a private individual may be under color of state law" only where there is "significant" state involvement in the action Howerton v. Gambica, 708 F2d 380, 382, (9th Cir. 1983).

92. The U.S. 9th district court recognizes four different criteria or test to evaluate whether a private actor has engaged in significant 0state action: the first test determined was the function a public function 2. Was their joint activity. 3. Was there compulsion or coercion, and, 4.

Was there a governmental nexus. Kirtley v. Rainey, 326, F 3d 1088, 1092, see also Sutton 192, F3d at 835-36 Johnson v. Knowles 113, F3d 1114, 118, (9th Cir. 1996).

117, Section 1983 is an important means of redress for constitutional violations committed not only by state government officials, but also non -state actors such as private individuals and federal officials. Indeed the act is known as the KLU KLUX KLAN ACT based on constitutional violations committed by private organizations. (see) Monroe v. Pape, 365, U.S. 167,174-76,(1961) The plaintiff instant case falls into this category whereby state official used non state actors to assist in injuring the plaintiff by developing a ruse (Scheme to violate the plaint due process rights under the Fourteenth Amendment to undo an arbitration award state officials didn't not agree with. As a result state officials and non – state actors began a continuing conspiracy dating back to February 2, 2017 when state official became aware that they wouldn't be successful in getting the 10th district court common pleas court to vacate the arbitration award that they each did not agree with and as a result threw a legal temper tandrum then developed a scheme to violate the plaintiff constitutional rights to free speech, and, equal treatment under the constitution.

## Claim 3 RETALIATION UNDER 1983 IS ACTIONABLE

118. The state officials named herein as defendants were highly upset that the plaintiff September 2014 arbitration failed to yield the results that Thomas P. Charles, John Born sought as a remedy to the unlawful termination of the plaintiff on March 18, 2013.Thomas P. Charles was adamant that after the Highway patrol unlawful investigation. As a result of the plaintiff favorable arbitration award the defendants, state

officials began their retaliation to undo the favorable award issued on behalf the plaintiff. The 14th Amendment is attached to the plaintiff 1983 actions which identify his four claims.

119. At the request of Defendant John Born, and, Paul Pride, the Ohio Attorney General filed an application on February 15, 2015 to undo the arbitration award. The attorney General explained to FOP chief of staff Paul Cox that the department doesn't want the plaintiff to return back to the agency therefore an application to vacate the award will be made. The plaintiff would like to make the court aware that, not ever during the 35 years history of the collective bargaining agreement have state officials at the department of public safety or, the Ohio State Highway patrol had ever appealed an award issued by an arbitrator of employees who were members of the Fraternal Order of Police, Ohio Troopers Association, or OCSEA. The Plaintiff was treated different at the time for speaking out and, fighting against racism in the agency. And, by filing complaints with EEOC and making internal complaints of wrong doings, namely, Thomas Charles, John Born, Mark Bentley, Thomas Charles, handpicked deputy director who unlawfully acting as a peace officer, by driving police vehicle fully equipped, carrying a concealed firearm and, assisting in investigations without first having the proper Ohio Peace Officer certification required by 2935.01. The Plaintiff further was targeted after writing letters to the governor office identifying Thomas P. Charles as a racist, after he was appointed as the director of public safety and, came he in with mindset that blacks didn't belong in management in the Ohio Investigative Unit. The plaintiff further pointed out how Thomas Charles attacked the positions of both the plaintiff and another black male who were promoted to the positions of supervisor. The unlawful acts committed by Thomas

Charles against the plaintiff was to silence the plaintiff freedom of speech and to further send a strong message to other minority employees that speaking out against him or his administration would result in serious consequences. Thomas Charles has used his enormous influence to convince those he had joint activity, meetings and discussions with each other to keep his continued retaliation and harassment against the plaintiff until the results sought by him are accomplished. Thomas Charles, while director of Ohio Department of Public Safety has not treated any other employee in the manner he has treated or had to be treated. In doing so Thomas P. Charles used his influence to caused state officials namely, John Born, Paul Pride, James Hogan, Jacob Pyles, Cullen Jackson, Chad Miller, to continue to retaliate by use of the Franklin County Court System, which is a state prerogative and to treat the plaintiff differently that all other employees at the defendant agency. As a result of the continuing conspiracy until the conspiracy met it's end on January 25, 2019 between the defendants named herein. Thomas Charles violated the plaintiff Fourteenth Amendment rights. Even though Thomas Charles wasn't employed during the time as state official it was Charles influence that began the unlawful acts and continue to encourage the unlawful act against the plaintiff until the final conspired act occurred on January 25, 2019, when the arbitrator without authority issued an award reversing the original arbitration and court confirmation while operating in joint activity with state official in a state owned building (OCB). The courts have stated that private individual need not be under the control or influence of a state government in order to be subjected to a 1983 action liability (see Dennis 449 U.S. 27 The court further stated consistently held that under certain circumstances, non - state actors

engage in conduct under the color of law when their acts were complicit with state officials. It is further undisputed by the defendants named herein that the dispute between Thomas P. Charles who first fired the plaintiff March 19, of 2013 didn't conclude his retaliation, but continued by conspiring with non state actors, until the final conspired act by state official and non - state officials obtained the adverse results that was sought by Thomas P. Charles. The rogue arbitrator used Thomas P. Charles 2013 original termination in his fraudulent award while violating Ohio and Federal law and, continuing the retaliation for Charles until the adverse action occurred, and by doing so, the arbitrator unlawfully committed a collateral attack against the first award that was issued on November 24, 2014 by neutral arbitrator E. William Lewis. Thomas P. Charles action even though silent, his influence and control to harm and retaliate against the plaintiff was met and carried out by state officials and non - state actors, on January 25, 2019, namely Douglas Behringer, Cathy Brockman, Gwen Callender, and David Stanton. The plaintiff is asking the court to award 4Million dollars in damages and any other equitable relief the court deems appropriate. Thomas Charles shall be held accountable for the relief requested.

## JOINT ACTIVITY

120. On May 19, the Franklin County Common Pleas Court rejected the state application to vacate the plaintiff arbitration award. Honorable judge Cocroft upheld the arbitrator award and ordered the state, namely, Ohio Department of Public Safety and, the Office of Collective Bargaining to comply with the award by returning the plaintiff back to his original position as an enforcement agent and to pay all backpay, benefits, to also include interest from the date of the award until the

plaintiff was returned back to his employment. However, the state officials namely Thomas P. Charles, Paul Pride, and, John Born wouldn't be deterred by the lower court decision. John Born abused his position to unlawfully attack a binding arbitration in favor of the plaintiff requesting the Ohio Attorney General to filed an appeal to the Franklin County 10th district court of appeals. John Born did so only to carryout the wishes of his mentor Thomas P. Charles to continue the retaliatory attacks. The state, DPS, OCB, OSP, have never in the history of the collective bargaining ever requested a case of a union member arbitration award whether it a member of the FOP, State Trooper union, or OCSEA be appealed to the Franklin County 10th district and even up to this date have requested a member award be tested by the court and/or appealed. John born abused his position as a state official by treating the plaintiff differently than any other employees, employed within the agency where he was the director and yielded a great deal of authority and he clearly abused that authority while targeting the plaintiff for invoking his rights to free speech based on information testified to in the original arbitration award. John Born used his position to convince others to assist him with his retaliation against the plaintiff the request to have the plaintiff original award appealed constitutes continued conspiracy to unlawfully harm the plaintiff John Born has violated the plaintiff first amendment rights and due process rights. The Plaintiff is requesting 4 million dollars in relief from John Born and the plaintiff ask the court to hold John Born liable for same and any other equitable relief the court deems appropriate, and, enjoin any actions committed by John born after April 14, 2017, to include termination of the plaintiff and to require full reinstatement as a result of John Born unlawful action. This appeal was written in the

fraudulent January 25, 2019 fake arbitration award by David Stanton.

121. On April 14, 2017 the 10th district appeals court that returned its decision and upheld the lower court decision. However, this did set well with the state officials namely John Born Paul Pride, James Hogan. The fact that the court have told them to return the plaintiff back to his employment, pay him his back pay, and benefits and pay post judgment interest they threw a legal TANDRUM. The state official wouldn't be outdone by any court and, WHEREAS John Born, Paul Pride and James Hogan, had already began developing a scheme which would require non – state actors to participate to assist in violating the plaintiff employment rights.

122 The continuing conspiracy began with John Born, Paul Pride, James Hogan, abusing their positions as state officials. By authorizing the state Highway Patrol to engage into a private property investigation as it related to the plaintiff employment while not being employed at the Ohio Department of Public Safety. Section Ohio Revised Code specifically leaves the duty to investigate any applicant licensed under the Ohio Revised Code 4749.02 only upon a written complaint. The director John Born without "PROBABLE CAUSE", authorized the Ohio State Highway Patrol who duties are under ORC 5503.01 to unlawfully conduct an investigation against the plaintiff employer, Allied Universal Security, on or about February 2, 2017 almost four months prior to the plaintiff scheduled return back to DPS as an enforcement agent. The Ohio State Highway Patrol had no authority under 4749.11 to investigate any applicant and/or security firm licensed or unlicensed in the state of Ohio, without any violations occurring in a state building or state road. John Born, and Paul Pride, unlawful attempt to obtain information on the plaintiff employment at Allied Universal prior to the

completion of the appellate appeal, was pretexual and, committed solely to intimidate and harass the plaintiff former employer and its management staff at Allied Universal Security, while seeking information on the plaintiff earnings at the company. The continuing retaliation by John Born and Paul Pride was to develop a strategy and scheme to redo an arbitration award that the Franklin County Common Pleas Court, and Franklin County Appeals court refused to vacate on their behalf. As a result of Thomas Charles, John Born, Paul Pride losing the appeals. Now, there strategy has changed, they will now use OSP troopers that will be carry out the will of state officials. The unlawful scheme being concocted by state officials, John Born, Paul Pride and James Hogan, the defendants knew full well, that this unlawful act would take plaintiff employment, and as a result would not fail. Now that the state patrol are now in control of the outcome, and, in doing so, OSP violated THE FAA, and, ORC 2711.10 2711.11 and 2711.13, for which they have no authority to correct an arbitration award, review figures of an arbitrator award or write an investigation to vacate an arbitrator award. Now the outcome of the plaintiff future is in the hands of OSP who will deliver to Born, and pride an investigative report that will substantiate an unlawful termination of the plaintiff. OSP will deliver the adverse action against the plaintiff, that was sought for by Thomas Charles, John Born, and Paul Pride. The unlawful scheme has now been formed and non-state actors at the FOP being sought out to assist in joint activity with state officials, after the plaintiff had returned to his employment at DPS. However, unbeknown to the plaintiff his employment would be short lived. The Ohio State Highway Patrol duties are under ORC 5503.01, in, addition the law doesn't allow for the patrol to carry out private property investigations nor does the section